SEYFARTH SHAW LLP
William J. Dritsas (SBN 97523)
wdritsas@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, CA 94105-2930
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

SEYFARTH SHAW LLP
Michael W. Kopp (SBN 206385)
mkopp@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone: (916) 448-0159
Facsimile: (916) 558-4839

SEYFARTH SHAW LLP
Timothy M. Rusche (SBN 230036)
Mary D. Manesis (SBN 150372)
mmanesis@seyfarth.com
333 S. Hope Street, Suite 3900
Los Angeles, California 90071
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
TESORO REFINING & MARKETING COMPANY LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JINETRA BONNER, individually, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TESORO REFINING & MARKETING COMPANY LLC; a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT**<br><br>[Sacramento Superior Court Case No.: 34-2017-00209750]<br><br>Complaint Filed: March 22, 2017 |

---

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Tesoro Refining & Marketing Company LLC ("Tesoro") hereby removes the above-captioned matter from the Superior Court of the State of California for the County of Sacramento, to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, on the basis of (1) original federal jurisdiction under the Labor Management Relations Act ("LMRA"), codified in relevant part at 29 U.S.C. § 185, (2) Diversity Jurisdiction, pursuant to 28 U.S.C. section 1332(a), and (3) supplemental jurisdiction pursuant to 28 U.S.C. § 1367. In support of their request, Tesoro states as follows:

**I.    INTRODUCTION AND STATEMENT OF JURISDICTION**

1.      This court has original jurisdiction over this action on the grounds under the LMRA, which grants federal district courts subject matter jurisdiction over claims involving the interpretation of "contracts between an employer and a labor organization."  29 U.S.C. § 185(a). *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the Court to *interpret* a CBA or is "substantially dependent on *analysis of a collective-bargaining agreement*," the claim is preempted, even if based on state law) (emphasis added). "The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement. " *Young v. Anthony Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). As set forth below, the LMRA confers federal subject matter jurisdiction over this action because the resolution of Plaintiff's meal break claim requires interpretation of the on-duty meal period agreement negotiated between Plaintiff's union and Tesoro. The meal and rest beak claims (and all derivative claims) also require interpretation of multiple collective bargaining agreements that set forth Tesoro's policies authorizing and permitting meal and rest periods and relief, the scheduling and length of meal and rest periods, the nature and extent of employees' release from duty during meal and rest periods, and employees' rights to report violations and receive premium pay for any non-compliant meal or rest periods. Tesoro has also collectively bargained the terms and conditions of additional meal and rest period policies supplemental to the CBAs and a collectively bargained settlement of a prior class action governing meal and rest period claims. Plaintiff's claims

1

place the terms of these CBAs, letters of agreement, class settlement, and negotiated policies squarely at issue and are, therefore, preempted by the LMRA.

2.  This Court also has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable pursuant to §§ 1446 and 1453 because it is a purported class action with an amount in controversy exceeding $5,000,000 (exclusive of interests and costs), at least one putative class member is a citizen of a state different from Tesoro, and Plaintiff alleges that there are over 100 putative class members.[1]

## II.    THE STATE COURT ACTION IN THIS CASE.

3.  On March 22, 2017, Plaintiff Jinetra Bonner ("Plaintiff") filed a civil action in the Superior Court of the State of California, for the County of Sacramento, entitled *Jinetra Bonner, individually, on behalf of herself and all others similarly situated, v. Tesoro Refining & Marketing Company, LLC; and DOES 1 through 100, inclusive,* Case No. 34-2017-00209750.

4.  Plaintiff seeks recovery of meal period premiums, rest period premiums, and penalties under the Private Attorney General Act ("PAGA") on behalf of herself and the alleged putative class for claims arising predominantly from Tesoro's alleged use of an illegal on duty meal period agreement, the alleged failure to provide suitable facilities for meal and rest periods, and the alleged failure to provide duty free rest periods. (Ex. A, Complaint ("Compl.") ¶¶31-89.) From these predicate allegations, Plaintiff alleges eight causes of action for:  (1) "violation of Labor Code §§ 22.6.7, 512(a) and IWC Wage Order 1-2001, § 11 for Unlawful Use of an 'On-Duty Meal Period Agreement' ('ODMPA') or alternatively, Failure to Provide Timely, Off-Duty, 30-Minute Meal Periods;" (2) "violation of Labor Code §§ 22.6.7 and IWC Wage Order 1-2001, § 11(E) and 13(B) for Failure to Provide Suitable Facilities for Meal and Rest Periods"; (3) "violation of Labor Code §§ 226.7 and IWC Wage Order 1-2001, § 12 for Failure to Provide Off-Duty Rest Periods"; (4) "violations of Unfair Competition Law (Cal. Business & Professions Code §§ 17200, *et seq.*)"; (5) "PAGA Civil Penalties for Violation of Labor Code §§ 226.7, 512, and IWC Wage Order 1-2001, § 11 (Unlawful ODMPA)"; (6) "PAGA Civil

---

[1] This Court also has original jurisdiction of this action pursuant to diversity jurisdiction, as the Plaintiff's citizenship is diverse from that of Tesoro, Tesoro is not a citizen of the state of California, and the amount in controversy as to Plaintiff's claims exceeds $75,000 exclusive of costs and interest.

Penalties for Violation of Labor Code §§ 226.7 and IWC Wage Order 1-2001, §§ 11, 13 (Failure to Provide Suitable Facilities for Meal or Rest Periods)"; (7) "PAGA Civil Penalties for Violation of Labor Code §§ 226.7 and IWC Wage Order 1-2001, § 12 (Failure to Provide or Authorize Off-Duty Rest Periods)"; (8) "PAGA Civil Penalties for Violation of Labor Code §§ 226.7 and 558(a) (Underpaid Wages for Failure to Provide "Premiums" for Non-Compliant Meal and Rest Period Periods)."

5.      The Summons and Complaint, and all other materials served on Tesoro in this matter, and all documents on the docket in the state court action are attached as **Exhibit A**, and constitute all process, pleadings, and orders served to date in this action. 28 U.S.C. §§ 1446(a).

6.      On April 3, 2017, Defendant Tesoro Refining & Marketing Company LLC was served with the Summons and Complaint. **Exhibit A.**

## III.   TIMELINESS OF REMOVAL

7.      This Notice of Removal is timely since Tesoro filed it less than one year from the date this action was commenced and within 30 days of service. 28 U.S.C. §§ 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-55 (1999) (30-day deadline to remove commences upon service of the summons and Complaint)

## IV.   FEDERAL QUESTION JURISDICTION BASED ON THE LABOR MANAGEMENT RELATIONS ACT

8.      This action is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1331, and is one which may be removed to this Court by Tesoro pursuant to the provisions of 28 U.S.C. section 1441, in that the relief sought in the Complaint arises under and is preempted by Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) ("LMRA").

**A.   The LMRA preempts claims that *either* (1) arise from a labor agreement, *or* (2) require interpretation of a labor agreement to resolve a state law claim.**

9.      Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "The preemptive force of section 301 is so powerful as to displace entirely any state claim [1] based on a collective bargaining agreement, and [2] any state claim whose outcome *depends on analysis of the terms of the agreement*." *Young*, 830 F.2d at 997 (citations omitted) (emphasis added). The Ninth Circuit has clarified that the

3

LMRA preempts claims in two respects. **_First_**, if the claim involves a right that exists because of the CBA rather than state law, the "claim is preempted and [the court's] analysis ends there." *Burnside*, 491 F.3d at 1059. **_Second_**, if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if based on state law. (*Id.*)

10.     Although the language of LMRA Section 301 is limited to "suits for violation of contracts," it has been construed quite broadly to cover state-law actions that do not allege a breach of the CBA, but nonetheless require *interpretation* of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("When resolution of a state law claim *is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract*, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted) (emphasis added); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 2001) (when resolution of a claim brought under state law is "substantially dependent on analysis" of a collective-bargaining agreement, the claim is preempted by Section 301) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Hyles v. Mensing*, 849 F.2d 1213, 1215-1216 (9th Cir. 1988); *Young*, 830 F.2d at 997, 999; *Raphael v. Tesoro Refining & Marketing Co., LLC*, No. 2:15–cv–02862–ODW (Ex), 2015 WL 3970293, *6–7 (C.D. Cal. June 30, 2015) ("To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement . . . *[a] state law claim will be preempted if it is so "inextricably intertwined" with the terms of a labor contract that its resolution will require judicial interpretation of those terms.*) (citing *Allis Chalmers Corp.* at 210–11) (emphasis added).

11.     Preemption is not limited to state law claims based on formal collective bargaining agreements. Courts have consistently held that other collectively bargained agreements—such as side agreements, benefit plans, and settlement agreements—also give rise to Section 301 preemption where a plaintiff's claims require interpretation of those agreements. *See, e.g., Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) ("Contract in labor law is a term the implications of which must be determined from the connection in which it appears . . . It is enough that this is clearly an agreement between employers and labor organizations significant to the

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

maintenance of labor peace between them . . . It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a)."); *Audette v. International Longshoremen's and Warehousemen's*, 195 F.3d 1107 (9th Cir. 1999) (accord) (citing *Lingle v. Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988)); *General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 765 (9th Cir. 1982) (accord).

> **B.    Plaintiff's Claims Require Interpretation Of A Multitude Of Collectively Bargained Agreements.**

12.    <u>Plaintiff's Allegations</u>.  Plaintiff's claims derive from the core allegations Plaintiff and the putative class members (1) were denied compliant meal periods because the on-duty meal period agreements were purportedly illegal, (2) were denied suitable meal and rest period facilities, and (3) were not provided duty free rest periods pursuant to *Augustus v. ABM Security Servs., Inc.*, 2 Cal. 5th 257 (2016).

13.    <u>The Putative Class</u>.  Plaintiff identifies the putative class as "All hourly non-exempt "operators" (and/or similar job titles or job positions) employed in the State of California by TESORO REFINING & MARKETING COMPANY, LLC and DOES 1 through 100 ('Defendants') during the proposed Class Period (defined as at least four year [sic] prior to the commencement of this action until the commencement of trial) who were subject to Defendants' uniform On-Duty Meal Period Agreement ('ODMPA') policy." (Compl. ¶ 11.) Plaintiff divides this putative class into four subclasses, as follows:

- "Subclass One ('The Meal Period Subclass'):  All members of the proposed Plaintiff Class, who, as a result of Defendants' uniform ODMPA policy, were not provided 30-minute off-duty meal period or paid one hour of pay at their regular rate of compensation in lieu thereof, as required by Labor Code §§ 226.7, 512(a), and/or IWC Wage Order 1-2001, § 11" (Compl. ¶ 11.);

- "Subclass Two ('The Suitable Place Subclass'):  All members of the proposed Plaintiff Class, who, as a result of Defendants' uniform ODMPA policy, were not provided with a suitable place to take a meal and/or rest periods as required by IWC Wage Order 1-2001, §§ 11(E) and 13(B)" (Compl. ¶ 11.).

- "Subclass Three ('The Rest Period Subclass'):  All members of the proposed Plaintiff Class, who, as a result of Defendants' on-duty policies, were not provided off-duty 10-minute paid rest periods or paid one hour of pay at their regular rate of compensation in lieu thereof, as required by Labor Code § 226.7 and IWC Wage Order 1-2000, § 12" (Compl. ¶ 11.).

- "Subclass Four ('The UCL Subclass'):  All members of the proposed Plaintiff Class who during the proposed Class Period were subject to Defendants' business acts and/or practices regarding the uniform use of ODMPAs, and who, if said business acts and/or practices are found to be unlawful, unfair and/or deceptive, are owed restitution . . ." (Compl. ¶ 11.)

5

14.     <u>Summary of Applicable Collective Bargaining Agreements.</u> The terms and conditions of Plaintiff's and the putative class members' employment are governed by eight CBAs between Tesoro and Plaintiffs' collective bargaining representative, United Steel Workers (USW), applicable to different bargaining units at different locations for different periods of time covered by the putative class period. (Declaration of Karen Kawano In Support of Notice of Removal ("Kawano Decl.") ¶¶ 5-7, 10-14, 16-19, Exs. C-F, I-L.)

15.     At Tesoro's Martinez (Golden Eagle) refinery, the following CBAs and further collectively bargained agreements apply to the putative class:

- USW Golden Eagle Refinery CBA, "Articles of Agreement Between Tesoro Refining Company Golden Eagle Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, effective February 1, 2012 to January 31, 2015." (Kawano Decl. Ex. I)

- USW Golden Eagle Chemical CBA, "Articles of Agreement Between Tesoro Refining Company Golden Eagle Chemical Plant and United Steelworkers International Union 5, effective March 1, 2012 to February 29, 2015." (Id., Ex. J)

- USW Martinez Refinery CBA, "Articles of Agreement Between Tesoro Refining Company Martinez Refinery and United Steelworkers International Union Local 5 and United Steelworkers International Union, [effective] February 1, 2015." (Id., Ex. K.)

- USW Martinez Chemical CBA, "Articles of Agreement Between Tesoro Refining Company Martinez Chemical Plant and United Steelworkers International Union 5, effective March 1, 2015." (Id., Ex. L.)

- USW Golden Eagle Refinery On-Duty Meal Period Agreement. (Id., Ex. B.)

At Tesoro's Southern California refineries (the LAR refinery, including the Wilmington and Carson operations), the following CBAs and additional side letters are applicable to the putative class:

- USW Carson CBA, "Articles of Agreement between BP West Coast LLC Carson Refinery and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C., effective February 1, 2012 to January 31, 2015." (Id., Ex. D.)

- USW Wilmington CBA, "Agreement Between Tesoro Refining and Marketing Company and United Steelworkers A.F.L. - C.I.O., CLC USW Local 675 Covering Employees of Los Angeles Refinery and Long Beach Terminal and Wilmington Sales Terminal," May 12, 2012 through April 30, 2015. (Id., Ex. C.)

- USW  Los Angeles Refinery CBA, "Articles of Agreement Between Tesoro Refining & Marketing Tesoro Los Angeles Refinery Carson Bargaining Unit and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, A.F.L.-C.I.O., C.L.C. Effective Feb. 1, 2015." (Id., Ex. E.)

6

38716051v.2

- "Tesoro Los Angeles Refinery (Wilmington Bargaining Unit) Settlement Offer to USW Local 675" (Id., Ex. F.)

- The Los Angeles Refinery On-Duty Meal Period Agreement. (Id., Ex. A.)

- The "Memorandum of Agreement Timekeeping, Meal and Rest Wilmington" agreement reached between Tesoro and USW Local 675 on April 7, 2016.  (Id., Ex. G.)

16.    These CBAs and side letter agreements govern Plaintiff's and putative class members' wages, hours, and conditions of employment. Several of the CBAs and side letters also specifically address employees' entitlement to meal and rest periods, the manner in which the meal and rest periods are authorized and permitted, verification of meal and rest periods, the independent authority of employees to take duty-free rest periods, the authorization of on duty meal periods, provision of relief for rest periods, an employee procedure to identify any non-compliant meal and rest periods, and provisions for when and how much compensation will be paid for non-compliant meal and rest periods. They also provide that disputes pertaining to compliance with the meal and rest period provisions are subject to the mandatory grievance procedure.

17.    For example, the CBA between USW and Tesoro applicable to the Carson Bargaining Unit (effective Feb. 1, 2015) details Tesoro's policy for authorizing meal and rest breaks at Carson. Specifically:

- Article VIII provides that "[t]he intent of this Article is to affect *more specific procedures* governing *meal periods and rest periods* for all Bargaining Unit employees represented by USW."  (Kawano Decl., Ex. E, p. 61.)

- Article VIII.C provides:

  Employees *shall be permitted* to take one ten minute rest period for every four hours they work or major fraction thereof.  A major fraction is defined as anything more than two hours for purpose of calculating rest periods. (Kawano Decl., Ex. E, p. 63.)

- The CBA provides extensive detail regarding the contours, purpose and provision of any on duty meal periods, including recognition that the "nature of the employee's work will occasionally prevent them from being relieved of all duty during certain meal periods when requested by a supervisor.  On those occasions, the employees and the Union agree that employees will work a paid on-the-job meal period during such shifts." (Kawano Decl., Ex. E, Art. VIII.A, p. 62.)

- Appendix E confirms Tesoro's policy of authorizing and permitting meal and rest periods (and the Union waiver of the second meal period):

  "Employees are permitted a 10-minute paid rest period for each four hours of work or major fraction thereof. To the extent practicable, rest periods will be taken in the middle of the four-hour work period. Subject to the above, the timing of rest periods will be at the Company's reasonable discretion."

7

38716051v.2

"Employees who are required to remain on duty while they eat due to business needs shall receive any premium wage required by law but no less than one additional hour of pay at the hourly base rate, and shall be assigned another thirty (30) minutes during which to eat their meal not later than eight (8) hours from their regular starting time."

"The Union, on behalf of all employees who work more than 10 but not more than 12 hours, waives the employees' right to take a second, unpaid, off-duty meal period. However, absent some business need to the contrary, employees will generally be permitted to take this second (30) minute meal period, which will be paid, on-duty at the worksite. The employee will remain responsible for his or her duties during this second thirty (30) minute meal period."

(Kawano Decl., Ex. E, p. 133.)

- Article VIII.D provides a policy for payment of one hour of premium pay for any failure to follow the meal and rest period requirements:

    "There will be a maximum of *an additional one (1) hour of pay per day* for an employee for any combination of any failure to follow the requirements for an *Off-Duty Meal Period, On-Duty Meal Period or Rest Period*. Any payment of one (1) additional hour of pay for Meal Period or Rest Period violations shall not be counted as hours worked for purposes of calculating overtime."

(Kawano Decl., Ex. E, p. 63.)

- Article XX provides detailed and comprehensive procedures for the settlement of disputes under the Agreement. (Kawano Decl., Ex. E at pp. 79-82.) (emphasis added).

18.     The prior Carson CBA (effective Feb. 1, 2012 - Jan. 31, 2015) contained similar meal and rest period provisions. (Kawano Decl., Ex. D, pp. 61-64; 88-90.)

19.     <u>Additional Collectively-Bargained Meal and Rest Period Policies at Wilmington.</u> Tesoro and the USW further collectively bargained the terms and conditions of the meal and rest period policies at the Wilmington refinery - policies directly at issue in this litigation. In 2014 Tesoro presented the USW Local 675 with a proposed Wilmington meal and rest period policy for review and comment. Negotiations and the Union's review of the policy continued through the spring of 2016. (Kawano Decl. ¶ 21.)

20.     In approximately April 2016, after obtaining Union's negotiated consent, Tesoro distributed the written meal and rest period policy for the Wilmington refinery. (*Id*. ¶ 22.) The policy states that it "supplements but is not intended to conflict with or supersede the Collective Bargaining Agreement between Tesoro and the United Steel Workers." (*Id*., Ex. M.) The policy authorizes on duty meal periods, authorizes rest periods, prohibits anyone from discouraging employees from taking rest periods, requires employees to report when they were not permitted to take a full rest period or

8

38716051v.2

compliant meal period, and provides for premium payment for missed and non-compliant meal and rest periods. (*Id*.) The policy further provides that "The Company's policy is to provide meal and rest periods in accordance with the requirements of the California Labor Code and California's applicable Industrial Welfare Commission Wage Orders, except where the Company's policy is more generous." (*Id*.)

21.    Concurrently, Tesoro and the USW entered a "Memorandum of Agreement Timekeeping, Meal and Rest Wilmington" to expand the application of the prior agreements to additional positions (including operators in the *Bonner* putative class). This agreement was ratified by USW members and provides that the Union will bargain over changes if there is a change in controlling state law. (Kawano Decl. ¶ 15, Exs. G, H.) In connection with the policy's rollout, Tesoro developed an "FAQ" document and training slides to answer bargaining unit questions regarding the practical application of the meal and rest period policy, and provided the Union advanced copies for negotiation and feedback.  (*Id*. ¶¶ 22-25, Exs. M, N, O.)  The USW continued to discuss the practical operation of the meal and rest break policy following implementation. For example, at the December 20, 2016 meeting between Tesoro and the USW Local 675 (two days before the *Augustus* decision), the parties discussed rest breaks for Console Operators and other Operators, including as to the provision of relief (at issue in the Complaint allegations), and reporting and provision of penalty payments for any violation. (*Id*. ¶ 26, Ex. P.) These discussions continued after the *Augustus* decision and through February 20, 2017, at which time Tesoro and the Union signed off on the December 20, 2016 meeting minutes, confirming the "Breaks for Console Operators" was a "Closed" item. (*Id*. ¶ 26-27, Ex. P.)

22.    <u>The Collectively-Bargained Class Settlement Agreement</u>. Plaintiff's lawsuit challenges an on-duty meal period agreement entered between the USW and Tesoro to resolve prior class actions instigated by the USW, including meal and rest period claims.

23.    On March 15, 2013, the USW and Tesoro previously entered into a "Joint Stipulation of Class Action Settlement" ("Class Settlement") to resolve three class and putative class actions (*Delagarza v. Tesoro Refining & Marketing Co.,* N.D. Cal., Case No. 09-05803 EMC ["*Delagarza*"], *Burgess v. Tesoro Refining & Marketing Co.*, C.D. Cal., Case No. 10-5870-DMG (PLAx) ["*Burgess*"], and *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union,*

9

*AFL-CIO, CLC, and Richard Floyd and Eduardo Carbajal, on behalf of all similarly situated current and former employees v. Shell Oil Co., Tesoro Refining & Marketing Co.*, C.D. Cal., Case No. 08-3693 RGK ["*USW*"]. This Class Settlement is attached hereto as **Exhibit B.** (Ex. B, ¶¶ 1,7, 12, 25, 34, 43.)

24.     The *USW* putative class action was filed on April 25, 2008, alleging (1) failure to provide meal periods; (2) failure to provide rest breaks; (3) failure to furnish timely and accurate wage statements; (4) failure to provide wages due at the time of termination; and (5) violation of California's Unfair Competition Law.  (Ex. B, ¶ 26.) After class certification was denied, various members of the *USW* putative class, represented by the same counsel, filed *Delagarza* and *Burgess*, in which the plaintiffs alleged claims for (1) failure to provide meal periods; (2) failure to pay all wages due at termination; and (3) violation of California's UCL.  (Ex. B, ¶ 27.)

25.     The Class Settlement resolved the *USW, Delagarza* and *Burgess* actions, "including without limitation:

> claims based upon Tesoro's alleged *failure to provide an off-duty meal period; failure to provide on-duty meal period; failure to authorize or permit a rest period*; failure to furnish timely and accurate wage statements due to the *failure to provide an off-duty meal period; failure to provide on-duty meal period; failure to authorize and permit a rest period*; and failure to pay wages due upon termination arising from the *failure to provide an off-duty meal period; failure to provide on-duty meal period; failure to authorize and permit a rest period*; and claims derivative of those alleged in the complaints filed in *USW, Delagarza*, or the First Amended Complaint filed in *Burgess* arising under the California Labor Code (including Sections 201, 202, 203, 204, 210, 215, 216, 218, 218.5, 221, 222, 223, 224, 226, 226.6, 226.7, 512, 558, and 1199); California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200 *et seq.*; California Industrial Welfare Commission Wage Order 1-2001 sections 7, 11, and 12, codified at 8 Cal. Code Reg. § 2698 *et seq.* ("PAGA").

(Ex. B, ¶ 43) (emphasis added).

26.     USW's consent to the Class Settlement was the product of a collectively-bargained negotiation.  The Class Settlement provided that "USW and Tesoro have engaged in collective bargaining, and, as a condition of this Agreement, have agreed (or will agree) to certain terms and conditions of employment regarding Covered Employee's meal periods. Copies of such agreements are attached hereto as Exhibit A and are hereby made part of this Agreement." (Ex. B, ¶ 38.)

27.     The Class Settlement further provided for a ratification by each local USW membership and stated that absent such ratification, Tesoro could void the agreement.  (*Id*., ¶ 40.)

28.    The Class Settlement included a negotiated on-duty meal period agreement that was intended to address wage and hour compliance in view of the work demands of the various refinery operations. (Ex. B, p. 46 of 97.)

29.    The on-duty meal period agreement also provided:  "If a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering provision of meal periods." (Ex. B, p. 47 of 97.) This collectively bargained class settlement was reviewed and approved by the court.

30.    Through subsequent collective bargaining, Exhibit A to the Class Settlement was ratified as to Tesoro's Martinez and Wilmington refinery, including the requirement that the Union and Tesoro are required to bargain in the event any Court determination or other change in law impacts the parties' agreement.  (Kawano Decl., Exs. A, B.)

**C.    Resolution Of Plaintiff's Claims Requires An Interpretation Of The Collectively Bargained Agreements Regarding Meal and Rest Periods.**

31.    Plaintiff's claims are preempted by the LMRA in two broad respects. *First,* they require interpretation of a number of collective bargaining agreements (CBAs) and side letter agreements addressing the terms and conditions of Tesoro's authorization of meal and rest breaks. These agreements set forth Tesoro's policies authorizing and permitting meal and rest periods and relief, the scheduling and length of meal and rest periods, the nature and extent of employees' release from duty during meal and rest periods, the requirements for on duty meal periods, and employees' rights to report violations and receive premium pay for any non-compliant rest and meal periods. Tesoro has also collectively bargained the terms and conditions of additional meal and rest policies supplemental to the CBAs directly relevant to Plaintiffs' claims of unlawful failure to authorize and permit duty free rest periods and alleged unlawful authorization of on-duty meal periods. Plaintiff's claims place the terms of these CBAs, letters of agreement, and negotiated policies squarely at issue, will require interpretation of those agreements for both class certification and liability determinations, and are, therefore, preempted by the LMRA.

38716051v.2

32.    *Second*, Plaintiff seeks a Court determination regarding Tesoro's meal and rest period policies and practices, rather than a collectively-bargained modification of any allegedly non-compliant policy or practice. This not only requires an interpretation of the collectively-bargained Class Settlement described above (¶¶ 23-30, *supra*), but also violates and interferes with the terms of the Class Settlement. As described above, the Union (United Steel Workers ["USW"]) previously entered a collectively-bargained class settlement addressing the issue of the nature of the plant operations, the nature of the work, health and safety and environmental concerns, radio usage and wage and hour compliance, including the provision of on-duty meal periods. Specifically, the class settlement negotiated with USW included a release of meal and rest break claims and further addressed the nature of the work, recall to work assignment, and general radio use within Tesoro's refinery by providing for on-duty meal period agreements and meal period waivers. The agreement further provided that "any changes in law that rendered the Agreement unnecessary, illegal or ineffective" required the Union and the Company to promptly meet to bargain over the terms of a new agreement to address any purported violation. Rather than do so, Plaintiff now seeks to have the Court address allegedly non-compliant on duty meal period agreements and purported failure to authorize rest break practices in violation of the parties' prior collectively-bargained class action settlement agreement. *See General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Bros. Truck Lines*, 682 F.2d 763, 765 (9th Cir. 1982) (rejecting plaintiff's argument that under the LMRA, the word "contracts" was limited to CBAs, and holding that a settlement agreement was a contract for LMRA purposes).

33.    This principle carries particular force where, as here, there are multiple CBAs, side letters, collectively bargained policies, and a further collectively bargained class settlement at issue. For example, in *Raphael v. Tesoro*, 2015 WL 3970293, *6–7, the court found meal period claim preempted under Section 301, noting that the impact of the interpretive questions on the Section 301 preemption analysis carried particular force where a number of CBAs applied to Tesoro's workforce. *Id.* at *6-7 ("Tesoro has affirmatively presented the Court with a plethora of provisions in need of interpretation throughout the eight separate CBAs covering Raphael and the aggrieved employees he seeks to represent.") .

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

38716051v.2

34.     Plaintiff's claims, on their face, are "substantially dependent upon analysis" of, and "inextricably intertwined" with, the terms of the collectively bargained and incorporated meal and rest period policies. Thus, Plaintiff's assertion of purported state law claims is "preempted" by Section 301 of the LMRA, and this matter is properly removable to this Court pursuant to 28 U.S.C. section 1441.

## V.     JURISDICTION BASED ON CAFA

35.     This Court has original jurisdiction of this action under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is properly removable pursuant to §§ 1446 and 1453 because it is a purported class action with an amount in controversy exceeding $5,000,000 (exclusive of interests and costs), at least one putative class member is a citizen of a state different from Tesoro, and Plaintiff alleges that the putative class exceeds 100 members.

### A.     The requirement for minimal diversity for removal under CAFA is satisfied.

36.     CAFA requires that "any member of a class of plaintiffs is a citizen of a state different from any defendant." 28 U.S.C. § 1332(d)(2)(A). For removal purposes, citizenship is measured both when the action is filed and removed. *Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

### 1.     Plaintiff is a Citizen of California

37.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person is 'domiciled' in a location where he or she has established a fixed habitation or abode of a particular place, and [intends] to remain there permanently and/or indefinitely." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). A party's residence is prima facie evidence of his domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

38.     Plaintiff alleges that she is a resident of the State of California. (Ex. A, Compl. ¶ 15.) Additionally, Plaintiff provided her home address during the course of her employment for purposes of her personnel file, payroll checks, state payroll, and tax withholdings. (Kawano Decl. ¶ 32.) Employees are required to keep their contact information current. Plaintiff is a current employee of Tesoro, whose current provided address is in Compton, California. (*Id.*) For the past ten years, the only residential addresses Plaintiff has provided to Tesoro were within the state of California. (*Id.*) For purposes of her I-

9 identification, Plaintiff provided Tesoro with a California drivers' license. (*Id.*) Therefore, Plaintiff was at the time this action commenced, and still is, a citizen and resident of the State of California.

### 2.    Tesoro Is Not A Citizen Of California

39.    Tesoro Refining & Marketing Company LLC ("Tesoro") is a citizen of a State other than California within the meaning of 28 U.S.C. Section 1332(d). Tesoro is now, and was at the time this action commenced, a limited liability company formed under the laws of the State of Delaware, with its principal place of business in San Antonio, Texas.  (Kawano Decl. ¶¶35-38.)

40.    Limited liability companies are unincorporated associations for diversity purposes under 28 U.S.C. § 1332. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). *See Davis v. HSBC Bank Nevada*, N.A., 557 F.3d 1026, 1032, n.13 (9th Cir. 2009) (A. Kleinfeld, concurring) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes . . . .").

41.    Thus, to determine jurisdiction under CAFA, limited liability companies, such as Tesoro, are treated the same as corporations in determining their principal places of business. *See e.g., Abrego v. Dow Chem. Co.*, 443 F. 3d 676, 684 (9th Cir. 2006) (stating that CAFA "departs from the rule that frequently destroys diversity jurisdiction, that a limited partnership's or unincorporated association's citizenship can be determined only by reference to all of the entity's members.") (citations and internal quotations omitted). To determine a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test.  *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192, 78 U.S.L.W. 4153 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id*. Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based.  *Id. See also, Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters was located, where the

corporate officers worked, and from where corporate policies and procedures arose). Thus, the "nerve center" is where "its executive and administrative functions are performed." *Industrial Tectonics, Inc., v. Aero Alloy*, 912 F.2d 1090, 1092-93 (9th Cir. 1990)).

42.    Here Tesoro is a limited liability corporation organized under the laws of Delaware, with its principal place of business located in San Antonio, Texas. Tesoro's principal place of business is Texas because its "nerve center" is located in San Antonio, Texas. This is where Tesoro's headquarters are located and where the senior leadership directs, controls, and coordinates all corporate planning and strategies, and is where the majority of its executive and administrative functions take place. (Kawano Decl. ¶¶ 35-38.)  This includes final decision-making and oversight of the following operations and divisions: financial; legal; capital and special projects; business development; environmental, health and safety; technology; arbitrage trading; facility maintenance; pipelines, terminal, trucking, and retail; product supply and trading; business development and logistics; marketing; marine; and refining. (*Id.*) Tesoro's policies and procedures in connection with these operations and divisions are primarily formulated in Texas.  (*Id.* at 36.) Tesoro's executive officers are primarily based in Texas, including its Chairman of the Board of Directors, President and Chief Executive Officer; Executive Vice President, Chief Financial Officer and Corporate Development; Executive Vice President, Operations; Executive Vice President, Marketing and Commercial; Executive Vice President, General Counsel and Secretary; and its Senior Management Team, including Tesoro's Vice President, Treasurer and Credit and Vice President, Controller. (*Id.* at ¶ 37.) Tesoro's financial records are maintained in Texas.  (*Id.* at 38.) Therefore, Tesoro is a citizen of the State of Texas pursuant to the "nerve center" test, and a citizen of the State of Delaware pursuant to its organization.

43.    **Doe Defendants.** The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."). Pursuant to 28 U.S.C. § 1441(b)(1), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also*

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

38716051v.2

1    *Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002).  Thus, the existence of Doe

2    defendants one through one hundred, does not deprive this Court of jurisdiction.

3        44.    Accordingly, pursuant to 28 U.S.C. Section 1332(d), Plaintiff and defendant, Tesoro

4    Refining & Marketing Company LLC, have, and have had at all times since Plaintiff filed this action,

5    diverse citizenships.

6    **B.    The Putative Class Exceeds 100.**

7        45.    CAFA requires that the aggregated number of members of all classes proposed in a

8    complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

9        46.    There are *at a minimum* approximately 240 current and former 12-hour refinery operators

10    at Tesoro's Wilmington refinery alone who are within the class alleged in the Complaint, employed

11    between March 22, 2013 and April 20, 2017, and subject to On-Duty Meal Period Agreements ("the

12    Class") (Kawano Decl. ¶ 33.)  This figure is exclusive of putative class members at Tesoro's Martinez

13    and Carson operations.

14        47.    In addition, Plaintiff has alleged the class exceeds 100 class members.  Compl. ¶ 4

15    (alleging "approximately 500" operators in the proposed class.)

16    **C.    The Amount in Controversy Exceeds $5,000,000**

17        48.    While Tesoro specifically denies liability as to all of Plaintiff's claims, and specifically

18    denies the appropriateness of the case proceeding as a class action, Tesoro has a reasonable, good faith

19    belief that the amount in controversy, as alleged and pled by Plaintiff, exceeds $5,000,000. All

20    calculations in support of the amount in controversy analysis are based on the allegations in Plaintiff's

21    complaint and are not intended as an admission that any of those allegations have merit.

22        49.    In calculating the amount in controversy under CAFA, the claims of the individual

23    members in a class action are aggregated to determine if the amount in controversy exceeds the sum or

24    value of $5,000,000. 28 U.S.C. § 1332(d)(6).

25        50.    In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if

26    the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the

27    viewpoint of the defendant, regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or

28    declaratory relief)." Senate Judiciary Committee Report, S. REP. 109-14, at 42. Moreover, the Senate

Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. REP. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case . . . .  Overall, section 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant"). "[T]he Supreme Court left no doubt 'that no anti-removal presumption attends cases involving CAFA.'" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014)). This "declaration is bolstered by the Court's reference to Congress's 'overall intent ... <u>to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications</u>.'" *Jordan* 781 F.3d at 1183-84 (quoting S.Rep. No. 109-14, at 35, 2005 U.S.C.C.A.N. 3, 34) (emphasis added). *See also, Dart Cherokee*, 135 S.Ct. at 551; see also *id.*, quoting S.Rep. No. 109-14, p. 43 (2005) ("CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").  In addition, when, as here, damages are not specified in the state-court complaint, the defendant seeking removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(a)).

51.    **Meal and Rest Period Recovery**:  Plaintiff seeks recovery on behalf of herself and putative class members for alleged failure to provide rest periods and meal periods.  (Complaint, ¶¶ 28, 29, 40, 54-55.) Labor Code section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."  Labor Code section 226.7 requires employers to pay an extra hour's pay to employees who are not provided a meal period, or authorized and permitted a rest period. Regardless of the number of meal and rest period violations per day, employees may recover

17

a maximum of one missed meal period and one missed rest period premium per day (i.e. two premium payments per day). *United Parcel Service v. Superior Court*, 192 Cal. App. 4th 1043 (2011). Plaintiff's Complaint alleges maximum violations of meal and rest period violations for all shifts worked. Specifically, Plaintiff alleges: "the basis of Plaintiff's claim revolves around TESORO's: (1) systematic use of an unlawful 'On Duty Meal Period Agreement' ('ODMPA') in violation of IWC Wage Order 1-2001, § 11(C) and Cal. Labor Code §§ 226.7 and 512(a); (2) systematic failure to provide a suitable place for eating an on-duty meal, also in violation of IWC Wage Order 1-2001, § 11(E) . . .; and (3) systematic failure to provide off-duty paid rest periods of ten minutes in length for every four hours worked, or major fraction thereof, in violation of Labor Code § 226.7 as well as IWC Wage Order 1-2001, § 12, and *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257." (Complaint ¶ 3.)

52.    The amount in controversy as to the putative class members at the Wilmington refinery alone (at which Plaintiff works) exceeds the CAFA jurisdictional limit.  These calculations do not include any calculations for 12-hour operators at Tesoro's Martinez and Carson facilities.[2]  Applying a four-year statute of limitations alleged by Plaintiff,[3] with each Wilmington putative class member allegedly missing one meal period and one rest break per 12-hour shift as part of this alleged "systematic" violation resulting from supposedly unlawful, uniformly applied policies, the putative class meal and rest period potential premiums from March 22, 2013 to present is calculated for the Wilmington refinery alone at **$9,192,294.30.** These assumptions of one meal premium and one rest premium per shift are reasonable where Plaintiff has alleged the on duty meal period agreement to be categorically unlawful, and the failure to provide rest breaks as "systemic." *See, e.g., Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (permissible to apply one hour rest premium per day where plaintiff alleged that defendant "adopted and maintained uniform policies, practices and procedures that caused the purported violations of California's rest period law"). The work schedules of 12-hour operators consist of three 12-hour shifts one week, followed by four 12-hour shifts

---

[2] Tesoro reserves the right to include calculations from these facilities should Plaintiff dispute the amount in controversy exceeding the jurisdictional limit.

[3] Plaintiff's Fourth Cause of Action for "Violations of Unfair Competition Law (Cal. Business & Professions Code § 17200, *et seq.*)" alleges a four year limitation period for recovery of Plaintiffs' claims for recovery of meal and rest period premiums. *See, e.g.,* Compl. ¶ 50.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

38716051v.2

the next week (a rotating 3 shift/4 shift schedule) (Kawano Decl. ¶ 34.) The average hourly wage for the 12-hour refinery operators at the Wilmington facility from March 22, 2013 to April 2017 is $36.15. (*Id.* ¶ 34.) The number of work weeks for the 240 current and former 12-hour refinery operators from March 22, 2013 to April 2017 is 36,325. (*Id.*) Of those, the number of work weeks comprised of four 12-hour shifts is 18,163. (*Id.*)  The number of work weeks comprised of three 12-hour shifts is 18,163. (*Id.*) The total number of 12-hour shifts for Wilmington 12-hour operators from March 22, 2013 to April 2017 is approximately 127,141 ([4 X 18,163=72,652] + [3 X 18,163 = 54,489 ] = 127,141). (*Id.*) This results in a total calculation of  **$9,192,294.30.** for meal and rest period premiums alone.[4] [($36.15 (average hourly wage rate) X 2 hours premium pay (per shift) X 127,141 shifts = $**9,192,294.30].**

53.    Plaintiff is seeking attorneys' fees, which are properly included in the amount in controversy for purposes of CAFA. *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 at *6 (N.D. Cal. Mar. 1, 2012) ("Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction.") (citing *Guglielmino v. McKee Foods Corp.*, 696 F.3d 696, 700 (9th Cir. 2007)). In the class action context, Courts have found that 25% of the recovery is a benchmark for an attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 WL 1230826 at * 27-28 (N.D. Cal. Apr. 1, 2011) (ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486 at *6 (C.D. Cal. July 27, 2010) (attorneys' fees in the amount of 30% of the total gross settlement amount reasonable. Even under the conservative benchmark of 25% of the total recovery, attorneys' fees alone would be approximately **$2,298,073.58** in this case.

---

[4] This amount does not include any of the further PAGA penalties Plaintiff seeks on a class wide basis in Count 5 ("PAGA Civil Penalties for Violation of Labor Code §§ 226.7, 512, and IWC Wage Order 1-2001, § 11 (Unlawful ODMPA)"); Count 6 ("PAGA Civil Penalties for Violation of Labor Code § 226.7 and IWC Wage Order 1-2001, §§ 11, 13 (Failure to Provide Suitable Facilities for Meal or Rest Periods)"; Count 7 ("PAGA Civil Penalties for Violation of Labor Code § 226.7 and IWC Wage Order 1-2001, §§ 12 (Failure to Provide or Authorize Off-Duty Rest Periods)"); and Count 8 ("PAGA Civil Penalties for Violation of Labor Code §§ 226.7 and 558(a) (Underpaid Wages for Failure to Provide 'Premiums' for Non-Compliant Meal and Rest Periods)."

54.     Based on Plaintiff's allegations, the total amount in controversy exceeds **$11,490,367**, including attorneys' fees. This amount far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

55.     Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

## VI.    **SUPPLEMENTAL JURISDICTION**

56.     All eight causes of action alleged by Plaintiff depend upon and require interpretation of the collective bargaining agreements, side letter agreements, and collectively bargained policies, and thus arise under Section 301. To the extent, however, that there are remaining claims for relief that are not completely preempted by Section 301, these claims are within the supplemental jurisdiction of this Court under 29 U.S.C. section 1367(a), in that they are so related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution. In the alternative, any such other claims for relief are separate and independent claims which are properly removable to this Court pursuant to 28 U.S.C. section 1441(c).  Thus, this action is removable in its entirety.

## VII.   **VENUE**

57.     The action was filed in Superior Court for the State of California, County of Sacramento. Venue therefore currently lies upon removal in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. sections 84(b) and 1441(a).

## VIII.  **INTRADISTRICT ASSIGNMENT**

58.     This action should presently be assigned to the Sacramento division because Plaintiff filed suit in the County of Sacramento.  (Ex. A, Compl.)

## IX.    **NOTICE OF REMOVAL**

59.     Tesoro will give notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in and for the County of Sacramento.  This Notice of Removal is concurrently being served on Plaintiff.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

38716051v.2

1     WHEREFORE, Tesoro respectfully requests that these proceedings entitled, *Jinetra Bonner,*

2  *individually, on behalf of herself and all others similarly situated, v. Tesoro Refining & Marketing*

3  *Company, LLC; and DOES 1 through 100, inclusive, Case No. 34-2017-00209750,* now pending in the

4  Superior Court of the State of California in and for Sacramento County, be removed to this Court.

5  DATED: May 3, 2017                                    Respectfully submitted,

6                                                        SEYFARTH SHAW LLP

7

8                                                        By: /s/ Michael W. Kopp

9                                                            Michael W. Kopp
                                                         Attorneys for Defendant
10                                                       TESORO REFINING & MARKETING
                                                         COMPANY LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT

38716051v.2

**EXHIBIT A**



**CORPORATION SERVICE COMPANY**

**RXT / ALL**
**Transmittal Number: 16466055**
**Date Processed: 04/05/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Shenna Bradshaw<br>Tesoro Companies, Inc.<br>19100 Ridgewood Parkway<br>San Antonio, TX 78259 |
| **Electronic copy provided to:** | Eddie Field<br>Kristin Partida<br>D. Haffner |

| | |
|---|---|
| **Entity:** | Tesoro Refining and Marketing Company<br>Entity ID Number  2336171 |
| **Entity Served:** | Tesoro Refining & Marketing Company |
| **Title of Action:** | Jinetra L. Bonner vs. Tesoro Refining & Marketing Company LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Sacramento County Superior Court, California |
| **Case/Reference No:** | 34-2017-002113750 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/03/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Timothy D Cohelan<br>619-595-3001 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):

TESORO REFINING & MARKETING COMPANY, LLC, a Delaware
Limited Liability Company; and DOES 1 through 100 inclusive

YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTÁ DEMANDANDO EL DEMANDANTE):

JINETRA BONNER, individually, on behalf herself and all others
similarly situated

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
FILED
Superior Court Of California,
Sacramento
03/22/2017
rsanmiguel
By_____, Deputy
Case Number:
**34-2017-00209750**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
(El nombre y dirección de la corte es): Sacramento Superior Court

720 9th Street
Sacramento, CA 95814

CASE NUMBER:
(Número del Caso):

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
J. Jason Hill, Esq., Cohelan Khoury & Singer, 605 C Street, Suite 200, San Diego, CA 92101; 619-595-3001

DATE: **MAR 2 2 2017**          Clerk, by **R. SAN MIGUEL**          , Deputy
(Fecha)                              (Secretario)                              (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): Tesoro Refining & Marketing Company
   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☒ other (specify): LLC  CCC 17061
4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>— J. Jason Hill, Esq. (SBN 179630)<br>COHELAN KHOURY & SINGER<br>605 C Street, Suite 200<br>San Diego, CA 92101 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: 619-595-3001   FAX NO.: 619-595-3000<br>ATTORNEY FOR *(Name):* Plaintiff Jinetra Bonner | **FILED**<br>**Superior Court Of California,**<br>**Sacramento** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sacramento
STREET ADDRESS: 720 Ninth Street
MAILING ADDRESS: 720 Ninth Street
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Courthouse

**03/22/2017**
**rsanmiguel**
**By** _____ **, Deputy**

CASE NAME:
Bonner v. Tesoro Refining & Marketing Company, LLC

**Case Number:**
**34-2017-00209750**

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18)<br>[ ] Other contract (37) | [ ] Mass tort (40)<br>[ ] Securities litigation (28)<br>[ ] Environmental/Toxic tort (30) |
| [ ] Asbestos (04)<br>[ ] Product liability (24)<br>[ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | **Real Property**<br>[ ] Eminent domain/Inverse<br>condemnation (14)<br>[ ] Wrongful eviction (33) | [ ] Insurance coverage claims arising from the<br>above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08)<br>[ ] Defamation (13)<br>[ ] Fraud (16)<br>[ ] Intellectual property (19)<br>[ ] Professional negligence (25)<br>[ ] Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>[ ] Commercial (31)<br>[ ] Residential (32)<br>[ ] Drugs (38)<br>**Judicial Review**<br>[ ] Asset forfeiture (05) | [ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint**<br>[ ] RICO (27)<br>[ ] Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21) |
| **Employment**<br>[ ] Wrongful termination (36)<br>[✓] Other employment (15) | [ ] Petition re: arbitration award (11)<br>[ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | [ ] Other petition *(not specified above)* (43) |

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the
factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [✓] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify):*  Eight (8)
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 21, 2017
J. Jason Hill, Esq.
_____
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed
  under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result
  in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all
  other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

FILED
Superior Court Of California,
Sacramento
03/22/2017
rsanmiguel
By_____, Deputy
Case Number:
34-2017-00209750

1  COHELAN KHOURY & SINGER
2  TIMOTHY D. COHELAN (SBN 60827)
   tcohelan@ckslaw.com
3  MICHAEL D. SINGER (SBN 115301)
   msinger@ckslaw.com
4  J. JASON HILL (179630)
   jhill@ckslaw.com
5  605 "C" Street, Suite 200
   San Diego, CA 92101
6  Telephone:  619/595-3001
7  Facsimile:  619/595-3000

8  Attorneys for Plaintiff, JINETRA BONNER, on behalf
9  of herself and others similarly situated

10            SUPERIOR COURT OF CALIFORNIA

11         IN AND FOR THE COUNTY OF SACRAMENTO

12  JINETRA BONNER, individually, on behalf      Case No.
    herself and all others similarly situated,
13                                                CLASS ACTION COMPLAINT and
                                                  REPRESENTATIVE ACTION UNDER THE
14                                                PRIVATE ATTORNEYS GENERAL ACT
                                                  ("PAGA") FOR:
15                    Plaintiffs,
                                                  (1) VIOLATION OF LABOR CODE §§
16      vs.                                       226.7, 512(a) and IWC Wage Order 1-2001, §
                                                  11 For Unlawful Use of an "On-Duty Meal
17                                                Period Agreement" ("ODMPA") or
18  TESORO REFINING & MARKETING                   alternatively, Failure to Provide Timely, Off-
    COMPANY, LLC, a Delaware Limited              Duty, 30-Minute Meal Periods;
19  Liability Company; and DOES 1 through 100
    inclusive,                                    (2) VIOLATION OF LABOR CODE § 226.7,
20                                                and IWC Wage Order 1-2001, §§ 11(E) and
                      Defendants.                 13(B) For Failure to Provide Suitable Facilities
21                                                for Meal or Rest Periods;
22
                                                  (3) VIOLATION OF LABOR CODE § 226.7,
23                                                and IWC Wage Order 1-2001, § 12 For
                                                  Failure to Provide Off-Duty Rest Periods;
24
25                                                (4) VIOLATIONS OF UNFAIR
                                                  COMPETITION LAW (Cal. Business &
26                                                Professions Code §§ 17200, et seq.);
27
                                                  (5) PAGA CIVIL PENALTIES for Violation
28                                                of Labor Code §§ 226.7, 512, and IWC Wage

CLASS ACTION and PAGA COMPLAINT

Order 1-2001, § 11 (Unlawful ODMPA);

(6)  PAGA CIVIL PENALTIES for Violation of § 226.7 and IWC Wage Order 1-2001, §§ 11, 13 (Failure to Provide Suitable Facilities for Meal or Rest Periods);

(7)  PAGA CIVIL PENALTIES for Violation of Labor Code § 226.7 and IWC Wage Order 1-2001, § 12 (Failure to Provide or Authorize Off-Duty Rest Periods);

(8)  PAGA CIVIL PENALTIES for Violation of Labor Code §§ 226.7 and 558(a) (Underpaid Wages for Failure to Provide "Premiums" for Non-Compliant Meal and Rest Period Periods)

**DEMAND FOR JURY TRIAL**

Plaintiff JINETRA BONNER ("Plaintiff" or "BONNER"), by and through her undersigned attorneys, brings this action on behalf of herself and all others similarly situated, as a proposed Class Action pursuant to Code of Civil Procedure § 382, and as Representative Action for recovery of civil penalties on behalf of the State of California's Labor and Workforce Development Agency ("LWDA") pursuant to the Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698, *et seq.*  Based upon personal knowledge as to herself and observed activities, direct observations, and upon information and belief as to all other matters, against Defendants TESORO REFINING & MARKETING COMPANY, LLC, and DOES 1 through 100, inclusive ("Defendants" and/or "TESORO"), Plaintiff alleges as follows:

<u>**GENERAL ALLEGATIONS AND CLAIMS**</u>

1.    This is a proposed wage and hour class action against Defendants for use of an unnecessary and oppressive "On-Duty Meal Period Agreement" ("ODMPA") for certain non-exempt hourly employees employed as "operators" at refineries in the State of California controlled by Defendants, which includes DOES 1-100, who are either affiliates, joint employers, subsidiaries or wholly controlled companies or entities operating in the State of California.

2.    At all times relevant herein, the California Labor Code and Wage Order 1-2001 of the California Industrial Welfare Commission ("IWC") applied to Plaintiff and the proposed class

- 1 -

CLASS ACTION and PAGA COMPLAINT                    Case No.

1    she seeks to represent.

2       3.      Specifically, the basis of Plaintiff's claim revolves around TESORO's: (1)

3    systematic use of an unlawful "On-Duty Meal Period Agreement" ("ODMPA") in violation of

4    IWC Wage Order 1-2001, § 11(C) and Cal. Labor Code §§ 226.7 and 512(a); (2) systematic

5    failure to provide a suitable place for eating an on-duty meal, also in violation of IWC Wage Order

6    1-2001, § 11(E) ("In all places of employment where employees are required to eat on the

7    premises, a suitable place for that purpose shall be designated"); and (3) systematic failure to

8    provide off-duty paid rest periods of ten minutes in length for every four hours worked, or major

9    fraction thereof, in violation of Labor Code § 226.7 as well as IWC Wage Order 1-2001, § 12, and

10   *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257.

11      4.      Plaintiff is informed and believes, and based thereon alleges, that she and

12   approximately 500 additional operators employed in the State of California were improperly and

13   unlawfully required to enter into ODMPAs when, in fact, the nature of their work did allow for

14   off-duty meal and rest periods through use of a "breaker" system such as that employed at other

15   refineries in California. This system allows for adequate staffing for competitors of TESORO to

16   comply with law, while TESORO obtains an unfair competitive advantage by requiring ODMPAs

17   and not permitting off-duty meal and rest periods.

18      5.      Specifically, Plaintiff is informed and believes that TESORO recently acquired

19   another refinery in California that specifically staffs and accounts for off-duty meal and rest

20   periods for its hourly operators or similar employees through use of a "breaker" system and relief

21   staff, and allows its operators to take off-duty meal and rest periods away from their assigned

22   workstation. This fact negates any claim that TESORO can make to justify a "nature of the work"

23   exception and its required ODMPA policy for non-exempt refinery operators. As a consequence,

24   TESORO systematically violated Labor Code §§ 226.7, 512, and IWC Wage Order 1-2001, § 11.

25      6.      The "nature of the work" exception to off-duty meal periods is to be narrowly

26   construed and is only for situations where, either by IWC order or decree from the DLSE, the

27   employer has no alternative but to require paid "on-duty" meal periods. Since the refinery

28   industry can allow for breaker systems and sufficient relief staff, nothing about the nature of

- 2 -

1  Plaintiff's work prevents full, timely, complete and uninterrupted meal or rest periods.

2       7.     Further, based on information and belief, Plaintiff alleges that during all relevant

3  times, TESORO violated IWC Wage Order 1-2001 § 13(B) which states: "suitable resting

4  facilities shall be provided in an area separate from the toilet rooms and shall be available to

5  employees during work hours." By requiring 12-hour shift operators to be on duty for meals, no

6  separate facilities were available to take a meal or rest period.   Rather, TESORO required

7  operators to remain at all times at or near their workstation to eat meals so that they could monitor

8  system operations, respond to console notifications, and/or notify superiors of any failures in the

9  refining process.  Plaintiff was required to stay at or near her workstation while on her 12-hour

10  shift and eat meals and take rest periods while continuing to work.

11       8.     Similarly, because of restrictions and limitations on the location for any rest

12  periods, including generally being required to remain at console stations to monitor systems,

13  Plaintiff was not provided duty-free rest periods in the manner required by Labor Code § 226.7

14  and IWC Wage Order 1-2001, § 12.   Further, due to rest period restrictions, including the

15  employees' inability to leave the workstation and/or console monitoring, all such rest periods were

16  under the employer's control and therefore employees were not relieved of all duties as required

17  by law. See generally, *Augustus v. ABM Security Services, Inc., supra,* 2 Cal.5th 257.

18       9.     Plaintiff alleges that, based on the nature of the work, TESORO's use of a

19  mandated ODMPA during all or a substantial portion of the proposed Class Period was unlawful

20  and violated the applicable wage order, because of the mandate by Defendant, its managing agents

21  and supervisors that the operators remain at their workstations.  Either employees, like Plaintiff,

22  were not given the option to reject the ODMPA, or said employees, despite the ODMPA, were not

23  afforded  a suitable place to take on-duty meals as their workstations were not adequate, suitable

24  nor appropriate for said meals. Accordingly, for each day that Plaintiff and the proposed Class

25  Members were subject to an unlawful ODMPA policy mandate by their employer, they are owed

26  one hour of premium pay at their respective regular rate of compensation, limited to one premium

27  payment per day said employees were subject to the ODMPA, as delineated by the California

28  Department of Labor Standards Enforcement ("DLSE") Policy and Interpretations Manual and

- 3 -

1    Guidelines and applicable law.

2    10.    Alternatively, because of the breaker system used at other refineries, including one

3    on information and belief acquired by Defendants during the Class Period, there was at no relevant

4    time any need for an ODMPA as there are available mechanisms, i.e. breaker system or relief

5    staff, that would permit operators in the State of California to leave their workstations and be able

6    to have duty-free, uninterrupted 30-minute unpaid meal periods at suitable break locations.

7    Defendants, and each them, however, imposed restrictions during the proposed Class Period that

8    required, improperly and unnecessarily, operators to remain at their terminals for their entire shift,

9    without relief, which was and remains unlawful and in violation of applicable California wage and

10    hour laws and regulations applicable to the refining industry.  Accordingly, as an alternative to the

11    requirement to follow an ODMPA policy mandate, Plaintiff and the proposed class allege that for

12    each day an unpaid 30-minute meal period was not provided as required by applicable law or the

13    wage order, one hour of premium pay is owed at each employee's regular rate of compensation, up

14    to a maximum of one hour of pay per day, per employee, when there was a violation, in an amount

15    according to proof.  Plaintiff and the proposed Meal Period Subclass expressly limit their recovery

16    for meal period premiums, irrespective of theory of liability, to one premium per day per

17    employee per violation in accordance with DLSE policy and applicable law.

18    11.    By this action, Plaintiff seeks to represent a proposed class and subclasses of

19    employees pursuant to California Code of Civil Procedure § 382, comprised of the following

20    individuals:

21    **PLAINTIFF CLASS:** All hourly non-exempt "operators" (and/or similar job titles or job

22    positions) employed in the State of California by TESORO REFINING & MARKETING

23    COMPANY, LLC and DOES 1 through 100 ("Defendants") during the proposed Class Period

24    (defined as at least four year prior to the commencement of this action until the commencement of

25    trial) who were subject to Defendants' uniform On-Duty Meal Period Agreement ("ODMPA")

26    policy.

27    **Subclass One ("The Meal Period Subclass"):** All members of the proposed Plaintiff

28    Class, who, as a result of Defendants' uniform ODMPA policy, were not provided 30-minute off-

- 4 -

1   duty meal periods or paid one hour of pay at their regular rate of compensation in lieu thereof, as

2   required by Labor Code §§ 226.7, 512(a), and/or IWC Wage Order 1-2001, § 11;

3       **Subclass Two ("The Suitable Place Subclass")**: All members of the proposed Plaintiff

4   Class, who, as a result of Defendants' uniform ODMPA policy, were not provided with a suitable

5   place to take meal and/or rest periods as required by IWC Wage Order 1-2001, §§ 11(E) and

6   13(B).

7       **Subclass Three ("The Rest Period Subclass")**: All members of the proposed Plaintiff

8   Class, who, as a result of Defendants' on-duty policies, were not provided off-duty, 10-minute

9   paid rest periods or paid one hour of pay at their regular rate of compensation in lieu thereof, as

10   required by Labor Code § 226.7 and IWC Wage Order 1-2001, § 12.

11       **Subclass Four ("The UCL Subclass")**: All members of the proposed Plaintiff Class who

12   during the proposed Class Period were subject to Defendants' business acts and/or practices

13   regarding the uniform use of ODMPAs, and who, if said business acts and/or practices are found

14   to be unlawful, unfair and/or deceptive, are owed restitution in the amounts proscribed by Labor

15   Code § 226.7 as premium wages up to a maximum of one hour of pay at the employees' regular

16   rate of compensation for each day that a compliant off-duty meal period was not provided and one

17   hour of pay at the employees' regular rate of compensation for each day that a compliant off-duty

18   rest period was not provided.

19                   **JURISDICTION AND VENUE**

20       12.    Venue as to each Defendant is proper in this judicial district, pursuant to Code of

21   Civil Procedure section 395, *et seq.* Defendant TESORO is a Delaware Limited Liability

22   Company with its Headquarters at 19100 Ridgewood Parkway, San Antonio, Texas 78259. Based

23   on California's Secretary of State Statement of Information, the only California office for

24   Defendant is listed at 2710 Gateway Oaks Drive, Sacramento, CA 95833. Venue is proper in this

25   Court pursuant to Code of Civil Procedure §§ 395(a) and 395.5 because part of the events or

26   omissions giving rise to this action have occurred and/or will occur in this County and Sacramento

27   County is the only County where Defendant lists a California office as a foreign limited liability

28   company.

- 5 -

13.    This Court has subject matter jurisdiction over this action because the causes of action are based solely on California statutes; thus there is no federal question at issue.

14.    Further, Business and Professions Code section 17203 provides that any person who engages in unfair competition may be enjoined in any court of competent jurisdiction. Business and Professions Code section 17204 provides that any person acting for the interests of itself, its members or the general public may bring an action in a court of competent jurisdiction. Thus, the above entitled court maintains appropriate jurisdiction to hear this matter.

**PARTIES**

15.    Plaintiff Jinetra Bonner is an hourly non-exempt employee of Defendant TESORO who resides in the State of California.  She is currently employed as an operator in the refinery industry and is subject to the protections of California Labor Code §§ 226.7, 512(a), and IWC Wage Order 1-2001, §§ 11-13.  At all times relevant herein, TESORO required its employees to sign ODMPAs, did not permit off-duty paid 30-minute meal periods, did not provide its employees with suitable place to take breaks, and did not permit off-duty paid 10-minute rest periods. Basically, TESORO required and continues to require Plaintiff to remain at her workstation and on duty for all shifts, and therefore subject to Defendants' control, so as to monitor refinery operations.  Plaintiff has not been provided with off-duty meal or rest periods nor has she been compensated for one hour of pay in lieu of being provided with compliant meal and/or rest periods, as mandated by Cal. Labor Code § 226.7.  Plaintiff has suffered actual harm and injury in fact from Defendants' wage and hour practices and has standing to bring these claims on behalf of herself and others similarly situated.

16.    Plaintiff is informed and believes that TESORO recently acquired a similar refinery in the State of California where hourly non-exempt operators are allowed "off-duty" meal and rest periods according to a planned "breaker" schedule.  Absent appropriate staffing, Plaintiff is informed and believes that TESORO and DOE Defendants have no factual basis to claim that the "nature of the work" allows TESORO to require operators in California to sign ODMPAs and prevents TESORO from relieving operators of all duties for meal and rest periods.

17.    Further, Plaintiff is required to take meal and rest periods at her workstation and

- 6 -

1   not in suitable facilities as required by IWC Wage Order 1-2001, §§ 11(E) and/or 13(B). Plaintiff

2   is informed and believes, and thereupon alleges that at all times relevant, Defendants could have

3   provided such a suitable place for operators to take off- duty rest and meal periods, but failed to do

4   so.

5       18.    Defendant TESORO is a Delaware Limited Liability Company, with Headquarters

6   in San Antonio, Texas. While TESORO operates refineries throughout California and employs

7   hourly operators like Plaintiff throughout the State of California, the only office listed with the

8   California Secretary of State for TESORO in the State of California is in the County of

9   Sacramento at 2710 Gateway Oaks Drive, Sacramento, California 95833.

10      19.    Plaintiff alleges, on information and belief, that at all times herein, Defendants'

11  agents, employees, representatives, executives, directors, partners, and/or subsidiaries were acting

12  within the course and scope of such agency, employment, and representation, on behalf of

13  Defendants, and/or were acting with direct knowledge and consent as a joint enterprise to violate

14  the laws and regulations in California concerning  meal and rest periods and providing a suitable

15  place to permit lawful meal and rest periods.

16      20.    DOES 1 to 100, inclusive are now, and/or at all times mentioned in this Complaint

17  were licensed to do business and/or actually doing business in the State of California. Plaintiff

18  does not know the true names or capacities, whether individual, partner or corporate, of DOES 1

19  to 100, inclusive and for that reason, DOES 1 to 100 are sued under such fictitious names pursuant

20  to California Code of Civil Procedure § 474. Plaintiff will seek leave of court to amend this

21  Complaint to allege such names and capacities as soon as they are ascertained.

22      21.    Defendants, and each of them, are now, and/or at all times mentioned in this

23  Complaint were in some manner legally responsible for the events, happenings and circumstances

24  alleged in this Complaint. Defendants proximately caused Plaintiff, all others similarly situated,

25  and the general public to be subjected to the unlawful practices, wrongs, complaints, injuries,

26  and/or damages alleged in this Complaint. Defendants, and each of them, are now, and/or at all

27  times mentioned in this Complaint were the agents, servants, and/or employees of some or all

28  other Defendants, and vice-versa, and in doing the things alleged in this Complaint, Defendants

- 7 -

1    are now and/or at all times mentioned in this Complaint were acting within the course and scope

2    of that agency, servitude, and/or employment.

3         22.    Defendants, and each of them, at all times mentioned in this Complaint aided and

4    abetted the acts and omissions of each and every one of the other Defendants thereby proximately

5    causing the damages alleged in this Complaint.

6                           **CLASS DEFINITIONS AND ALLEGATIONS**

7         23.    Plaintiff brings this action as a class action pursuant to Code of Civil Procedure §

8    382. Plaintiff brings this action on behalf of herself and all members of the following class

9    comprised of:

10        **PLAINTIFF CLASS:** All hourly non-exempt "operators" (and/or similar job
         titles or job positions) employed in the State of California by TESORO
11        REFINING & MARKETING COMPANY, LLC and DOES 1 through 100
         ("Defendants") during the proposed Class Period (defined as at least four year
12        prior to the commencement of this action until the commencement of trial) who
         were subject to Defendants' uniform On-Duty Meal Period Agreement
13        ("ODMPA") policy.

14        **Subclass One ("The Meal Period Subclass"):** All members of the proposed
15        Plaintiff Class, who, as a result of Defendants' uniform ODMPA policy, were not
         provided 30-minute off-duty meal periods or paid one hour of pay at their regular
16        rate of compensation in lieu thereof, as required by Labor Code §§ 226.7 and
         512(a), and/or IWC Wage Order 1-2001, § 11;

17        **Subclass Two ("The Suitable Place Subclass"):** All members of the proposed
18        Plaintiff Class, who, as a result of Defendants' uniform ODMPA policy, were not
         provided with a suitable place to take meal and/or rest periods as required by IWC
19        Wage Order 1-2001, §§ 11(E) and 13(B).

20        **Subclass Three ("The Rest Period Subclass"):** All members of the proposed
         Plaintiff Class, who, as a result of Defendants' on-duty policies, were not
21        provided off-duty, 10-minute paid rest periods or paid one hour of pay at their
         regular rate of compensation in lieu thereof, as required by Labor Code § 226.7
22        and IWC Wage Order 1-2001, § 12.

23        **Subclass Four ("The UCL Subclass"):** All members of the proposed Plaintiff
         Class who during the proposed Class Period were subject to Defendants' business
24        acts and/or practices regarding the uniform use of ODMPAs, and who, if said
         business acts and/or practices are found to be unlawful, unfair and/or deceptive,
25        are owed restitution in the amounts proscribed by Labor Code § 226.7 as premium
         wages up to a maximum of one hour of pay at the employees' regular rate of
26        compensation for each day that a compliant off-duty meal period was not
         provided and one hour of pay at the employees' regular rate of compensation for
27        each day that a compliant off-duty rest period was not provided.

28

                                      - 8 -

24.     Plaintiff reserves the right to modify, amend or create suitable subclasses of individuals and/or otherwise modify the definitions of the Class after she has had an opportunity to conduct discovery and as necessary to conform to proof.

25.     *Numerosity and Ascertainability.* The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that the proposed Class contains approximately 500 operators though the actual number and identity of the employees are maintained by Defendants and can be determined from corporate documents and payroll records.

26.     *Existence of Common Questions of Law and Fact.* This action involves common questions of law and fact, which include, but are not limited to, the following:

a.     Whether Defendants unlawfully used ODMPAs in order to require operators to eat at their workstations when in fact the nature of the work permitted off-duty meal periods;

b.     Whether Defendants violated Labor Code §§ 226.7, 512(a), and/or IWC Wage Order 1-2001, § 11 by requiring ODMPAs and by not permitting "breakers" to allow for Plaintiff and the Class to take lawful 30-minute off-duty meal periods;

c.     Whether Defendants' failure to provide a suitable place for meal and/or rest periods for Plaintiff and members of the Suitable Place Subclass is in violation of IWC Wage Order 1-2001, §§ 11(E) or 13(B);

d.     Whether Defendants violated Labor Code § 226.7 and IWC Wage Order 1-2001, § 12(A) by not relieving operators of all duty during paid 10-minute rest periods;

e.     Whether Defendants' conduct described herein constitutes a unlawful business acts or practices in violation of the UCL and if so, what is the amount of restitution owed by Defendants;

27.     *Typicality.* Plaintiff and members of the Class have been subject to and affected by the same acts and practices by Defendants regarding meal periods, rest periods and lack of a suitable place for breaks. The claims alleged herein are based on the same violations by Defendants that harmed Plaintiff and members of the Class. During the relevant time period, all members of the Class were subjected to the same wrongful conduct. Plaintiff's claims are typical

- 9 -

1  of the Class's claims and do not conflict with the interests of any other members of the Class.

2  Defendants' unlawful, unfair, deceptive, and/or fraudulent actions concern the same business

3  practices described herein irrespective of where they occurred or were experienced.

4       28.    *Adequacy.* Plaintiff will fairly and adequately protect the interests of the members

5  of the Class. Plaintiff has retained counsel experienced in complex employment and consumer

6  class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no

7  adverse or antagonistic interests to those of the Class.

8       29.    *Predominance and Superiority of Class Action.* Questions of law or fact common

9  to the Class predominate over any questions affecting only individual members and a class action

10 is superior to other methods for the fast and efficient adjudication of this controversy, for at least

11 the following reasons:

12       a.    Absent a class action, members of the Class as a practical matter will be unable to

13             obtain redress, Defendants' violations of their legal obligations will continue

14             without remedy, additional employees will be harmed, and Defendants will

15             continue to retain their ill-gotten gains;

16       b.    It would be a substantial hardship for most individual members of the Class if they

17             were forced to prosecute individual actions;

18       c.    When the liability of Defendants has been adjudicated, the Court will be able to

19             determine the claims of all members of the Class;

20       d.    A class action will permit an orderly and expeditious administration of each Class

21             Member's claims and foster economies of time, effort, and expense;

22       e.    A class action regarding the issues in this case does not create any problems of

23             manageability; and

24       f.    Defendants have acted on grounds generally applicable to the members of the Class

25             and Subclasses, making class-wide monetary relief appropriate.

26       30.   Notice to the putative Class may be accomplished through simple inspection of

27 Defendant corporate records, and Plaintiff does not believe class action manageability will present

28 any meaningful problems based on the narrow nature of the claims presented.

CLASS ACTION and PAGA COMPLAINT                    Case No.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF LABOR CODE §§ 226.7, 512(a) and IWC Wage Order 1-2001, § 11 For Unlawful Use of an "On-Duty Meal Period Agreement" ("ODMPA") or alternatively, for Failure to Provide Timely, Off-Duty, 30-Minute Meal Periods in the Time Periods Required by Law and Applicable Wage Order**
**(On Behalf of the Plaintiff and the Meal Period Subclass as Against All Defendants)**

31.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

32.    California Labor Code §§ 226.7(b) & (c) provide:

"(b) An employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health.

(c) If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided."

33.    California Labor Code § 512(a) provides:

"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

34.    IWC Wage Order 1-2001, § 11 provides:

"(A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. In the case of employees covered by a valid collective bargaining agreement, the parties to the collective bargaining agreement may agree to a meal period that

- 11 -

commences after no more than six (6) hours of work.

(B) An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

(C) Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. *An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty* and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

(D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

(E) In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated." (Emphasis added)

35.    Plaintiff is informed and believes, and based thereupon alleges, that Defendants regularly and systematically violated the above provision by requiring employees to sign ODMPAs when as a matter of fact, the nature of the operators' work at the refineries allowed for relief staff or "breakers" so that unpaid off-duty 30-minute meal periods could be provided (and actually are provided by competitor refineries in California). Plaintiff and the proposed Class were subject to the identical conduct and required to eat meals at their workstations without having any suitable location to eat meals or take rest periods. During the Class Period, Defendants failed to pay one hour of pay in lieu of proper, timely and compliant off-duty meal periods even though such breaks were readily feasible. TESORO simply determined it did not wish to provide breakers to comply with law even though the nature of the work was not the issue. Plaintiff, based on information, direct personal observation and belief, alleges that the nature of the work did not prevent TESORO from providing timely and compliant meal periods where operators were relieved of all duty and allowing for a proper and suitable place away from their workstations for such meal and rest periods.

36.    Plaintiff therefore alleges the ODMPAs were not valid and unnecessary, and that

- 12 -

1  premium pay was required to be paid to members of the Meal Period Subclass for each day that an

2  off-duty meal period was not provided, in an amount according to proof.

3      37.    Alternatively, and at a maximum of one meal period premium per employee per

4  day of violation during the proposed Class Period, Plaintiff alleges that even if ODMPAs were

5  lawful (which is alleged solely in the alternative), TESORO is liable for failing to provide either

6  off-duty second meal periods for qualifying shifts, and/or a location that is suitable for eating

7  meals.  As indicated above, and consistent with DLSE guidelines and applicable law, in any

8  alternative, Plaintiff and the Meal Period Subclass seek a maximum of one hour of premium pay

9  per employee per for each day compliant meals were not provided, in an amount subject to proof.

10  Neither Plaintiff nor the proposed Meal Period Subclass seeks multiple (stacking) meal period

11  violation premiums for any day or for any employee.

12  **SECOND CAUSE OF ACTION**

13  **VIOLATION OF LABOR CODE § 226.7, and IWC Wage Order 1-2001, §§ 11(E) and 13(B)**
    **For Failure to Provide Suitable Facilities for Meal Period and/or Rest Periods**

14  **(On Behalf of the Plaintiff and the Suitable Place Subclass and Against All Defendants)**

15      38.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

16  if fully set forth herein.

17      39.    Labor Code § 226.7(c) provides:

18        "If an employer fails to provide an employee a meal or rest or recovery period in
         accordance with a state law, including, but not limited to, an applicable statute or

19         applicable regulation, standard, or order of the Industrial Welfare Commission,
         the Occupational Safety and Health Standards Board, or the Division of

20         Occupational Safety and Health, the employer shall pay the employee one
         additional hour of pay at the employee's regular rate of compensation for each

21         workday that the meal or rest or recovery period is not provided."

22      40.    IWC Wage Order 1-2001, §§ 11(D) and (E) provide:

23        "(D) If an employer fails to provide an employee a meal period in accordance
         with the applicable provisions of this order, the employer shall pay the employee

24         one (1) hour of pay at the employee's regular rate of compensation for each work
         day that the meal period is not provided.

25        (E) In all places of employment where employees are required to eat on the

26         premises, a suitable place for that purpose shall be designated."

27      41.    IWC Wage Order 1-2001, § 13(B) provides: "Suitable resting facilities shall be

28  provided in an area separate from the toilet rooms and shall be available to employees during work

- 13 -

1   hours."

2   42.    Because Plaintiff and the "Suitable Place" Subclass were required to take meal and

3   rest periods at their workstations, Defendants violated the Labor Code and the Wage Order by

4   failing to provide a suitable area in which Plaintiff and members of the Subclass could eat on

5   premises or take breaks in designated areas. Defendants are therefore liable for one hour of pay as

6   compensation in lieu of a complaint break for each day that a non-compliant meal or rest period

7   was taken at the operator's workstation rather than at a suitable on-premises area designated for

8   the purpose of eating meals. Plaintiff will seek sums to account for the unpaid premiums owed to

9   her and the members of the proposed Subclass in an amount according to proof.

10              **THIRD CAUSE OF ACTION**

11   **VIOLATION OF LABOR CODE § 226.7, and IWC Wage Order 1-2001, § 12 For Failure to
    Provide Off-Duty Rest Periods**

12   **(On Behalf of the Plaintiff and Rest Period Subclass and Against All Defendants)**

13   43.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

14   if fully set forth herein.

15   44.    IWC Wage Order 1-2001, § 12 provides:

16       "(A) Every employer shall authorize and permit all employees to take rest
         periods, which insofar as practicable shall be in the middle of each work period.

17       The authorized rest period time shall be based on the total hours worked daily at
         the rate of ten (10) minutes net rest time per four (4) hours or major fraction

18       thereof. However, a rest period need not be authorized for employees whose total
         daily work time is less than three and one-half (31/2) hours. Authorized rest

19       period time shall be counted as hours worked for which there shall be no

20       deduction from wages.

21       (B) If an employer fails to provide an employee a rest period in accordance with
         the applicable provisions of this order, the employer shall pay the employee one

22       (1) hour of pay at the employee's regular rate of compensation for each work day
         that the rest period is not provided."

23

24   45.    As herein alleged, Defendants, and each of them, failed to allow hourly-paid and

25   non-exempt operators in California to be relieved of all duties for paid 10-minute rest periods as

26   Plaintiff and the Rest Period Subclass were required to remain at their workstation to monitor

27   refinery operations without having any breakers to relieve them of work duties. At the same time,

28   Defendants did not comply with Labor Code § 226.7 by paying Plaintiff or members of the

- 14 -

CLASS ACTION and PAGA COMPLAINT                    Case No.

1    Subclass any premium wages (one hour of pay) in lieu of providing compliant rest periods

2    wherein the employees were relieved of all duty and not under the control of the Defendants.

3        46.    Plaintiff, on behalf of herself and the Rest Period Subclass, will seek recovery of

4    said rest period premiums in an amount according to proof.

5                        **FOURTH CAUSE OF ACTION**

6    **VIOLATIONS OF UNFAIR COMPETITION LAW (Cal. Business & Professions Code**
     **§ 17200, *et seq.*)**

7        **(On Behalf of the Plaintiff and the UCL Subclass and Against All Defendants)**

8        47.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

9    if fully set forth herein.

10        48.    The failure to pay rest and meal period premiums caused by Defendants' facially

11    non-compliant written policies constituted unlawful and unfair business acts and/or practices

12    within the meaning of Business and Professions Code section 17200, *et seq.*, including but not

13    limited to a violation of the applicable State of California Industrial Welfare Commission Wage

14    Orders, regulations and statutes, or is a practice which is otherwise unfair, deceptive and unlawful.

15    By failing to engage breakers to relieve Plaintiff and the Class from work duties during their

16    shifts, Defendants violated the Labor Code and the applicable regulations regarding similar

17    refinery workers and gained an unfair competitive advantage over other market participants in

18    California who did provide operators with compliant meal periods, break areas, and rest periods,

19    or at least provided compensation in lieu thereof as premium pay.

20        49.    This cause of action is brought under Business and Professions Code sections

21    17203 and 17204, commonly called the Unfair Competition Law. Under this cause of action and

22    pursuant to Business and Professions Code section 17208, Plaintiff and members of the proposed

23    UCL Subclass seek restitution of premium wages and other pay owed, where such wages were due

24    during the Class Period, according to proof.

25        50.    This cause of action is brought as a cumulative remedy as provided in Business and

26    Professions Code section 17205, and is intended as an alternative remedy for restitution for

27    Plaintiff, the "Meal Period Subclass," the "Suitable Place Subclass," and the "Rest Period

28    Subclass" as restitution for any portion of time commencing within *four years* before filing this

                                    - 15 -

1  complaint and the applicable limitations period for the "UCL Subclass," and will grant Plaintiff

2  the right to trial of equitable claims before legal claims.

3      51.  Plaintiff and the members of the proposed UCL Subclass she seeks to represent

4  request relief as described below, including restitution owed, in an amount according to proof, and

5  for reasonable costs of suit and reasonable attorney's fees as provided by the Labor Code, Code of

6  Civil Procedure § 1021.5, or other applicable law.

**FIFTH CAUSE OF ACTION**
**PAGA CIVIL PENALTIES Pursuant to Labor Code §§ 2699-2699.5 for Recovery of Civil**
**Penalties Related to Violations of Labor Code §§ 226.7, 512, and IWC Wage Order 1-2001,**
**§ 11 (Unlawful ODMPA)**
**(By Plaintiff as a Representative of the LWDA as against all Defendants)**

10      52.  Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

11  if fully set forth herein.

12      53.  On January 12, 2017, Plaintiff gave legal and adequate notice to the LWDA and to

13  the Defendants of the factual basis and legal theories regarding Defendants' liability for civil

14  penalties pursuant to the Private Attorneys General Act of 2004 ("PAGA") codified as Labor Code

15  §§ 2698-2699.5. A true and correct copy of the Notice is attached hereto as Exhibit 1 and is

16  expressly incorporated herein by this reference. Exhibit 1 was delivered electronically to the

17  LWDA in the manner required by Labor Code § 2699.3(a) along with appropriate filing fee. The

18  Notice was also sent to the Defendant TESORO's agent for service of process and TESORO's

19  corporate headquarters by certified mail with return receipt. As of the filing of this Complaint at

20  least 65 calendar days have elapsed and the LWDA has not intervened, and Defendant TESORO

21  has provided no notice of cure. Plaintiff alleges that all administrative exhaustion and notice

22  requirements have been satisfied and that she is deemed a "representative" of the State of

23  California's LWDA and is authorized to commence a civil action pursuant to Labor Code §

24  2699(a)(2)(A), and therefore files this action as "representative action" as expressly authorized

25  by Labor Code § 2699(a).

26      54.  Plaintiff is an "aggrieved employee" as defined by Labor Code § 2699(c).

27      55.  Defendants did not provide any cure after Notice was provided to the LWDA.

28      56.  The LWDA did not intervene or investigate the allegations in the Notice within 60

- 16 -

1  days of the Notice and at least 65 days have elapsed since the PAGA Notice was filed with the

2  LWDA.

3      57.   Labor Code § 2699(a) provides: "Notwithstanding any other provision of law, any

4  provision of this code that provides for a civil penalty to be assessed and collected by the Labor

5  and Workforce Development Agency or any of its departments, divisions, commissions, boards,

6  agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a

7  civil action brought by an aggrieved employee on behalf of himself or herself and other current or

8  former employees pursuant to the procedures specified in Section 2699.3."

9      58.   Plaintiff has fully complied with procedures specified in Labor Code § 2699.3.

10     59.   Labor Code § 2699(f)(2) states: "For all provisions of this code except those for

11  which a civil penalty is specifically provided, there is established a civil penalty for a violation of

12  these provisions, as follows... (2) If, at the time of the alleged violation, the person employs one

13  or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee

14  per pay period for the initial violation and two hundred dollars ($200) for each aggrieved

15  employee per pay period for each subsequent violation."

16     60.   Labor Code § 2699.5 provides, in pertinent part that "[t]he provisions of

17  subdivision (a) of Section 2699.3 apply to any alleged violation of the following provisions:

18  [Labor Code §§] 226.7... 512" as provisions of the Code that allow for recovery of civil penalties

19  pursuant to PAGA.

20     61.   Plaintiff alleges that Defendants, and each of them, routinely, systematically and

21  uniformly violated Labor Code §§ 226.7 and 512 during the applicable limitation period for each

22  pay period for approximately 500 aggrieved employees in the State of California by failing to

23  provide proper meal periods and/or one hour of pay in lieu thereof by requiring on-duty meals and

24  by requiring operators to remain at their workstations during meal and rest periods.

25     62.   Plaintiff is informed and believes that IWC Wage Order 1-2001, § 11 applied to her

26  and other aggrieved employees in the State of California during the applicable limitations period.

27  Plaintiff alleges that the work performed is in the manufacturing and refinery industry, and,

28  accordingly, under DLSE guidelines, Plaintiff alleges that she and other aggrieved employees

- 17 -

were hourly-paid (non-exempt) employees subject to IWC Wage Order 1-2001, § 11 at all relevant times.

63.    Labor Code §§ 558(a)(1)-(3) provide:

"Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee."

64.    Plaintiff and other aggrieved employees at all relevant times were also subject to IWC Wage Order 1-2001, § 11. Defendants routinely, systematically, and uniformly failed to comply with the Wage Order during the applicable limitation period for each pay period for approximately 500 aggrieved employees in the State of California by failing to provide proper meal periods and/or one hour of pay in lieu thereof by requiring on-duty meals and requiring operators to remain at their workstations during meal and rest periods.

65.    Defendants, and each of them, were at all relevant times, Plaintiff's employer in the State of California and violated Labor Code §§ 226.7, 512, and IWC Wage Order 1-2001, § 11 as alleged above, by requiring ODMPAs unlawfully when the nature of the work did not require the Defendants to use ODMPAs, and because Plaintiff and other aggrieved operator employees in California were not provided 30-minute unpaid meal periods where they were relieved of all work duties. This was a uniform policy that applied to all similarly-aggrieved operators. Plaintiff has discovered that other facilities in California operated by Defendants used and continue to use a "breaker" system that permitted operators to have 30-minute off-duty meal periods.

66.    Plaintiff alleges that Defendants, and each of them, are liable for civil penalties under the PAGA on behalf of the LWDA within the applicable limitations period of Labor Code § 2699(f)(2) as to violations based on Labor Code §§ 226.7(c) and 512(a), in the amount of $100

- 18 -

1   for each aggrieved employee per pay period for the initial violation and $200 for each subsequent

2   violation, for failing to provide 30-minute off-duty meal periods to Plaintiff and other aggrieved

3   employees, to be distributed in the manner provided by Labor Code § 2699(i) with 75% of

4   recovery to the LWDA and 25% of the recovery to the aggrieved employees in an amount

5   according to proof and subject to approval by the Court.

6         67.     Defendants, and each of them, also routinely and systematically violated IWC

7   Wage Order 1-2001, § 11. Pursuant to Labor Code § 558(a), Defendants are also liable for civil

8   penalties in the amount of $50 "for each underpaid employee for each pay period for which the

9   employee was underpaid" for the initial violation and $100 for each subsequent violation for each

10   underpaid employee for each pay period for which Plaintiff and each aggrieved employee was

11   underpaid under the Wage Order, to be distributed in the manner provided by Labor Code §

12   2699(i) with 75% of recovery to the LWDA and 25% of the recovery to the aggrieved employees

13   in an amount according to proof and subject to approval by the Court.

14         68.     Plaintiff will seek also seek administration costs, accounting costs, and attorney's

15   fees to the extent permitted by Labor Code 2699(g)(1), in an amount according to proof.

### SIXTH CAUSE OF ACTION
**PAGA CIVIL PENALTIES Pursuant to Labor Code §§ 2699-2699.5 for Recovery of Civil Penalties Related to Violations of Labor Code § 226.7 and IWC Wage Order 1-2001, §§ 11, 13 (Failure to Provide Suitable Facilities for Meal or Rest Periods) (By Plaintiff as a Representative of the LWDA as against all Defendants)**

19         69.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

20   if fully set forth herein.

21         70.     In addition to the above allegations, Plaintiff seeks recovery of civil penalties

22   pursuant to the PAGA for Defendants' failure to provide suitable facilities and/or a place for meal

23   and rest periods, by requiring such breaks be taken at workstations.

24         71.     Plaintiff is informed and believes that IWC Wage Order 1-2001, §§ 11 and 13

25   applied to her and other aggrieved employees in the State of California during the applicable

26   limitations period. Plaintiff alleges that the work performed is in the manufacturing and refinery

27   industry, and, accordingly, DLSE guidelines, Plaintiff alleges that she and other aggrieved

28   employees were hourly-paid (non-exempt) employees subject to IWC Wage Order 1-2001, §§ 11

1    and 13 at all relevant times.

2        72.    IWC Wage Order 1-2001, § 11(E) provides: "In all places of employment where

3    employees are required to eat on the premises, a suitable place for that purpose shall be

4    designated."

5        73.    IWC Wage Order 1-2001, § 13(B) provides: "Suitable resting facilities shall be

6    provided in an area separate from the toilet rooms and shall be available to employees during work

7    hours."

8        74.    Because Plaintiff and all other aggrieved operators were required to maintain their

9    workstations at all times during their shifts, Plaintiff alleges that Defendants, and each them,

10   violated the Wage Order and are liable for civil penalties as required under Labor Code § 558(a)

11   which provides:

12           "Any employer or other person acting on behalf of an employer who violates, or
             causes to be violated, a section of this chapter or any provision regulating hours
13           and days of work in any order of the Industrial Welfare Commission shall be
             subject to a civil penalty as follows:
14
             (1) For any initial violation, fifty dollars ($50) for each underpaid employee
15           for each pay period for which the employee was underpaid in addition to an
             amount sufficient to recover underpaid wages.
16
             (2) For each subsequent violation, one hundred dollars ($100) for each
17           underpaid employee for each pay period for which the employee was
             underpaid in addition to an amount sufficient to recover underpaid wages.
18
             (3) Wages recovered pursuant to this section shall be paid to the affected
19           employee.

20       75.    Plaintiff alleges that Defendants routinely and systematically violated IWC Wage

21   Order 1-2001, §§ 11(E) and 13(B) based on their business practices. Therefore, pursuant to Labor

22   Code § 558(a), Defendants are also liable for civil penalties in the amount of $50 "for each

23   underpaid employee for each pay period for which the employee was underpaid" for the initial

24   violation and $100 for each subsequent violation for each underpaid employee for each pay period

25   for which Plaintiff and each aggrieved employee was underpaid under the Wage Order, to be

26   distributed in the manner provided by Labor Code § 2699(i) with 75% of recovery to the LWDA

27   and 25% of the recovery to the aggrieved employees in an amount according to proof and subject

28   to approval by the Court.

CLASS ACTION and PAGA COMPLAINT                    Case No.

76.    Plaintiff will seek also seek administration costs, accounting costs, and attorney's fees to the extent permitted by Labor Code 2699(g)(1), in an amount according to proof.

### SEVENTH CAUSE OF ACTION
**PAGA CIVIL PENALTIES Pursuant to Labor Code §§ 2699-2699.5 for Recovery of Civil Penalties Related to Violations of Labor Code § 226.7 and IWC Wage Order 1-2001, § 12 (Failure to Provide or Authorize Off-Duty Rest Periods)**
**(By Plaintiff as a Representative of the LWDA as against all Defendants)**

77.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

78.    In addition to the above allegations, Plaintiff seeks recovery of civil penalties pursuant to the PAGA for Defendants' failure to provide proper rest periods, by requiring such breaks be taken at workstations and employees not being relieved of all work duties.

79.    IWC Wage Order 1-2001, § 12 provides:

"(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (31/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided."

80.    Plaintiff is informed and believes that IWC Wage Order 1-2001, § 12 applied to her and other aggrieved employees in the State of California during the applicable limitations period. Plaintiff alleges that the work performed is in the manufacturing and refinery industry, and, accordingly, under DLSE guidelines, Plaintiff alleges that she and other aggrieved employees were hourly-paid (non-exempt) employees subject to IWC Wage Order 1-2001, § 12 at all relevant times

81.    Because Plaintiff and all other aggrieved operators were required to maintain their workstations at all times during their shifts, Plaintiff alleges that Defendants, and each them,

CLASS ACTION and PAGA COMPLAINT                    Case No.

1  violated the Wage Order by routinely, systematically and uniformly preventing 10-minute paid

2  rest periods wherein the employees were relieved of all work duties as required by the Wage Order

3  and *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257.

4      82.    Therefore, Defendants, and each of them, are liable for civil penalties as required

5  under Labor Code § 558(a) in the amount of $50 "for each underpaid employee for each pay

6  period for which the employee was underpaid" for the initial violation and $100 for each

7  subsequent violation for each underpaid employee for each pay period for which Plaintiff and each

8  aggrieved employee was underpaid under the Wage Order, to be distributed in the manner

9  provided by Labor Code § 2699(i) with 75% of recovery to the LWDA and 25% of the recovery to

10  the aggrieved employees in an amount according to proof and subject to approval by the Court.

11      83.    Plaintiff will seek also seek administration costs, accounting costs, and attorney's

12  fees to the extent permitted by Labor Code 2699(g)(1), in an amount according to proof.

13  **EIGTH CAUSE OF ACTION**
**PAGA CIVIL PENALTIES Pursuant to Labor Code Violation of Labor Code §§ 226.7 and**

14  **558(a) (Underpaid Wages for Failure to Provide Meal and Rest Period "Premiums" for**
**Non-Compliant Meal and Rest Periods)**

15  **(By Plaintiff as a Representative of the LWDA as against all Defendants)**

16      84.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as

17  if fully set forth herein.

18      85.    In addition to the above allegations, Plaintiff seeks recovery of "underpaid" wages

19  as part of a civil penalty recovery as permitted by the PAGA for Defendants' collective and

20  uniform failure to provide, in lieu of proper meal and rest periods, "one hour of pay at the

21  employees regular rate of compensation" for a failure to provide, authorize or permit compliant

22  meal periods and rest periods as *required* by Labor Code §§ 226.7 and 512 (a), as well IWC

23  Wage Order 1-2001, §§ 11 and 12. As alleged by Plaintiff, individually, and on behalf of other

24  aggrieved hourly-paid (non-exempt) operator employees, Defendants, and each of them, NEVER

25  PAID A "PREMIUM WAGE" for systematically non-compliant meal and rest periods. Pursuant

26  to the court's holding in *Murphy v. Kenneth Cole* (2007) 40 Cal.4th 1094 ("We hold that [Labor

27  Code] section 226.7's plain language, the administrative and legislative history, and the

28  compensatory purpose of the remedy compel the conclusion that the 'additional hour of pay' is a

- 22 -

CLASS ACTION and PAGA COMPLAINT                    Case No.

premium wage, not a penalty"), as a result of each violation, Defendants engaged in direct, deliberate and intentional acts and practices of failing to pay an "additional hour of pay" for each day for each aggrieved employee in each pay period, limited to one hour of pay, for any non-compliant meal periods, and one more hour of pay at the employees' regular rate of compensation for any non-compliant rest periods, up to a cumulative maximum of 2 "one-hour" premiums for each day a compliant meal period and/or rest period was not provided.  See, DLSE Policy and Interpretations Manual at §§ 45.2.8 and 45.3.7.

86.    Since Defendants never paid any "premiums" as required by *Murphy v. Kenneth Cole* (2007) 40 Cal.4th 1094, Plaintiff, as is the duty as a "representative" of the LWDA and the State of California, seeks, IN ADDITION TO CIVIL PENALTIES, the recovery of "underpaid wages" as defined by Labor Code § 558(a) due to Defendants' requirement that meal and rest periods be taken at workstations and employees not being relieved of all work duties.  Labor Code § 558(a)(1)-(3) provides:

> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages.*
>
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid *in addition to an amount sufficient to recover underpaid wages.*
>
> (3) *Wages recovered pursuant to this section shall be paid to the affected employee.*
> [Emphasis added].

87.    Based on information and belief, and as a representative of the State of California's Labor and Workforce Development Agency, Plaintiff alleges that as such a representative, part of the recovery of civil penalties under the PAGA are actual underpaid wages for each meal and/or rest period premium that Defendants were otherwise required to pay under the Labor Code and applicable Wage Order during the limitations period for this action.

88.    Because Defendants failed to comply with law or pay "premium wages" as required by under the Labor Code, Plaintiff will seek recovery of "underpaid wages" to the fullest extent permitted under the PAGA and Labor Code § 558(a) in an amount sufficient to recover underpaid wages, to be distributed to the aggrieved, impacted employees and, "shall be paid to the affected

- 23 -

1  employees" in additional to other penalties. "Wages recovered pursuant to this section shall be

2  paid to the affected employees" in an amount according to proof and subject to approval by the

3  Court.

4          89.    Plaintiff will seek also seek administration costs, accounting costs, and attorney's

5  fees to the extent permitted by Labor Code 2699(g)(1), in an amount according to proof.

6  **PRAYER FOR RELIEF**

7  Wherefore, Plaintiff prays for a judgment as follows:

8        a.    Certifying the Class as requested herein, appointing Plaintiff as class representative

9               for the Class, and appointing Plaintiff's attorneys as counsel for the Class;

10       b.    On the First Cause of Action: For meal period "premium wages" as required by

11              Labor Code §§ 226.7(c), 512 (a) and IWC Wage Order 1-2001 § 11 for failing to

12              provide 30-minute off-duty meal period to be distributed to Plaintiff and members

13              of the "Meal Period Subclass" in a fair and equitable manner and in an amount

14              according to proof;

15       c.    On the Second Cause of Action: For premium pay wages as required by Labor

16              Code § 226.7(c) and IWC Wage Order 1-2001 §§ 11(E) and 13(B) for failing to

17              provide a suitable place for meal or rest periods to be distributed to Plaintiff and

18              members of the "Suitable Place Subclass" in a fair and equitable manner and in an

19              amount according to proof;

20       d.    On the Third Cause of Action: For premium pay wages as required by Labor Code

21              § 226.7(c) and IWC Wage Order 1-2001 § 12(B) for failing to provide off-duty 10-

22              minute paid rest periods to be distributed to Plaintiff and members of the "Rest

23              Period Subclass" in a fair and equitable manner and in an amount according to

24              proof;

25       e.    On the Fourth Cause of Action: For restitution of wages due to the "UCL Subclass"

26              members pursuant to Business & Professions Code §17200, *et seq.*, distributed in a

27              fair and equitable manner in an amount according to proof and for declaratory relief

28              determining that the "nature of the work" does not prevent operators in the State of

- 24 -

1    California from being provided timely compliant 30-minute off-duty meal periods;

2    f.    On the Fifth Cause of Action: For recovery of civil penalties on behalf of the

3    LWDA within the applicable limitations period of Labor Code § 2699(f)(2) in the

4    amount of $100 for each aggrieved employee per pay period for the initial violation

5    and $200 for each subsequent violation, for violations of Labor Code §§ 226.7(c),

6    512(a) and IWC Wage Order 1-2001, § 11 for failing to provide 30-minute off-duty

7    meal periods to Plaintiff and other aggrieved employees, to be distributed in the

8    manner provided by Labor Code § 2699(i) with 75% of recovery to the LWDA and

9    25% of the recovery to the aggrieved employees in an amount according to proof

10   and subject to approval by the Court;

11   g.    On the Sixth Cause of Action: For recovery of civil penalties on behalf of the

12   LWDA within the applicable limitations period of Labor Code § 2699(f)(2) in the

13   amount of $100 for each aggrieved employee per pay period for the initial violation

14   and $200 for each subsequent violation, for violations of Labor Code § 226.7(c)

15   and IWC Wage Order 1-2001 §§11(E) and 13(B) for failing to provide a suitable

16   place for meal or rest periods, to be distributed in the manner provided by Labor

17   Code § 2699(i) with 75% of recovery to the LWDA and 25% of the recovery to the

18   aggrieved employees, in an amount according to proof and subject to approval by

19   the Court;

20   h.    On the Seventh Cause of Action: For recovery of civil penalties on behalf of the

21   LWDA within the applicable limitations period of Labor Code § 2699(f)(2) in the

22   amount of $100 for each aggrieved employee per pay period for the initial violation

23   and $200 for each subsequent violation, for violations of Labor Code § 226.7(c)

24   and IWC Wage Order 1-2001 § 12(B) for failing to provide off-duty 10-minute

25   paid rest periods, to be distributed in the manner provided by Labor Code § 2699(i)

26   with 75% of recovery to the LWDA and 25% of the recovery to the aggrieved

27   employees, in an amount according to proof and subject to approval by the Court;

28

CLASS ACTION and PAGA COMPLAINT                          Case No.

1      i.     On the Eighth Cause of Action: For recovery of civil penalties on behalf of the
LWDA within the applicable limitations period of Labor Code § 558(a) in the
amount of $50 for the initial violation for each underpaid employee for each pay
period for which the employee was underpaid in addition to an amount sufficient to
recover underpaid wages, and for each subsequent violation the amount of $100 for
each underpaid employee for each pay period for which the employee was
underpaid in addition to an amount sufficient to recover underpaid wages, with
penalties to be distributed in the manner provided by Labor Code § 2699(i) with
75% of recovery to the LWDA and 25% of the recovery to the aggrieved
employees, and any underpaid wages recovered pursuant to Labor Code § 558(a)(3)
"shall be paid to the affected employees" in an amount according to proof and
subject to approval by the Court;

j.     For attorney's fees and costs, as required by statute and/or Cal. Code of Civil
Procedure § 1021.5, Labor Code § 2699(g)(1) or other applicable statute;

k.     Awarding litigation costs as permitted by law;

l.     Awarding costs necessary to perform an accounting and/or administration costs for
distribution of restitution to the proposed class;

m.     Awarding pre- and post-judgment interest at the legal rate for ascertainable and
fixed amounts of loss as shown by an accounting; and

n.     Providing such further relief as may be appropriate, equitable, proper and just.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial to the extent claims are lawfully permitted a jury trial.

Dated: March 21, 2017          COHELAN KHOURY & SINGER

Michael D. Singer, Esq.
J. Jason Hill, Esq.
Counsel for Plaintiff Jinetra Bonner and the
proposed Class

- 26 -

CLASS ACTION and PAGA COMPLAINT          Case No.

# EXHIBIT 1

# COHELAN KHOURY & SINGER

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN, APLC*
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, APLC♦

(*Also admitted in the District of Columbia)
(♦Also admitted in Colorado)

**ATTORNEYS AT LAW**

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
www.ckslaw.com

JEFF GERACIA
J. JASON HILL†
JANINE R. MENHENNET

(† Also admitted in Illinois)
(Δ Of Counsel)

January 12, 2017

## NOTICE OF LABOR CODE VIOLATIONS PURSUANT TO LABOR CODE SECTION 2699.3

## NOTICE VIA ONLINE SUBMISSION (https://dir.tfaforms.net/116)

California Labor and Workforce Development Agency

## NOTICE FEE VIA CERTIFIED U.S. MAIL WITH RETURN RECEIPT

Department of Industrial Relations
Accounting Unit
455 Golden Gate Avenue, 10th Floor
San Francisco, California 94102

> Re: Jinetra L. Bonner, on behalf of herself and all "aggrieved" hourly-paid California-based employees of Tesoro Refining & Marketing Company LLC
> Notice pursuant to California Labor Code section 2698, *et seq.*, the Private Attorneys General Act ("PAGA")

Dear PAGA Administrator:

Our office has been retained to represent aggrieved employee, Jinetra Bonner (hereinafter "Claimant"), who is a current employee of Tesoro Refining & Marketing Company LLC ("Tesoro"), in connection with investigation of a representative action under California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code §§ 2698, *et seq.*, regarding potential violations of applicable employment laws.

### Legal and Factual Basis for Claims for PAGA Penalties

The basis of the claim revolves around Tesoro's: (1) systematic use of an unlawful "On Duty Meal Period Agreement" ("ODMPA") in violation of Industrial Welfare Commission ("IWC") Wage Order 1-2001, § 11(E); Labor Code § 226.7, § 512, and in violation of the Private Attorneys General Act ("PAGA") Labor Code § 2698, *et seq.*; (2) systematic failure to provide a suitable place for eating an on-duty meal, also in violation of IWC Wage Order 1-2001, § 11(E) ("In all places of employment where employees are required to eat on the premises, a suitable place for that purpose shall be designated"); Labor Code § 226.7, and in violation of PAGA, Labor Code § 2698, *et seq.*, and (3) systematic failure to provide off-duty paid rest periods of ten minutes in length for every four hours worked, or major fraction thereof, in violation of Labor Code § 226.7, Labor Code § 2698, *et seq.*, as well as IWC Wage Order 1-2001, § 12, and *Augustus v. ABM Security Services, Inc.* (2016) __ Cal.4th __ (Case No. S224853), December 22, 2016.

PAGA Notice Re: Tesoro Refining and Marketing Company LLC
January 12, 2017
P a g e | 2

Claimant is informed and believes that approximately 500 employee "operators" were improperly and unlawfully required to enter into ODMPAs when, in fact, the nature of their work did allow for off-duty meal and rest periods through use of a breaker system such as that employed at other refineries in California. This system allows for adequate staffing by competitors of Tesoro to comply with law, while Tesoro obtains an unfair competitive advantage by requiring ODMPAs and not permitting off-duty breaks.

Further, Tesoro failed to provide suitable locations for on-duty meal periods in violation of the applicable Wage Order, by requiring all refinery operators to remain at their work stations throughout their shift periods. Claimant is informed and believes that Tesoro recently acquired another refinery in California that specifically staffs and accounts for off-duty break periods for their hourly operator employees through use of a breaker system and relief staff, and allows their operators to take off-duty meals and rest breaks away from their assigned work station. This fact negates any claim that Tesoro can make to justify a "nature of the work" exception and its required ODMPA policy for non-exempt refinery operators. As a consequence, Tesoro systematically violated Labor Code § 226.7, § 512, and IWC Wage Order 1-2001, § 11, and is subject to civil penalties pursuant to PAGA.

Further, Tesoro violated IWC Wage Order 1-2001 § 13(B) by failing to provide "suitable resting facilities shall be provided in an area separate from the toilet rooms and shall be available to employees during work hours." By requiring 12-hour shift operators to be on duty for meals, no separate facilities were available to take a meal or rest period. Rather, Tesoro required operators to remain at all times at or near their workstation to eat meals so that they could monitor system operations, respond to console notifications, and/or notify superiors of any failures in the refining process. Claimant was required to stay at or near her workstation while on her 12-hour shift and eat meals and take rest periods while continuing to work. Accordingly, Tesoro is liable for civil penalties under the PAGA for violation of the Wage Order with regard to operators not being provided suitable facilities for break periods.

Similarly, because of restrictions on the location for any rest breaks, including generally being required to remain at console stations to monitor systems, Claimant was not provided duty-free rest periods in the manner required by Labor Code § 226.7 and IWC Wage Order 1-2001, § 12. Further, due to rest period location restrictions, including the inability to leave the workstation and/or console monitoring, all such rest periods were under the employer's control and therefore not relieved of all duties as required by law. See, *Augustus v. ABM Security Services, Inc.* (2016) __ Cal.4th __ (Case No. S224853), December 22, 2016. Accordingly, Claimant will seek civil penalties for each violation of the Wage Order for non-compliant rest periods pursuant to PAGA.

Finally, as part of Claimant's recovery of civil penalties, Claimant will seek underpaid premium wages owed for Tesoro's failure to pay Claimant and other aggrieved refinery operators for the meal period premiums and rest period premiums owed at their regular rate of compensation pursuant to Labor Code § 226.7 for each shift during the applicable limitations period, as provided under Labor Code § 558, which provides:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:

PAGA Notice Re: Tesoro Refining and Marketing Company LLC
January 12, 2017
P a g e | 3

(1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

(3) Wages recovered pursuant to this section shall be paid to the affected employee.

## Conclusion

Claimant intends to file a PAGA complaint in California Superior Court alleging the aforementioned violations. Claimant awaits notice from the LWDA as to whether it intends to pursue the matter, or whether the Employer will elect to cure remedies. Should the LWDA not intervene or investigate, Bonner intends file a PAGA Representative Action against her employer to recover civil penalties within 65 days of this Notice.

Sincerely,
COHELAN KHOURY & SINGER

/Jason Hill, Esq.

**VIA CERTIFIED U.S. MAIL WITH RETURN RECIEPT**

Tesoro Refining & Marketing Company LLC
c/o CSC - Lawyers Incorporating Service
Agent for Service of Process
2710 Gateway Oaks Dr., Suite 150N
Sacramento, CA 95833

Tesoro Refining & Marketing Company LLC
19100 Ridgewood Parkway
San Antonio, TX 78259



**CORPORATION SERVICE COMPANY**

null / ALL
**Transmittal Number: 16519349**
**Date Processed: 04/18/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Shenna Bradshaw<br>Tesoro Companies, Inc.<br>19100 Ridgewood Parkway<br>San Antonio, TX 78259 |
| **Electronic copy provided to:** | Eddie Field<br>Kristin Partida<br>D. Haffner |

| | |
|---|---|
| **Entity:** | Tesoro Refining & Marketing Company LLC<br>Entity ID Number  2336171 |
| **Entity Served:** | Tesoro Refining & Marketing Company, LLC |
| **Title of Action:** | Jinetra Bonner vs. Tesoro Refining & Marketing Company, LLC |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Sacramento County Superior Court, California |
| **Case/Reference No:** | 34-2017-00209750 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 04/14/2017 |
| **Answer or Appearance Due:** | 11/03/2017 |
| **Originally Served On:** | CSC |
| **How Served:** | Regular Mail |
| Sender Information: | J. Jason Hill<br>619-595-3001 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscglobal.com

1  **COHELAN KHOURY & SINGER**
   TIMOTHY D. COHELAN (SBN 60827)
2  tcohelan@ckslaw.com
   MICHAEL D. SINGER (SBN 115301)
3  msinger@ckslaw.com
4  J. JASON HILL (179630)
   jhill@ckslaw.com
5  605 "C" Street, Suite 200
   San Diego, CA 92101
6  Telephone:  619/595-3001
   Facsimile:  619/595-3000
7

8  Attorneys for Plaintiff JINETRA BONNER, on behalf
   of herself and others similarly situated
9

10            **SUPERIOR COURT OF CALIFORNIA**

11         **IN AND FOR THE COUNTY OF SACRAMENTO**

12 | JINETRA BONNER, individually, on behalf | Case No. 34-2017-00209750
13 | herself and all others similarly situated, |

   |  | **CLASS ACTION**
14 | |
   |                        Plaintiffs, | **NOTICE OF ASSIGNMENT TO**
15 | | **DEPARTMENT 35 FOR COMPLEX CASE**
   |      vs. | **MANAGEMENT DETERMINATION**
16 | |

17 | |
   | TESORO REFINING & MARKETING |
18 | COMPANY, LLC, a Delaware Limited |
   | Liability Company; and DOES 1 through 100 |
19 | inclusive, |

20 | |
   |                        Defendants. |
21 | | Complaint filed:    March 22, 2017
   | | Trial date:    None set
22

23        **TO DEFENDANT TESORO REFINING & MARKETING COMPANY, LLC AND**

24 **TO ITS COUNSEL OF RECORD:**

25        NOTICE IS HEREBY GIVEN THAT this matter has been assigned to Department 35 of

26 the above Court for Complex Case Management Determination. A hearing has been scheduled for

27 November 3, 2017 at 9:30 a.m.

28

                                    1

Notice of Assignment for Complex Determination                    Case No. 34-2017-00209750

1     A true and correct copy of the Court's notice is attached hereto as Exhibit A.

2

3    Dated: April 12, 2017                    **COHELAN KHOURY & SINGER**

4

5                                             By:_____

6                                                  Michael D. Singer, Esq.
                                                  J. Jason Hill, Esq.

7                                             Counsel for Plaintiff Jinetra Bonner and the
                                             proposed Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Exhibit A

Legal Tabs Co. 1-800-322-3022

Stock # EXA-5-B

1

2

3

4

5

6

7



FILED/ENDORSED

APR - 7 2017

By D. Lashley, Deputy Clerk

8    SUPERIOR COURT OF CALIFORNIA

9    COUNTY OF SACRAMENTO

10

11

12  BONNER                                    No. **34-2017-00209750**

13  v.

14  TESORO REFINING & MARKETING               NOTICE OF ASSIGNMENT TO
                                              DEPARTMENT 35 FOR COMPLEX CASE
15                                            MANAGEMENT DETERMINATION

16

**THIS NOTICE SHALL BE SERVED BY PLAINTIFF'S COUNSEL ON ALL OTHER**

17

**PARTIES. ANYONE WHO HEREAFTER SERVES A NEW PARTY SHALL SERVE A**

18

**COPY OF THIS NOTICE ON THE NEW PARTY ALONG WITH THE SUMMONS**

19

**AND COMPLAINT OR CROSS-COMPLAINT.**

20

21

    1.     This matter has been assigned to Department 35, Judge Alan G. Perkins presiding, to

22

determine whether the case should be designated, and treated, as complex. If it is determined to be

23

complex, this department will be the court's complex case department pursuant to the Local Rules,

24

including Local Rules 2.46.

25

    2.     All counsel are required to appear in Department 35 on **NOVEMBER 3, 2017**

26

**at 9:30 A.M.**

27

          (a) If the case has been designated as complex, and no counter-designation has been

28

                filed, the Court will hold its first case management conference at that time.

November 1, 2012 Rev.

(b) If the case has been assigned to Department 35 on a preliminary basis, the Court will hold a hearing to determine if the matter is, or is not, complex. If the matter is determined to be complex, the Court will then proceed with the first case management conference.

3.      Each party shall file and serve a Case Management Conference Statement fifteen (15) days before this hearing and be prepared to participate effectively in the conference, including being thoroughly familiar with the case and able to discuss the suitability of the case for private mediation, arbitration or the use of a special master or referee.

4.      Prior to the conference, counsel for plaintiff shall meet and confer with counsel for each other party in an effort to precisely define the issues in the case, discuss the possibility of early mediation, the identities of possible other parties, their respective plans for discovery, and whether or not the parties will be requesting that a special master be appointed.

5.      <u>Tentative Rulings.</u>

The court may determine that a case management conference on the assigned date is not necessary or should be postponed. The court may also issue tentative rulings on motions that are assigned to it. To determine whether an appearance is required the parties must check the court's tentative rulings after 2 p.m. the court day before the conference date to see if a tentative ruling is posted. Tentative rulings are posted on the court's website at www.saccourt.ca.gov. On many occasions the court will not post a tentative ruling.

6.      <u>Law and Motion Matters.</u>

The Local Rules state that the civil law and motion departments hear most types of law and motion matters, even in complex cases, unless the Presiding Judge has specifically assigned a case to one judge for all purposes. A designation of a case as complex is not an automatic assignment to the complex judge for all purposes.

The complex case management department will accept stipulations to stay, stipulations to appoint a special master, stipulated case management orders (even if they include discovery cut-offs and other limitations), and proposed orders from special masters. The complex case management department

November 1, 2012 Rev.

1  may also hear motions relating to class action certification. All other motions except trial motions should

2  be filed with the law and motion departments or presiding judge as specified in the Local Rules.

3       7.    <u>Filings.</u>

4          Except for filings for motions to be heard in the law and motion departments, all filings

5  in complex cases assigned to Department 35 should be filed directly with this department. If a complex

6  case designation is removed the parties should thereafter comply with the Local Rules regarding the

7  filing of documents for civil actions.

8       8.    <u>Typical Case Progress.</u>

9          a.    In most cases the initial status conference or a subsequent conference will result

10  in an initial case management order being issued. The breadth of those orders may vary depending on

11  factors such as the complexity of the case and the status of service on anticipated parties to the action.

12  The court may eventually issue a more detailed case management order that could address topics such as

13  discovery cut-offs, phased discovery, disclosure dates, settlement conference dates and trial dates. Many

14  of these topics are deferred in cases in which special masters are used.

15          b.    This department will usually be the trial department for complex cases assigned to

16  this department. However cases may be transferred to the presiding judge for assignment to another

17  department for trial if there may be a conflict with another trial or if the needs of the court so require.

18          c.    If the trial is to be held in this department the court will often hold a pre-trial/case

19  readiness type of conference several weeks before trial. Topics generally addressed at such conferences

20  include review of witness and exhibit lists, motions in limine, proposed jury instructions, witness timing

21  issues and other trial procedure issues. The goal is to get such issues resolved at that time and any later

22  motions in limine or other motions are not favored. In many cases the court may order that discovery

23  must be completed at least four to six weeks before the trial date and around the time when the initial

24  papers are due for the pre-trial conference.

25       //

26       //

27       //

28

November 1, 2012 Rev.

9.    Until the time of the conference, the following INTERIM ORDERS shall be in effect:

A.    Plaintiff(s) shall diligently locate and serve each defendant.  It is the Court's intention that each party be served in sufficient time to have entered an appearance within the time allowed by law and to attend the first conference.

B.    Counsel for each party shall do a conflict check to determine whether such counsel might have a possible conflict of interest as to any present or contemplated future party.

10.    The court strongly encourages the parties to engage in early and meaningful mediation. Either private or judicial mediation is acceptable.

Date:   4/7/17                                                    Alan G. Perkins, Judge

November 1, 2012 Rev.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SACRAMENTO**

Gordon D Schaber Courthouse
720  Ninth STREET
Sacramento, CA 95814-1311

**SHORT TITLE:** Bonner vs. Tesoro Refining & Marketing Company LLC a Delaware limited liability company

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER:<br>34-2017-00209750-CU-OE-GDS |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of Notice of Assignment to Department 35 for Complex Case Management Determination was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at Sacramento, California, on 04/11/2017.

Clerk of the Court, by: _/s/ D. Lashley_ _____ , Deputy

TIMOTHY  D COHELAN
605  C STREET # 200
SAN DIEGO,  CA  92101 US

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

Page: 1

**PROOF OF SERVICE**

*Bonner v. Tesoro Refining & Marketing Company, LLC*
Sacramento Superior Court Case No. 34-2017-00209750

I, Michelle Gomez, declare as follows:

I am over the age of 18 years and not a party to the within action. I am employed in the County of San Diego, California, where the mailing occurs; and my business address is 605 "C" Street, Suite 200, San Diego, California 92101-5305.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with United States Postal Service; and that the correspondence shall be deposited with United States Postal Service this same day in the ordinary course of business.

On April 12, 2017, I caused to be served a copy of the foregoing document(s):

**NOTICE OF ASSIGNMENT TO DEPARTMENT 35 FOR COMPLEX CASE MANAGEMENT DETERMINATION**

by placing a true copy of each document in a separate envelope addressed as follows:

**Registered Agent for Service of Process for Defendant**
Tesoro Refining & Marketing Company, LLC
c/o CSC Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

I then caused service of each document in the manner described below:

[XX] **BY CERTIFIED MAIL:** I placed each for deposit in the United States Postal Service this same day, at my business address shown above, following ordinary business practices.
[XX] **STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 12, 2017, at San Diego, California.

_____
Michelle Gomez

**COHELAN KHOURY & SINGER**
ATTORNEYS AT LAW
605 C STREET, STE. 200
SAN DIEGO, CALIFORNIA 92101-5305

U.S. POSTAGE ≫ PITNEY BOWES

ZIP 92101 $ 000.67⁰
02 1W
0001396234 APR. 12. 2017

Tesoro Refining & Marketing Company, LLC
c/o CSC Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

**EXHIBIT B**

1  JAY SMITH (CA Bar No. 166105)
   (Email: js@gslaw.org)
2  LINDA S. FANG (CA Bar No. 240245)
   (Email: lfang@gslaw.org)
3  **GILBERT & SACKMAN**
   **A LAW CORPORATION**
4  3699 Wilshire Boulevard, Suite 1200
   Los Angeles, California 90010
5  Tel: (323) 938-3000, Fax: (323) 937-9139

6  RICHARD P. ROUCO *(pro hac vice)*
   (Email: rrouco@qcwdr.com)
7  **QUINN, CONNOR, WEAVER, DAVIES & ROUCO LLP**
   2700 Highway 280 East, Suite 380
8  Birmingham, Alabama 35223
   Tel: (205) 870-9989, Fax: (205) 803-4142
9
   Attorneys for Plaintiffs Benjamin Burgess, Paul Gutierrez,
10 Sal Lucido, April Moore, Charles Grimmett, Antonio Garcia,
   and Brian Cashwell
11
   WILLIAM J. DRITSAS (CA Bar No. 97523)
12 (Email: wdritsas@seyfarth.com)
   **SEYFARTH SHAW LLP**
13 560 Mission Street, 31st Floor
   San Francisco, California 94105
14 Tel: (415) 397-2823, Fax: (415) 397-8549

15 TIMOTHY M. RUSCHE (CA Bar No. 230036)
   (Email: trusche@seyfarth.com)
16 **SEYFARTH SHAW LLP**
   333 South Hope Street, Suite 3900
17 Los Angeles, California 90071
   Tel: (213) 270-9600, Fax: (213) 270-9601
18
   Attorneys for Defendant Tesoro Refining and Marketing Company
19
                    **UNITED STATES DISTRICT COURT**
20
                    **CENTRAL DISTRICT OF CALIFORNIA**
21

| | |
|---|---|
| 22  BENJAMIN BURGESS, PAUL GUTIERREZ, SAL LUCIDO, APRIL MOORE, CHARLES GRIMMETT, ANTONIO GARCIA, and BRIAN CASHWELL individually and on behalf of all similarly situated current and former employees, | Case No. 10-cv-05870 DMG (PLAx) |
| | **JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE** |
|                              Plaintiffs, | |
| 26              v. | |
| 27  TESORO REFINING AND MARKETING COMPANY, | |
| 28                          Defendant. | |

Case 2:10-cv-05870-DMG-JST   Document 199-1   Filed 05/03/13   Page 71 of 167   Page ID
#:6644
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/13   Page 71 of 167

Plaintiffs Benjamin Burgess, Paul Gutierrez, Sal Lucido, April Moore, Charles
Grimmett, and Brian Cashwell, individually and on behalf of all allegedly similarly
situated current and former employees, and Defendant Tesoro Refining and Marketing
Company (collectively, the "Parties"), hereby enter into this Joint Stipulation of Class
Action Settlement and Settlement Agreement and Release ("Agreement"), as follows:

## I.    DEFINITIONS

For purposes of this Agreement only, the following definitions shall apply:

1.    "Action" or *Burgess* shall mean the civil action entitled *Burgess, et al. v. Tesoro Refining and Marketing Company*, USDC Case No. 10-cv-05870 DMG (PLAx), pending in the United States District Court, Central District of California, before the Honorable Dolly M. Gee, as amended to include the parties, claims and class members in *Delagarza*, as defined below.

2.    "Class Counsel" shall mean Jay Smith and Linda S. Fang of the law firm Gilbert & Sackman, A Law Corporation, and Richard P. Rouco of the law firm Quinn, Connor, Weaver, Davies & Rouco, LLP, joint counsel for USW, Richard Floyd, Eduardo Carbajal, the Class Representatives, and the Class.

3.    "Class Member" or the "Class" shall refer to an individual or individuals who worked at least one Qualifying Shift at Tesoro's Los Angeles Refinery or Golden Eagle Refinery during the Class Period.

4.    "Class Period" shall mean the time period between April 25, 2004 and March 10, 2012, inclusive, for Class Members who worked at the Golden Eagle Refinery; and the time period between May 11, 2007 and March 10, 2012, inclusive, for Class Members who worked at the Los Angeles Refinery.

5.    "Collective Bargaining Agreements" or "CBAs" shall mean the "Agreement between Tesoro Refining and Marketing Company and United Steel Workers AFL-CIO Southern California Local 675," which includes "Technician-Laboratory and Technician-Maintenance classifications but exclud[es] all other Technical employees engaged in Technical work and Office and Supervisory

Employees," effective from May 1, 2009 through April 30, 2012, and/or any successor agreements thereto, the "Articles of Agreement between Tesoro Refining Company Golden Eagle Refinery and United Steelworkers International Union Local No. 5 and United Steelworkers International Union," effective February 1, 2009, and/or any successor agreements thereto, and the "Articles of Agreement between Tesoro Refining Company Golden Eagle Chemical Plant and United Steelworkers International Union Local No. 5," effective March 1, 2009, and/or any successor agreements thereto.

6.     "Covered Employee" shall mean Tesoro employees whose terms and conditions of employment are governed by the Second Meal Period Waivers and On-Duty Meal Period Agreement, and/or any successor agreements, described in Paragraphs 38 through 42, below and attached hereto as Exhibit A. For purposes of this Agreement, the term "Covered Employee" is primarily intended to refer to persons employed by Tesoro on or after the date upon which this Court grants final approval of this Agreement.

7.     "*Delagarza*" shall mean the civil action entitled *Delagarza, et al. v. Tesoro Refining and Marketing Company*, Case No. 3:09-cv-05803 EMC, pending in the United States District Court, Northern District of California, before the Honorable Edward M. Chen, which was consolidated for settlement purposes with *Burgess*.

8.     "Defendant" or "Tesoro" shall mean Tesoro Refining & Marketing Company, LLC, formerly known as Tesoro Refining and Marketing Company.

9.     "Defense Counsel" shall mean William Dritsas and Timothy Rusche of the law firm Seyfarth Shaw LLP, counsel for Defendant.

10.     The "Effective Date" of this Agreement shall mean the first day on which all of the following events shall have occurred: (a) the Court has entered a final Order approving the settlement; (b) the Parties have not given notice of intent to withdraw from this Agreement as permitted under Paragraphs 40, 74 and 75 and the time for giving such notice has run; and (c) the final approval Order has become final and non-appealable, either through the passage of time or the exhaustion of all appeals or other methods of review by the appellate courts; however, if no objections are filed within the Opt-Out

Period, the parties agree that the determination of the Effective Date shall not include the time for the appeals process.

11.   "Golden Eagle Refinery" shall mean Tesoro's oil refinery, including Tesoro's Chemical Plant and the Avon and Amorco Wharves, located in or near Martinez, California, which has been owned and operated by Tesoro since before April 25, 2004.

12.   "Gross Settlement Amount" shall mean the total amount Tesoro will be required to pay under this Agreement, which includes all payments to Plaintiffs (except for the payments to Richard Floyd and Eduardo Carbajal, as provided in Paragraph 48, below) and Settlement Class Members (except for any additional payments to Settlement Class Members whose disputes are granted by the Settlement Administrator, as provided in Paragraph 58(c), below), attorneys' fees, litigation costs, penalties and interest.  The Gross Settlement Amount excludes (i) Tesoro's share of payroll taxes, (ii) administration costs of up to Forty-Thousand Dollars ($40,000), as described in Paragraph 50, below, and (iii) any difference between Settlement Class Members' Estimated Settlement Payments and Final Settlement Payments, as described in Paragraph 58(c), below.  The Gross Settlement Amount is non-reversionary, except as provided in Paragraph 67, below.

13.   "Los Angeles Refinery" shall mean Tesoro's oil refinery, including the Laboratory, Long Beach Terminal, and Sulfur Recovery Plant, located in or near Wilmington and Long Beach, California, which has been owned and/or operated by Tesoro since May 11, 2007.

14.   "Net Settlement Amount" shall mean the Gross Settlement Amount, less court-approved attorneys' fees, litigation costs, and any administration costs incurred in an amount of more than Forty Thousand Dollars ($40,000).

15.   "On-Duty Meal Period Agreements" shall mean the collectively bargained amendments to the CBAs regarding the provision of meal periods for Covered Employees, which are attached hereto as Exhibit A.

16.   "Plaintiffs" or "Class Representatives" shall mean Benjamin Burgess, Paul Gutierrez, Sal Lucido, April Moore, Charles Grimmett, and Brian Cashwell.

17. "Qualifying Shift" shall mean:

    a.    A rotating, straight 12-hour shift worked in Operations or Laboratory positions at the Los Angeles Refinery by a non-exempt employee during the Class Period, regardless of the employee's job title or classification, and regardless of whether the employee regularly worked in that position or was covering that position for scheduled absences, unscheduled absences, or for whatever reason. Shifts worked as temporary shift supervisors are not considered "Qualifying Shifts" under this Agreement.

    b.    A rotating, straight 12-hour shift worked in Operations or Health and Safety positions at the Golden Eagle Refinery by a non-exempt employee during the Class Period, regardless of the employee's job title or classification, and regardless of whether the employee regularly worked in that position or was covering that position for scheduled absences, unscheduled absences, or for whatever reason. By way of example only, a Qualifying Shift includes but is not limited to any straight 12-hour turnaround shift and any 12-hour shift worked in an Operations position by an employee classified as an Operator Helper Trainee or Zone Operator Relief.

18. "Regular Rate of Pay" shall mean the base contractual rate of pay for the position in which each Qualifying Shift was worked, as agreed to pursuant to collective bargaining and set forth in the CBAs and/or any amendments thereto, subject to the following:

    a.    Under this Agreement, the Regular Rate of Pay will be the base contractual rate for the actual position in which each Qualifying Shift was worked, rather than the classification of the employee who worked the position. For example, the Regular Rate of Pay for a Qualifying Shift in which an employee classified as an Operator

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

Helper Trainee worked as an Operator #2 is the base contractual rate

for the Operator #2 position and not the base contractual rate for

Operator Helper Trainees. As another example, the Regular Rate of Pay

for each Qualifying Shift in which an employee classified as a

Field Operator worked as a Console Operator is the base contractual

rate for the Console Operator position and not the base contractual

rate for Field Operators.

    b.    The Regular Rate of Pay shall not include premium pay such as the

night shift differential, Head Operator premium, holiday pay or

overtime premiums, as set forth in the CBAs and/or any amendments

thereto.

    c.    With respect to waiting-time penalties, the Regular Rate of Pay will

be the rate that was in effect on the date of each Class Member's date

of separation from employment with Tesoro, or, if the Class Member

was in an exempt position at the time of his or her separation from

employment with Tesoro, the Regular Rate of Pay earned for his or

her last Qualifying Shift.

19.    "Released Claims" shall mean those claims which are identified and
released in this Agreement, specifically in Paragraphs 43 through 47, below.

20.    "Released Parties" shall mean Tesoro, including all of its current and former
parents, sister corporations, affiliates, joint venturers, related companies, subsidiaries,
divisions, and its and their owners, members, managers, investors, shareholders, officers,
directors, partners, servants, agents, attorneys, benefit plans, current and former
employees, insurers, representatives, successors and assigns, past, present, and future.

21.    "Second Meal Period Waiver Agreements" shall mean the collectively
bargained amendments to the CBAs regarding the waiver of second meal periods for
Covered Employees, which are attached hereto as Exhibit A.

///

22.   "Settlement Administrator" shall mean, unless the parties otherwise agree or the Court otherwise directs, Simpluris, Inc.

23.   "Settlement Class" or "Settlement Class Member" shall mean any and all Class Member(s) who are known to the parties or who come forward or are discovered by the last day of the Dispute Period (as defined in Paragraph 58 below), and who fail to opt out of the settlement.

24.   "USW" shall mean United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. USW is an unincorporated association that functions as a labor organization representing employees for purposes of collecting bargaining issues concerning wages, hours, and working conditions. USW is or has been the collective bargaining agent for the Class Representatives, Covered Employees, and the Class, excluding Class Members who worked or are working in the Sulfur Recovery Plant at the Los Angeles Refinery.

25.   "*USW*" shall mean the civil action entitled *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC, on behalf of its members employed by defendants, and Richard Floyd and Eduardo Carbejal [sic], individually and on behalf of all similarly situated current and former employees v. Shell Oil Co., Equilon Enters. LLC dba Shell Oil Prods. US, Tesoro Ref. & Mktg. Co.*, originally filed in Los Angeles Superior Court on April 25, 2008, and removed to the United States District Court for the Central District of California, designated as Case No. CV-08-3693 RGK (Ex).

## II.   BACKGROUND AND RECITALS

26.   On April 25, 2008, Richard Floyd, Eduardo Carbajal, and USW filed *USW*, alleging (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to furnish timely and accurate wage statements; (4) failure to provide wages due at the time of termination; and (5) violation of California's Unfair Competition Law. In August 2009, Judge Klausner denied class certification.  In August 2010, and through an amended judgment filed in March 2011, Judge Klausner granted: (i) summary judgment in favor of

Case 2:16-cv-05870-DMG-JST   Document 199-1   Filed 05/03/17   Page 7 of 97   Page ID
#:6650
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 77 of 167

Tesoro and against USW on its claims brought on behalf of its members alleging meal
period, rest break, and wage statement violations as well as its claim for failure to pay
wages upon termination of employment in violation of California Labor Code sections
201, 202, and 203; (ii) summary judgment in favor of Tesoro and against two
employee plaintiffs, Richard Floyd and Eduardo Carbajal, on their rest break and
failure to timely pay wages upon termination of employment in violation of California
Labor Code sections 201, 202, and 203 claims, and the injunctive relief component of
their claim under California's Unfair Competition Law, as stated in California
Business & Professions Code section 17200, *et. seq.*, ("UCL"); and (iii) partial
summary judgment in favor of Richard Floyd and Eduardo Carbajal on their meal
period and wage statement claims.  In March 2011, Judge Klausner entered judgment
against Tesoro on the two employees' meal period, wage statement, and UCL
restitution claims. Tesoro filed a notice of appeal in the United States Court of Appeals
for the Ninth Circuit, designated as Case Nos. 11-55242 and 11-55530.

27.     After class certification was denied in *USW*, various members of the
putative class asserted in *USW*, represented by the same counsel, filed *Delagarza* and
*Burgess*, in which classes were ultimately certified in March 2011 and September 2011,
respectively.  On August 9, 2012, the original Class Representatives in *Burgess* amended
the complaint in that case to include the parties and claims from *Delagarza*: (1) failure to
provide meal periods; (2) failure to pay all wages due at the time of termination; and (3)
violation of California's Unfair Competition Law. On March 14, 2013, former plaintiff
and class representative Antonio Garcia withdrew as a class representative in *Delagarza*
and *Burgess* and jointly stipulated to dismiss his individual claims in the actions, without
prejudice.

28.     On October 15, 2011, and May 14, 2012, the parties participated in two all-
day private mediation sessions with Mark Rudy, a mediator with significant experience
in wage and hour class actions.  After participating in the mediation sessions, the parties
continued to engage in settlements discussions, ultimately reaching the basic terms of a

settlement, subject to Court approval. The Parties now enter into a detailed, formalized settlement agreement to submit to the Court for approval. At all times, the settlement negotiations were non-collusive and at arm's length.

29.     Class Counsel have performed a thorough study of the law and facts relating to the claims asserted in this Action and have concluded, based upon their investigation, discovery, and legal analysis, that a settlement with Tesoro on the terms set forth herein is fair, reasonable, adequate, and in the best interest of Class Members, taking into account the sharply contested issues, the expense and time necessary to pursue the Action through trial, the risks and costs of further prosecution of the Action, the uncertainties of complex litigation, and the substantial benefits to the Class Members provided by this Settlement. The Class Representatives, on their own behalves and on behalf of the Class Members, have agreed to settle this Action on the terms set forth herein.

30.     Tesoro denies any liability, claims for damages, class allegations, and wrongdoing of any kind whatsoever associated with this Action and *USW*, and further denies that, for any purpose other than settling this Action, class or representative treatment is appropriate. Specifically, Tesoro contends, among other things, that Tesoro has complied at all times with the California Labor Code, Industrial Welfare Commission Wage Orders, California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200 *et seq.*, and all applicable federal and state laws pertaining to the provision of meal and rest periods. Tesoro further contends that the facts do not justify class certification under the governing legal standards, including those clarified since the courts ruled.

31.     It is the desire of the parties to fully, finally, and forever settle, compromise, and discharge the Released Claims. This Agreement and settlement is made in compromise of disputed claims. Accordingly, the Parties enter into this Agreement on a conditional basis. The Parties agree that the Class Representatives shall apply to the Court to certify the Class for purposes of implementing this Agreement and that

Defendant shall not oppose such action. The Parties agree, however, that for any

purpose other than settling this Action, Tesoro's assertion is that this matter is not

appropriate for class action or representative treatment. If the terms of this Agreement

are not finally approved by the Court for any reason, or in the event that the Effective

Date does not occur, the Parties agree that such conditionally stipulated certification is

null and void and this Agreement, any motion for preliminary or final settlement

approval, and any related documents shall not be admissible for any purpose in this or

any other litigation, except to the extent that any of the information and/or documents

were or are produced, obtained, or discovered in the normal course of litigation of this

Action, *Delagarza*, or *USW*, excluding wage and hour data exchanged during the

settlement process, and provided, however, any protective order in those actions remain

in full force and effect. Tesoro expressly reserves all rights to challenge all claims and

allegations in this Action on all procedural and factual grounds if the terms of this

Agreement are not finally approved by the Court for any reason, or in the event that the

Effective Date does not occur, including, specifically its right to pursue motions to

decertify the certified classes.

32. The First Amended Complaint in this Action asserts the following claims

on behalf of all Class Members:

        a.    A First Cause of Action for "Failure To Provide Meal Periods," as

               required by California Labor Code §§ 226.7 and 512, and Industrial

               Welfare Commission Wage Order 1-2001 § 11;

        b.    A Second Cause of Action for "Failure To Pay All Wages Due at the

               Time of Discharge or Resignation," in violation of California Labor

               Code §§ 201-203; and

        c.    A Third Cause of Action for "Unfair Business Practice and Unfair

               Competition," in violation of California Business and Professions

               Code § 17200 *et seq*.

///

Case 2:10-cv-05870-DMG-PLA  Document 199-1  Filed 05/18/18  Page 19 of 47  Page ID
Case 4:17-cv-03850-JST  Document 1-1  Filed 05/03/17  Page 80 of 167  Page ID
#:6653

33. For the sole purpose of settlement and this Agreement only, the Class Representatives and Tesoro stipulate and agree that the following factual requirements for establishing class certification have been met in this Action:

    a.    The Class is so numerous that joinder of all members would be impracticable;

    b.    The Class is ascertainable;

    c.    There are issues of law and fact common to members of the Class, including but not limited to (i) whether Tesoro's policies and practices prevented members of the Class from taking off-duty 30-minute meal periods, (ii) whether Tesoro maintained common policies that failed to properly compensate members of the Class in accordance with applicable law; and (iii) whether Tesoro paid all wages due at the time of discharge or resignation;

    d.    The claims of the Class Representatives are typical of the claims of the Class;

    e.    The Class Representatives and Class Counsel will fairly and adequately protect the interests of the Class; and

    f.    The questions of law and fact that are common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently resolving the controversy.

## III.    TERMS OF CLASS ACTION SETTLEMENT

In consideration of the mutual covenants, promises, and warranties set forth herein and, subject to the Court's approval, the following are the terms of settlement:

### A.    Monetary Relief For Settlement Class Members

34. Tesoro shall pay a total sum of Eleven Million Five Hundred Ninety-Nine Thousand Nine Hundred Ninety-Nine Dollars ($11,599,999.00) as the Gross Settlement Amount to settle *USW*, *Burgess*, and *Delagarza*. Tesoro shall deposit the Gross Settlement Amount into an interest-bearing trust account at Frost Bank within ten (10) calendar days of execution of this Agreement. Interest accrued (if any) shall be distributed to Settlement Class Members except that if final approval is not obtained or is reversed on appeal, or if the Effective Date does not occur, then Tesoro is entitled to prompt return of the principal and all accrued interest within 10 days thereafter. The
///

Case 2:10-cv-05870-DMG-PLA  Document 199-1  Filed 05/03/17  Page 81 of 167  Page ID
Case 4:17-cv-03850-JST  Document 1-1  Filed 05/18/17  Page 121 of 167
#:6654

1   costs of setting up the escrow or trust account shall be included in the administration

2   fees, as described in Paragraph 50, below.

3       35.     Upon the Effective Date of this Agreement, and after the contemplated

4   modifications to the Collective Bargaining Agreements set forth in Paragraphs 38

5   through 42 are approved and agreed to by USW and a vote of each local USW

6   membership, each Settlement Class Member shall be entitled to a proportional share of

7   the Net Settlement Amount based upon an amount equal to fifty (50) percent of one hour

8   of pay at each Settlement Class Member's respective Regular Rate of Pay for each

9   estimated Qualifying Shift worked, which includes statutory interest and penalties.

10      36.     Upon the Effective Date of this Agreement, and after the contemplated

11  modifications to the Collective Bargaining Agreements set forth in Paragraphs 38

12  through 42 are approved and agreed to by USW and a vote of each local USW

13  membership, Settlement Class Members who have resigned or have been discharged or

14  who have otherwise separated from their employment with Tesoro at the Los Angeles

15  Refinery at any time between May 11, 2007 and March 10, 2012, inclusive, or at the

16  Golden Eagle refinery at any time between April 25, 2005 and March 10, 2012, inclusive,

17  shall be entitled to waiting-time penalties in the amount of an additional thirty (30) hours of

18  pay at each such former employee's respective Regular Rate of Pay.

19      37.     Any Net Settlement Amount remaining after the calculation of each

20  Settlement Class Member's provisional fifty (50) percent proportional share, waiting-

21  time penalties, payments of attorneys' fees and costs to Class Counsel, and payment of

22  administration fees above Forty Thousand Dollars ($40,000) shall be used to make

23  additional proportional or per capita, as determined by Class Counsel, payments to

24  Settlement Class Members based upon estimated Qualifying Shifts worked after March

25  10, 2012, except with respect to uncashed checks (as described in Paragraph 67, below).

26  The amount of the additional payments, if any, will be calculated after the close of the

27  Opt-Out Period and will be included in the settlement checks mailed to Settlement Class

28  Members pursuant to Paragraph 66, below.

**B.    Agreements Between Tesoro and USW Regarding Meal Periods**

38.    USW and Tesoro have engaged in collective bargaining, and, as a condition of this Agreement, have agreed (or will agree) to certain terms and conditions of employment regarding Covered Employees' meal periods. Copies of such agreements are attached hereto as Exhibit A and are hereby made part of this Agreement:

a.    Waiver of second meal period – USW has agreed, on behalf of all Covered Employees, to enter into a Second Meal Period Waiver. The Class Representatives, Tesoro, and USW agree that, in its capacity as the collective bargaining agent for the Covered Employees, USW has the authority to waive the second meal period on behalf of all Covered Employees.

b.    On-duty meal period agreements – USW has agreed, on behalf of all Covered Employees, to enter into an On-Duty Meal Period Agreement. The Class Representatives, Tesoro, and USW agree that, in its capacity as collective bargaining agent for the Covered Employees, USW has the authority to enter into these on-duty meal period agreements on behalf of all Covered Employees.

39.    As a condition of this Agreement, the Collective Bargaining Agreements will be modified, pursuant to the terms of the On-Duty Meal Period Agreements and Second Meal Period Waivers described above and attached hereto as Exhibit A, to incorporate any additional changes made to meal period provisions as provided in this Agreement and pursuant to the Parties' procedures to modify the Collective Bargaining Agreements, including approval by USW and a vote of each local USW membership.

40.    Absent ratification by each local USW membership of the Second Meal Period Waivers and On-Duty Meal Period Agreements described above and attached hereto prior to the date of final approval, this Agreement and the settlement provided for herein or approved by the Court is voidable at Tesoro's sole discretion within fourteen (14) days of the failure of ratification, and the Gross Settlement Amount and all accrued interest shall be returned to Tesoro.

///

41.     USW and Tesoro have engaged in collective bargaining, and, as a condition of this Agreement, hereby agree to certain terms and conditions of employment regarding certain effects of any payments under this Agreement to Settlement Class Members (excluding Sulfur Recovery Plant workers at the Los Angeles Refinery). Those agreed-upon terms and conditions are as follows:

      a.     USW agrees, on behalf of all Settlement Class Members (excluding Sulfur Recovery Plant workers at the Los Angeles Refinery), that this Agreement and any payments under this Agreement shall not have any effect on the eligibility or calculation of employee benefits with respect to such Settlement Class Members. This Agreement does not represent any modification of any previously credited hours of service, income, or other eligibility criteria under any employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by USW and/or any of the Released Parties.

      b.     Likewise, USW agrees, on behalf of all Settlement Class Members (excluding Sulfur Recovery Plant workers at the Los Angeles Refinery), that no payment provided under this Agreement shall be considered "compensation" or "annual earnings for benefits" in any year for purposes of determining eligibility for, or benefit accrual within, any employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by USW and/or any of the Released Parties.

42.     USW fully supports and endorses the purpose and legality of the Second Meal Period Waivers and On-duty Meal Period Agreements and agrees that it shall neither challenge their legality or the meal periods provided for thereunder nor support, aid, or encourage any legal challenge to them, including in the event that USW revokes the on-duty meal period agreement.

**C.     Claims Released by this Agreement**

43.     In consideration of the payments provided herein, each Class Representative and Settlement Class Member, on behalf of himself or herself, and his or her heirs, representatives, executors, administrators, successors, relatives and assigns, release, upon

Case 2:10-cv-05870-DMG-PLA Document 199-1 Filed 05/03/17 Page 84 of 167 Page ID
#:6657
Case 4:17-cv-03850-JST Document11-1 Filed 05/03/17 Page 84 of 167

the Effective Date, Tesoro and the other Released Parties from claims, causes of action,

obligations, costs, expenses, damages, liabilities, benefits, attorneys' fees, and costs,

arising out of the claims that were alleged in the complaints filed in *USW*, *Delagarza*, or

the First Amended Complaint filed in this Action (and claims derivative thereof), of

whatever character, in law or in equity, known or unknown, unanticipated or

undisclosed, suspected or unsuspected, matured or unmatured, based on any act,

omission, event, occurrence, or nonoccurrence alleged in the complaints filed in *USW*,

*Delagarza*, or the First Amended Complaint filed in *Burgess* from the beginning of time

through the Effective Date, including without limitation, claims based upon Tesoro's

alleged failure to provide an off-duty meal period; failure to provide an on-duty meal

period; failure to authorize or permit a rest period; failure to furnish timely and accurate

wage statements due to the failure to provide an off-duty meal period, failure to provide

an on-duty meal period, or failure to authorize or permit a rest period; and failure to

provide wages due upon termination arising from the failure to provide an off-duty meal

period, failure to provide an on-duty meal period, or failure to authorize or permit a rest

period; and claims derivative of those alleged in the complaints filed in *USW*, *Delagarza*,

or the First Amended Complaint filed in *Burgess* arising under the California Labor

Code (including Sections 201, 202, 203, 204, 210, 215, 216, 218, 218.5, 221, 222, 223,

224, 226, 226.6, 226.7, 512, 558, and 1199); California's Unfair Competition Law,

codified at Cal. Bus. & Prof. Code § 17200 *et seq.*; California Industrial Welfare

Commission Wage Order 1-2001 sections 7, 11, and 12, codified at 8 Cal. Code Reg. §

11010; and California's Private Attorney General Act, codified at Cal. Lab. Code § 2698

*et. seq.* ("PAGA").

44. The Class Representatives and the Settlement Class may hereafter discover

facts in addition to or different from those they may now know or believe to be true with

respect to the subject matter of the Released Claims, but, upon the Effective Date:

///

///

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

a. The Class Representatives shall be deemed to have released and fully, finally, and forever discharged Tesoro and the other Released Parties from any and all Released Claims; and

b. The Settlement Class shall be deemed to have jointly and severally released and fully, finally, and forever discharged Tesoro and the other Released Parties from any and all Released Claims.

c. With respect to the Released Claims, the Class Representatives and the Settlement Class stipulate and agree that, they shall be deemed to have, and by operation of the Order granting final approval of the settlement in this Action shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, or any other similar provision under federal or state law, which provides:

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his or
> her settlement with the debtor

45. Tesoro, the Class Representatives, and the Settlement Class agree that this release of claims does not extend to any right to file an administrative charge or complaint with a state or federal government agency based on the Released Claims when waiver of such right is not permitted. The Class Representatives and Settlement Class are, however, waiving their right to recover money in connection with any such charge or investigation based on the Released Claims.

46. Tesoro, the Class Representatives, and the Settlement Class agree that if any Class Representative or Class Member is considered or determined to be an "aggrieved employee" for purposes of PAGA, he or she waives any potential right to any penalty prescribed by PAGA, the California Labor Code, or the applicable California Industrial Welfare Commission Wage Order, arising from or related to any of the Released Claims up through and including the Effective Date.

47. Tesoro, the Class Representatives, and the Settlement Class acknowledge that this Agreement reflects a compromise of disputed claims.

**D.    Settlement of *USW***

48. As a condition of this Agreement, Tesoro, Richard Floyd, and Eduardo Carbajal, the two individual plaintiffs in *USW*, have agreed as follows:

a.    Within five calendar days of the Effective Date of this Agreement, Tesoro shall dismiss any and all appeals pending in the United States Court of Appeals for the Ninth Circuit, arising out of *USW*, including but not limited to 9th Cir. Case Nos. 11-55273 and 11-55242.

b.    Within 10 calendar days of the Effective Date of this Agreement, in exchange for a complete release of all claims that were alleged in *USW*, Tesoro shall pay $125.62, less applicable payroll withholdings and deductions, to Richard Floyd, and $22,926.19, less applicable payroll withholdings and deductions, to Eduardo Carbajal pursuant to the Judgment entered by the Honorable R. Gary Klausner in *USW*.

c.    Tesoro and Richard Floyd, and Tesoro and Eduardo Carbajal have entered into separate settlement agreements as described above, which are attached hereto as Exhibit B.

d.    Richard Floyd and Eduardo Carbajal shall not be entitled to recover settlement payments for any Qualifying Shifts worked before March 24, 2011.  Richard Floyd and Eduardo Carbajal shall be entitled to recover additional settlement payments from the Net Settlement Amount as part of the *Burgess* class based upon the estimated number of Qualifying Shifts each worked after March 23, 2011, if any.  Richard Floyd and Eduardo Carbajal shall not be entitled to file disputes, described in Paragraph 58, below, regarding any Qualifying Shifts worked before March 24, 2011.

**E.    Attorneys' Fees, Litigation Costs and Administration Costs**

49. Class Counsel will request an award of attorneys' fees as payment in full for all attorneys' fees incurred by Class Representatives, the Class, Floyd, and Carbajal in connection with, or related to, *USW*, *Delagarza*, and *Burgess*.  Tesoro will not oppose

1  the fee request so long as the amount sought does not exceed twenty-five (25) percent of

2  the Gross Settlement Amount.  Any attorneys' fees award shall be paid out of the Gross

3  Settlement Amount.  In no event shall Class Counsel be entitled to receive nor Tesoro be

4  obligated to pay Class Counsel more than twenty-five (25) percent of the Gross

5  Settlement Amount towards attorneys' fees.  Class Counsel agree not to seek the

6  payment of any additional attorneys' fees in connection with the *USW*, *Delagarza*, or

7  *Burgess* beyond twenty-five (25) percent of the Gross Settlement Amount.  To the extent

8  that the Court approves less than the amount of attorneys' fees that Class Counsel

9  requests, the difference shall be used to make proportional or per capita, as determined

10  by Class Counsel, settlement payments to Settlement Class Members based upon

11  estimated Qualifying Shifts worked after March 10, 2012.

12      50.    The Parties agree that Class Counsel shall move the Court, which Tesoro

13  agrees not to oppose, for an Order that Tesoro shall pay directly to the Settlement

14  Administrator all reasonable and customary costs and fees associated with administration

15  of the terms of the settlement directed by the Court, in an amount up to Forty-

16  Thousand Dollars ($40,000), which shall include Tesoro's costs of setting up the trust

17  account at Frost Bank and the costs of setting up a Qualified Settlement Account.  Any

18  administration costs exceeding Forty Thousand Dollars ($40,000) shall be paid out of the

19  Gross Settlement Amount.  In no event shall Tesoro be obligated to pay more than Forty-

20  Thousand Dollars ($40,000) in administration costs.

21      51.    The Parties agree that Class Counsel shall move the Court, which Tesoro

22  agrees not to oppose, for an Order that Class Counsel be paid an award of litigation costs

23  not to exceed One Hundred and Seventy-Five Thousand Dollars ($175,000.00), which

24  shall be paid out of the Gross Settlement Amount.  To the extent that the Court approves

25  less than the amount of litigation costs that Class Counsel requests, the difference shall

26  be used to make proportional or per capita, as determined by Class Counsel, settlement

27  payments to Settlement Class Members based upon estimated qualifying shifts worked

28  after March 10, 2012.  In no event shall Class Counsel be entitled to receive nor Tesoro

be obligated to pay Class Counsel more than One Hundred and Seventy-Five Thousand Dollars ($175,000.00) towards costs. Class Counsel agree not to seek the payment of any additional litigation costs in connection with *USW*, *Delagarza*, or *Burgess*.

52. The Parties agree that except as set forth in Paragraphs 49 through 51, USW, the Class Representatives, Class Members, and Tesoro shall bear their own respective costs, expenses, and attorneys' fees incurred in connection with *USW*, *Delagarza*, and *Burgess,* the negotiation and drafting of this Agreement, the process for seeking Court approval of this Agreement, and the preparation of all other documents, pleadings, and exhibits in connection with this Agreement. Tesoro waives any claim for contribution against USW, or any affiliated organization, based upon its payment of the Gross Settlement Amount. Except as set forth in Paragraphs 49 through 51, Class Counsel agree not to seek separate payment of any additional attorneys' fees and costs incurred separately in connection with *USW, Delagarza,* and *Burgess*.

53. The Parties agree that the Court's approval of any request for attorneys' fees and litigation costs is not a condition of this Agreement. Any proceeding relating to the application by Class Counsel for an award of attorneys' fees or litigation costs shall not terminate this Agreement.

### F. No Admission of Liability or Wrongdoing

54. By entering into this Agreement, Tesoro does not admit or concede any wrongdoing or a violation of any federal or state law. Rather, Tesoro has concluded that substantial amounts of time, energy, and resources have been and will continue to be devoted to the defense of the claims asserted in *USW*, *Delagarza*, and *Burgess* if there is no settlement as provided in this Agreement.

## IV. SCHEDULE FOR SEEKING COURT APPROVAL, MAILING OF SETTLEMENT NOTICES, AND SETTLEMENT FAIRNESS HEARING

55. The Class Representatives and Tesoro stipulate and agree to the following schedule and procedures for obtaining the Court's approval of the settlement, including ///

seeking certification of the Class, notifying the Class, and processing payments provided under this Agreement:

### A. Seeking Preliminary Approval of the Settlement

56. Upon the execution of this Agreement, the Class Representatives will move the Court for (a) certification of the Class for settlement purposes, (b) preliminary approval of the terms of this Agreement, (c) approval of a settlement notice, settlement procedure, and Settlement Administrator, and (d) the scheduling of a settlement fairness hearing on the question of whether the terms of this Agreement should be finally approved as fair, reasonable, and adequate as to the Class Representatives and the Settlement Class. As a part of this motion, the Class Representatives will submit (and attach copies of) this Agreement, the settlement agreements between Tesoro and Richard Floyd and Eduardo Carbajal, and the proposed modifications and/or supplements to the Collective Bargaining Agreements, summarized above.

57. Tesoro shall not oppose the motion filed by Class Counsel pursuant to this Agreement, so long as the motion and supporting papers are consistent with the terms of this Agreement. Class Counsel shall provide Tesoro with a reasonable opportunity to review, and provide comments to, the motion described in the preceding paragraphs, before the motion and supporting papers are filed with the Court.

### B. Settlement Notice

58. If the Court grants preliminary approval of the settlement terms described in this Agreement, a settlement notice shall be provided to the Class as follows:

a. Within twenty (20) days of the Court's preliminary approval of this settlement, the Settlement Administrator shall send Class Members notice of this settlement and of the opportunity to (i) opt out of the settlement, (ii) object to the settlement, or (iii) dispute his or her estimated settlement payment (the procedure for which is described in Paragraph 58(c), below). Notice will be sent by first-class mail to each Class Member's last known address. Class Members will have thirty (30) days from the date of mailing in which to postmark a notice of disputed estimated settlement

1  payment (the "Dispute Period"), and forty-five (45) days from the date of mailing in

2  which to postmark objections or a notice of opting out (the "Opt-Out Period").

3        b.    In order to provide the best notice practicable, any settlement notice

4  returned as undelivered shall be sent to the forwarding address affixed thereto, if any.  If

5  no forwarding address is provided, the Settlement Administrator will use a reliable

6  computer search method to locate a current address.  If no current address is located, the

7  settlement notice for that individual will be deemed undeliverable.  If the procedures herein

8  are followed, Tesoro, Class Counsel, and the Settlement Administrator shall be deemed

9  to have satisfied their obligation to provide the settlement notice to the Class. Copies of

10  the proposed settlement notices are attached hereto as Exhibit C.

11        c.    The settlement notice sent to each Class Member shall include release

12  language, a dispute form, as well as the estimated number of Qualifying Shifts worked

13  by that Class Member in each calendar year during the Class Period, and the estimated

14  settlement payment, which shall be calculated by Class Counsel.  If a Class Member

15  disagrees with the estimated number of Qualifying Shifts or the estimated settlement

16  payment set forth in his or her settlement notice and wishes to contest the estimates, the

17  Class Member shall complete the dispute form and send it to the Settlement

18  Administrator, together with a brief description of the basis for his or her dispute and any

19  supporting written documentation (any such disputed estimated settlement payments

20  shall be referred to as the "Disputed Settlement Payments").  To be considered, the

21  dispute form and supporting documentation must be postmarked on or before the last day

22  of the Dispute Period.  Upon receipt of a dispute, the Settlement Administrator shall

23  immediately notify both Class Counsel and Defense Counsel, at which time Tesoro shall

24  have five (5) calendar days to present opposing evidence.  The Settlement Administrator

25  shall make the final, binding determination regarding any Disputed Settlement Payment,

26  which may include requesting additional information from the Class Member, Class

27  Counsel, or Defense Counsel, within ten (10) calendar days of receipt of the dispute form

28  and initial supporting documentation or no later than forty (40) days after the postmark

date of the settlement notice, and determine the monetary value of the settlement payment to which the disputant should be entitled based on the settlement formula (the "Final Settlement Payment"). Tesoro shall be under no obligation to provide any additional information in response to any request for such information by the Settlement Administrator, and Tesoro's decision to forgo providing such information shall have no bearing on the Settlement Administrator's decision to accept or reject the dispute. Tesoro shall be solely and separately responsible to pay the difference between the Final Settlement Payment and the Disputed Settlement Payment to any Settlement Class Member whose dispute is granted by the Settlement Administrator, and such difference shall not be paid out of the Gross Settlement Amount, except if, after reviewing a Settlement Class Member's dispute, the Settlement Administrator denies the dispute and determines that the Final Settlement Payment is *lower* than the Disputed Settlement Payment, the difference between these two amounts shall first be used to pay Settlement Class Members whose disputes are granted and then, if there are still funds remaining, added to the Net Settlement Amount for distribution to the rest of the Class. Any such additional payment by Tesoro should be paid into the Qualified Settlement Account within seven (7) days after the Effective Date.

d. After the close of the Opt-Out Period, if there are any funds remaining in the Net Settlement Amount after the calculation of each Settlement Class Member's provisional fifty (50) percent proportional share, each Former Employee Class Member's additional thirty (30) hours of pay, payments of attorneys' fees and costs to Class Counsel, and payment of administration fees above Forty Thousand Dollars ($40,000), Class Counsel shall calculate the amount of any additional proportional or per capita, as determined by Class Counsel, payments to Settlement Class Members based upon estimated Qualifying Shifts worked after March 10, 2012. This additional payment will be included in the settlement payment described in paragraph 66, below, but Settlement Class Members will not be given an opportunity to dispute the amount of the additional payment.

Case 2:10-cv-05870-DMG-PLA  Document 193-1  Filed 05/13/16  Page 92 of 167  Page ID
#:6665
Case 4:17-cv-03850-JST  Document 1-1  Filed 05/03/17  Page 92 of 167

e.      The settlement notice shall inform Class Members of their right to opt out of the Settlement Class and be excluded from receiving any benefits under this Agreement by completing and mailing or faxing a written opt-out request to the Settlement Administrator no later than 45 days after the postmark date of the Settlement Notice. Any member of the Class who submits a timely and valid request for exclusion will receive no settlement payment and will not be bound by the terms of the Agreement nor have any right to object, appeal, or comment thereon. Late-submitted opt-out requests will not be accepted by the Settlement Administrator and shall not be effective. The Settlement Administrator will certify jointly to Class Counsel and Defense Counsel which requests for exclusion were valid and timely submitted. Any decision to opt out of the settlement shall not affect the application of the On-Duty Meal Period Agreements or Second Meal Period Waivers to that employee; notwithstanding any opt-out decision, the terms of those agreements shall be fully applicable to that employee.

## C.      Objections After the Court Grants Preliminary Approval

59.      Any Class Member who intends to object to final approval of the settlement or this Agreement must file a written objection, along with any supporting documents, with the Court, with copies to Class Counsel and Defense Counsel, no later than 45 days after the postmark date of the Settlement Notice. The written objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.

60.      Members of the Class who fail to make objections in the manner specified in Paragraph 59 shall be deemed to have waived any and all objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the settlement or this Agreement.

61.      No member of the Class shall be entitled to be heard at the settlement fairness hearing (whether in person or through counsel) or to object to the settlement or this Agreement, and no written objections or briefs submitted by any member of the Class shall be received or considered by the Court at the settlement fairness hearing, unless the Class Member files with the Court and serves upon Defense Counsel and Class

Counsel a written notice of intention to appear at the Fairness Hearing ("Notice of Intention to Appear"). The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Class Member will present to the Court in connection with the settlement fairness hearing.

62.     The filing of an objection allows Class Counsel or Defense Counsel, upon reasonable notice, to take the deposition of the objecting Class Member, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by the Class Member to make himself or herself available for a deposition or comply with expedited discovery requests may result in the Court striking the Class Member's objection and otherwise denying him or her the opportunity to make an objection or be further heard.

### D.     Duties of the Parties in Connection with Final Court Approval

63.     In connection with the motion requesting final approval by the Court of this Agreement, Class Counsel and Defense Counsel will submit a proposed Order granting final approval of the class action settlement:

a.     approving the settlement, adjudicating the terms thereof to be fair, reasonable, and adequate, and directing consummation of all terms and provisions as provided in this Agreement; and

b.     entering Judgment dismissing the action, with prejudice, and permanently barring the Class Representatives and Settlement Class Members from prosecuting any of the Released Claims against Tesoro and/or the Released Parties, as defined in this Agreement.

64.     Within two (2) business days of final approval by the Court of this Agreement, Class Counsel and Defense Counsel will submit a joint stipulation and proposed Order dismissing *Delagarza* with prejudice.

### E.     Timing and Manner of Settlement Payments

65.     Within five (5) business days of final approval, Tesoro shall transfer the Gross Settlement Amount into a Qualified Settlement Account.  Fees for the set up and

administration of the Qualified Settlement Account shall not exceed $300 and shall be included in the $40,000 costs of administration described in Paragraph 50, above.

66.     The Settlement Administrator shall not distribute any money until the Effective Date of this Agreement.  Within ten (10) calendar days after the Effective Date, the Settlement Administrator will pay all settlement payments, minus payroll withholdings (the "Settlement Payment"), and Court-approved attorneys' fees and costs. Check distribution shall be accomplished by a first-class mailing to each Settlement Class Member and wire transfer of attorneys' fees and costs to Gilbert & Sackman, A Law Corporation.  If a mailed check is not cashed or returned to the sender, Settlement Class Members have one year from the date of final approval to come forward and make a claim and, if any such timely claim is made, the Settlement Administrator shall redistribute his or her settlement check or reissue an expired check.  Each Settlement Class Member who is entitled to a payment under this Agreement will receive one check for the total of his or her settlement payment (less applicable payroll deductions required by federal and state law, as described in Paragraph 71, below).

67.     All settlement checks shall expire 180 days after issuance.  One year after finality of the Court Order approving this settlement, the sum of any expired checks shall be paid to the State of California as unclaimed wages under the name of the Settlement Class Member pursuant to the escheat procedures set forth in the California Code of Civil Procedure section 1300 *et seq.*, and not paid towards any settlement payments.

68.     No person shall have any claim against Tesoro or the other Released Parties, Defense Counsel, USW, Class Representatives, any member of the Settlement Class, Class Counsel, or the Settlement Administrator based on distributions and payments made in accordance with this Agreement.

69.     The Class Representatives shall not receive any additional payments or enhancements other than those expressly provided under this Agreement.

///

///

### F. Payroll Deductions and Taxes

70.     Tesoro shall separately be responsible for paying its share of any payroll taxes owed on settlement payments made to Settlement Class Members.

71.     The Parties agree to allocate Settlement Class Members' settlement payments to wages, interest, and penalties, as follows: (i) sixty (60) percent of each settlement payment shall be paid in settlement of claims for unpaid wages and reported by Tesoro on IRS Forms W-2; (2) forty (40) percent of each settlement payment shall be paid in settlement of claims for penalties and interest and reported by Tesoro on IRS Forms 1099.  For each Settlement Class Member who is entitled to payment under this Agreement, Tesoro will issue: (a) a Form W-2 on which the wage portion of the Settlement Payment shall be reported and from which all required payroll deductions required by state and federal law shall be taken; and (b) a Form 1099 on which the interest and penalties portion of the settlement payment shall be reported and from which no deductions will be taken. The Parties further agree that Class Counsel shall receive a Form 1099 for amounts paid as attorneys' fees and costs.  Tesoro may, at its option, use its Taxpayer Identification Number for payments to the Settlement Class if doing so will reduce its aggregate employer tax.

72.     The Parties and Settlement Class Members agree and understand that Tesoro has not made any representations regarding the tax obligations or consequences, if any, related to this Agreement. The Parties and Settlement Class Members agree that Tesoro and each Settlement Class Member are solely responsible for determining the tax consequences of payments made pursuant to this Agreement and for paying taxes, if any, which are determined to be owed by each of them on such payments (including penalties and interest related thereto) by any taxing authority, whether state, local, or federal.  Tax issues for each Settlement Class Member are unique, and each Settlement Class Member is advised to obtain tax advice from his or her own tax advisor with respect to any settlement payments resulting from this settlement.

///

73.     The Parties agree that Settlement Class Members, on the one hand, and Tesoro and other Released Parties, on the other hand, will each be responsible for certain payments and contributions to government agencies as a result of the payments made pursuant to this Agreement. If any taxing authority or government agency collects from Tesoro or other Released Parties any payment or contribution owed by any Settlement Class Member to a government agency, nothing herein will prevent Tesoro and other Released Parties from seeking reimbursement of those payments or contributions from such Settlement Class Member. However, Defendants and other Released Parties may not seek reimbursement from any Settlement Class Member or Class Counsel for any other payments to any taxing authority or government agency (such as penalties).

## V.     MISCELLANEOUS PROVISIONS

### A.     Voiding the Agreement

74.     A failure of the Court to approve any material condition of this Agreement that effects a fundamental change of the terms of the settlement shall render the entire Agreement voidable and unenforceable, at the option of either party. If USW does not approve or the local membership of USW does not vote in favor of all modifications and/or supplements and/or side letter agreements modifying the Collective Bargaining Agreements as provided in this Agreement, this entire Agreement shall become voidable and unenforceable, at Tesoro's sole option.  Each party may exercise its option to void this Agreement as provided above by giving notice, in writing, to the other and to the Court at any time prior to final approval of this Agreement by the Court.

75.     If more than five percent (5%) of the Class submits timely and valid requests for exclusion pursuant to the terms and procedures of the Settlement Notice, this entire Agreement shall become voidable and unenforceable, at Tesoro's sole discretion. Tesoro may exercise such option by giving notice, in writing, to Class Counsel and to the Court within fourteen (14) days after expiration of the Opt-Out Period.

///

**B. Mutual Full Cooperation**

76. The Class Representatives, Tesoro, Class Counsel, and Defense Counsel agree to fully cooperate with each other to accomplish, and pledge their good faith and fair dealing in supporting, the approval by the Court and of the terms of this Agreement, including but not limited to execution of such documents and to take such other action as may reasonably be necessary to implement the terms herein. The Parties agree to use their best efforts, including all efforts contemplated by this Agreement, and any other efforts that may become necessary by Order of the Court, or otherwise, to effectuate this Agreement.

77. Class Counsel and the Class Representatives agree that they will not attempt to encourage or solicit any members of the Class to object to the proposed settlement, or to opt out, and will make every reasonable effort to accurately explain the benefits of this Agreement in response to any questions from any member of the Class.

**C. Binding Nature of the Agreement**

78. This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of Tesoro and the other Released Parties. The Class Representatives and the Settlement Class represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, or encumbered any claim, demand, action, cause of action, or rights released in the Released Claims in this Agreement. No settlement payment shall be paid to any person or entity with respect to whom the Class Representatives or Settlement Class Members have assigned, transferred, or encumbered any of the Released Claims or any rights, claims or causes of action arising out of the Released Claims. In addition, the Class Representatives shall defend, hold harmless, and indemnify the Released Parties, or any of them, from and against any claims, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any breach by a Class Representative of this warranty and representation, or any breach by Class Representative of their release of the Released Claims.

///

79. This Agreement may be amended or modified only by a written instrument signed by Class Counsel and the Class Representatives, as well as Defense Counsel and Tesoro. No rights under this Agreement may be waived except in writing.

80. This Agreement and any attached exhibits constitute the entire agreement between the Class Representatives, the Class, USW, and Tesoro relating to the terms contained herein. All prior or contemporaneous agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a Party or its counsel, are merged herein. No oral or written representations, warranties, or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

**D.      Governing Law and Joint Drafting of Settlement Documents**

81. All terms of this Agreement and related documents shall be governed by and interpreted according to the laws of the State of California, without respect to choice of law provisions of any state.

82. Class Counsel and Defense Counsel have arrived at this agreement as a result of a series of arm's-length negotiations, taking into account all relevant factors, present and potential.

83. This Agreement has been drafted jointly by Class Counsel and Defense Counsel and, therefore, in any construction or interpretation of this Agreement, the same shall not be construed against any of the Parties.

84. This Agreement is for settlement purposes only and shall be inadmissible in evidence in any proceeding, except as necessary to approve, interpret, or enforce this Agreement. The Class Representatives, the Class, and Class Counsel agree that none of the documents provided to them by Tesoro shall be used for any purpose other than the prosecution and settlement of this Action. Specifically, none of the wage and hours-worked data shall be used to pursue any subsequent claims or litigation against Tesoro or the other Released Parties.

85.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions. Each term of this Agreement is intended to be contractual and not merely a recital.

**E.     Execution of the Agreement**

86.     The Parties agree that to facilitate the execution of this Agreement, this Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and that facsimile signatures and/or "pdf" scanned signed copies may be accepted as originals for any and all purposes of executing this Agreement.

**F.     Parties' Authority**

87.     The signatories hereto represent that they are fully authorized to enter into this Agreement and are fully authorized to bind the Class Representatives, the Class, and Tesoro to all terms stated herein.

Dated: _March 15_, 2013          By: _____
                                         Jay Smith
                                         Linda S. Fang
                                         Gilbert & Sackman, A Law Corporation,
                                         Counsel for Plaintiff, the Classes, Richard
                                         Floyd and Eduardo Carbajal

Dated: _____, 2013          By: _____
                                         Richard Rouco
                                         Quinn, Connor, Weaver, Davies & Rouco,
                                         LLP, Counsel for Plaintiffs, the Classes,
                                         Richard Floyd and Eduardo Carbajal

Dated: _____, 2013          By: _____
                                         Robert LaVenture
                                         Director, District 12
                                         United Steel, Paper and Forestry, Rubber,
                                         Manufacturing, Energy, Allied Industrial and
                                         Service Workers International Union, AFL-
                                         CIO, CLC

Case No. 10-cv-05870 DMG (PLAx)

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

85.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions. Each term of this Agreement is intended to be contractual and not merely a recital.

**E.     Execution of the Agreement**

86.     The Parties agree that to facilitate the execution of this Agreement, this Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and that facsimile signatures and/or "pdf" scanned signed copies may be accepted as originals for any and all purposes of executing this Agreement.

**F.     Parties' Authority**

87.     The signatories hereto represent that they are fully authorized to enter into this Agreement and are fully authorized to bind the Class Representatives, the Class, and Tesoro to all terms stated herein.

Dated: _____, 2013         By:_____
                                        Jay Smith
                                        Linda S. Fang
                                Gilbert & Sackman, A Law Corporation,
                                Counsel for Plaintiff, the Classes, Richard
                                Floyd and Eduardo Carbajal

Dated: 3/15, 2013              By: _____
                                        Richard Rouco
                                Quinn, Connor, Weaver, Davies & Rouco,
                                LLP, Counsel for Plaintiffs, the Classes,
                                Richard Floyd and Eduardo Carbajal

Dated: _____, 2013         By: _____
                                        Robert LaVenture
                                Director, District 12
                                United Steel, Paper and Forestry, Rubber,
                                Manufacturing, Energy, Allied Industrial and
                                Service Workers International Union, AFL-
                                CIO, CLC

Case No. 10-cv-05870 DMG (PLAx)

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

85.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions. Each term of this Agreement is intended to be contractual and not merely a recital.

**E.     Execution of the Agreement**

86.     The Parties agree that to facilitate the execution of this Agreement, this Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument and that facsimile signatures and/or "pdf" scanned signed copies may be accepted as originals for any and all purposes of executing this Agreement.

**F.     Parties' Authority**

87.     The signatories hereto represent that they are fully authorized to enter into this Agreement and are fully authorized to bind the Class Representatives, the Class, and Tesoro to all terms stated herein.

Dated:_____, 2013               By:_____
                                                            Jay Smith
                                                            Linda S. Fang
                                           Gilbert & Sackman, A Law Corporation,
                                           Counsel for Plaintiff, the Classes, Richard
                                           Floyd and Eduardo Carbajal

Dated:_____, 2013               By:_____
                                                            Richard Rouco
                                           Quinn, Connor, Weaver, Davies & Rouco,
                                           LLP, Counsel for Plaintiffs, the Classes,
                                           Richard Floyd and Eduardo Carbajal

Dated:      March 14, 2013              By:   _Robert LaVenture_
                                                            Robert LaVenture
                                           Director, District 12
                                           United Steel, Paper and Forestry, Rubber,
                                           Manufacturing, Energy, Allied Industrial and
                                           Service Workers International Union, AFL-
                                           CIO, CLC

Case 2:10-cv-05870-DMG-JSA Document 199-1 Filed 05/23/13 Page 39 of 167 Page ID
Case 4:17-cv-03850-JST Document 1 Filed 05/03/17 Page 102 of 167
#:6675

1    Dated: __MARCH 15__, 2013          By: _____
2                                            David Campbell
                                             Secretary-Treasurer, Local 675
3                                            United Steel, Paper and Forestry, Rubber,
                                             Manufacturing, Energy, Allied Industrial and
                                             Service Workers International Union, AFL-
4                                            CIO, CLC
5

6    Dated: _____, 2013         By: _____
7                                            Jim Payne
                                             Secretary-Treasurer, Local 5
8                                            United Steel, Paper and Forestry, Rubber,
                                             Manufacturing, Energy, Allied Industrial and
9                                            Service Workers International Union, AFL-
                                             CIO, CLC

10   Dated: _____, 2013         By: _____
11                                           Richard Floyd

12
     Dated: _____, 2013         By: _____
13                                           Eduardo Carbajal

14

15   Dated: _____, 2013         By: _____
16                                           Benjamin Burgess

17
     Dated: _____, 2013         By: _____
18                                           Paul Gutierrez

19

20   Dated: _____, 2013         By: _____
21                                           Sal Lucido

22
     Dated: _____, 2013         By: _____
23                                           April Moore

24

25   Dated: _____, 2013         By: _____
26                                           Charles Grimmett

27
     Dated: _____, 2013         By: _____
28                                           Brian Cashwell

     Case No. 10-cv-05870 DMG (PLAx)
     JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

Dated: _____, 2013

By: _____
David Campbell
Secretary-Treasurer, Local 675
United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC

Dated: 3/13, 2013

By: _____
Jim Payne
Secretary-Treasurer, Local 5
United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC

Dated: _____, 2013

By: _____
Richard Floyd

Dated: _____, 2013

By: _____
Eduardo Carbajal

Dated: _____, 2013

By: _____
Benjamin Burgess

Dated: _____, 2013

By: _____
Paul Gutierrez

Dated: _____, 2013

By: _____
Sal Lucido

Dated: _____, 2013

By: _____
April Moore

Dated: _____, 2013

By: _____
Charles Grimmett

Dated: _____, 2013

By: _____
Brian Cashwell

Dated:_____, 2013          By: _____
                                        David Campbell
                                  Secretary-Treasurer, Local 675
                                  United Steel, Paper and Forestry, Rubber,
                                  Manufacturing, Energy, Allied Industrial and
                                  Service Workers International Union, AFL-
                                  CIO, CLC

Dated:_____, 2013          By: _____
                                        Jim Payne
                                  Secretary-Treasurer, Local 5
                                  United Steel, Paper and Forestry, Rubber,
                                  Manufacturing, Energy, Allied Industrial and
                                  Service Workers International Union, AFL-
                                  CIO, CLC

Dated: _March 14_, 2013           By: _____
                                        Richard Floyd

Dated:_____, 2013          By: _____
                                        Eduardo Carbajal

Dated:_____, 2013          By: _____
                                        Benjamin Burgess

Dated:_____, 2013          By: _____
                                        Paul Gutierrez

Dated:_____, 2013          By: _____
                                        Sal Lucido

Dated:_____, 2013          By: _____
                                        April Moore

Dated:_____, 2013          By: _____
                                        Charles Grimmett

Dated:_____, 2013          By: _____
                                        Brian Cashwell

Case No. 10-cv-05870 DMG (PLAx)
JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

1  Dated:_____, 2013          By: _____
                                         David Campbell
2                                     Secretary-Treasurer, Local 675
3                                     United Steel, Paper and Forestry, Rubber,
                                      Manufacturing, Energy, Allied Industrial and
4                                     Service Workers International Union, AFL–
                                      CIO, CLC
5

6  Dated:_____, 2013          By: _____
                                         Jim Payne
7                                     Secretary-Treasurer, Local 5
8                                     United Steel, Paper and Forestry, Rubber,
                                      Manufacturing, Energy, Allied Industrial and
9                                     Service Workers International Union, AFL–
                                      CIO, CLC

10 Dated:_____, 2013          By: _____
                                         Richard Floyd
11

12
   Dated: _3 - 14 -_, 2013           By: _____
13                                       Eduardo Carbajal

14

15 Dated:_____, 2013          By: _____
                                         Benjamin Burgess
16

17
   Dated:_____, 2013          By: _____
18                                       Paul Gutierrez

19

20 Dated:_____, 2013          By: _____
                                         Sal Lucido
21

22
   Dated:_____, 2013          By: _____
23                                       April Moore

24

25 Dated:_____, 2013          By: _____
                                         Charles Grimmett
26

27
   Dated:_____, 2013          By: _____
28                                       Brian Cashwell

Case No. 10-cv-05870 DMG (PLAx)
JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

Dated:_____, 2013

By: _____
David Campbell
Secretary-Treasurer, Local 675
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-
CIO, CLC

Dated:_____, 2013

By: _____
Jim Payne
Secretary-Treasurer, Local 5
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-
CIO, CLC

Dated:_____, 2013

By: _____
Richard Floyd

Dated:_____, 2013

By: _____
Eduardo Carbajal

Dated: *March 13*, 2013

By: _____
Benjamin Burgess

Dated:_____, 2013

By: _____
Paul Gutierrez

Dated:_____, 2013

By: _____
Sal Lucido

Dated:_____, 2013

By: _____
April Moore

Dated:_____, 2013

By: _____
Charles Grimmett

Dated:_____, 2013

By: _____
Brian Cashwell

Case 2:10-cv-05870-DMG-JLA   Document 109-1   Filed 05/03/13   Page 107 of 167   Page ID
Case 4:17-cv-03850-JST   Document 1-1   Filed 05/03/17   Page 107 of 167   Page ID
#:6680

| | |
|---|---|
| Dated: _____, 2013 | By: _____<br>David Campbell<br>Secretary-Treasurer, Local 675<br>United Steel, Paper and Forestry, Rubber,<br>Manufacturing, Energy, Allied Industrial and<br>Service Workers International Union, AFL-<br>CIO, CLC |
| Dated: _____, 2013 | By: _____<br>Jim Payne<br>Secretary-Treasurer, Local 5<br>United Steel, Paper and Forestry, Rubber,<br>Manufacturing, Energy, Allied Industrial and<br>Service Workers International Union, AFL-<br>CIO, CLC |
| Dated: _____, 2013 | By: _____<br>Richard Floyd |
| Dated: _____, 2013 | By: _____<br>Eduardo Carbajal |
| Dated: _____, 2013 | By: _____<br>Benjamin Burgess |
| Dated: MARCH, 14, 2013 | By: _____<br>Paul Gutierrez |
| Dated: _____, 2013 | By: _____<br>Sal Lucido |
| Dated: _____, 2013 | By: _____<br>April Moore |
| Dated: _____, 2013 | By: _____<br>Charles Grimmett |
| Dated: _____, 2013 | By: _____<br>Brian Cashwell |

Case No. 10-cv-05870 DMG (PLAx)

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

Dated: _____, 2013    By: _____
                                David Campbell
                          Secretary-Treasurer, Local 675
                          United Steel, Paper and Forestry, Rubber,
                          Manufacturing, Energy, Allied Industrial and
                          Service Workers International Union, AFL-
                          CIO, CLC

Dated: _____, 2013    By: _____
                                Jim Payne
                          Secretary-Treasurer, Local 5
                          United Steel, Paper and Forestry, Rubber,
                          Manufacturing, Energy, Allied Industrial and
                          Service Workers International Union, AFL-
                          CIO, CLC

Dated: _____, 2013    By: _____
                                Richard Floyd

Dated: _____, 2013    By: _____
                                Eduardo Carbajal

Dated: _____, 2013    By: _____
                                Benjamin Burgess

Dated: _____, 2013    By: _____
                                Paul Gutierrez

Dated: March 14, 2013     By: _____
                                Sal Lucido

Dated: _____, 2013    By: _____
                                April Moore

Dated: _____, 2013    By: _____
                                Charles Grimmett

Dated: _____, 2013    By: _____
                                Brian Cashwell

Dated:_____, 2013

By: _____
David Campbell
Secretary-Treasurer, Local 675
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-
CIO, CLC

Dated:_____, 2013

By: _____
Jim Payne
Secretary-Treasurer, Local 5
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-
CIO, CLC

Dated:_____, 2013

By: _____
Richard Floyd

Dated:_____, 2013

By: _____
Eduardo Carbajal

Dated:_____, 2013

By: _____
Benjamin Burgess

Dated:_____, 2013

By: _____
Paul Gutierrez

Dated:_____, 2013

By: _____
Sal Lucido

Dated: March 14____, 2013

By: April Moore
April Moore

Dated:_____, 2013

By: _____
Charles Grimmett

Dated:_____, 2013

By: _____
Brian Cashwell

Case No. 10-cv-05870 DMG (PLAx)

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

Case 2:10-cv-05870-DMG-JSA   Document 199-1   Filed 05/03/13   Page 41 of 67   Page ID
Case 4:17-cv-03850-JST   Document 1-1   Filed 05/03/17   Page 110 of 167   Page ID
#:6683

| | |
|---|---|
| Dated: _____, 2013 | By: _____<br>David Campbell<br>Secretary-Treasurer, Local 675<br>United Steel, Paper and Forestry, Rubber,<br>Manufacturing, Energy, Allied Industrial and<br>Service Workers International Union, AFL-<br>CIO, CLC |
| Dated: _____, 2013 | By: _____<br>Jim Payne<br>Secretary-Treasurer, Local 5<br>United Steel, Paper and Forestry, Rubber,<br>Manufacturing, Energy, Allied Industrial and<br>Service Workers International Union, AFL-<br>CIO, CLC |
| Dated: _____, 2013 | By: _____<br>Richard Floyd |
| Dated: _____, 2013 | By: _____<br>Eduardo Carbajal |
| Dated: _____, 2013 | By: _____<br>Benjamin Burgess |
| Dated: _____, 2013 | By: _____<br>Paul Gutierrez |
| Dated: _____, 2013 | By: _____<br>Sal Lucido |
| Dated: _____, 2013 | By: _____<br>April Moore |
| Dated: 03-13-, 2013 | By: *Charles W. Grimmett*<br>Charles Grimmett |
| Dated: _____, 2013 | By: _____<br>Brian Cashwell |

Case No. 10-cv-05870 DMG (PLAx)

Dated: _____ , 2013

By: _____
      David Campbell
Secretary-Treasurer, Local 675
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-
CIO, CLC

Dated: _____ , 2013

By: _____
      Jim Payne
Secretary-Treasurer, Local 5
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and
Service Workers International Union, AFL-
CIO, CLC

Dated: _____ , 2013

By: _____
      Richard Floyd

Dated: _____ , 2013

By: _____
      Eduardo Carbajal

Dated: _____ , 2013

By: _____
      Benjamin Burgess

Dated: _____ , 2013

By: _____
      Paul Gutierrez

Dated: _____ , 2013

By: _____
      Sal Lucido

Dated: _____ , 2013

By: _____
      April Moore

Dated: _____ , 2013

By: _____
      Charles Grimmett

Dated: 3-14 , 2013

By: _____
      Brian Cashwell

Case No. 10-cv-05870 DMG (PLAx)

JOINT STIPULATION OF CLASS ACTION SETTLEMENT; SETTLEMENT AGREEMENT AND RELEASE

1  Dated: _March 15_, 2013

        By: _____

2                                William J. Dritsas
                              Timothy M. Rusche

3                       Seyfarth Shaw LLP
                     Counsel for Tesoro Refining & Marketing

4                       Company, LLC, formerly known as Tesoro
                     Refining and Marketing Company

5

6  Dated: _____, 2013

        By: _____

7                                Charles S. Parrish
                     Executive Vice President and Secretary

8                       Tesoro Refining & Marketing Company, LLC,
                     formerly known as Tesoro Refining and

9                       Marketing Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Dated: _____, 2013                By: _____
                                               William J. Dritsas
2                                              Timothy M. Rusche
                                           Seyfarth Shaw LLP
3                                          Counsel for Tesoro Refining & Marketing
                                           Company, LLC, formerly known as Tesoro
4                                          Refining and Marketing Company

5

6  Dated: March 14, 2013                  By: _____
                                               Charles S. Parrish
7                                          Executive Vice President and Secretary
                                           Tesoro Refining & Marketing Company, LLC,
8                                          formerly known as Tesoro Refining and
                                           Marketing Company
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**Los Angeles Refinery On-Duty Meal Period Agreement**

The following On-Duty Meal Period Agreement is entered into between Tesoro Refining & Marking Company, LLC, Los Angeles Refinery (the "Company"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") and USW Local 675 (collectively referred to as the "Union").

The Company and the Union hereby agree as follows:

All employees whose terms and conditions of employment were or are governed by the "Agreement between Tesoro Refining and Marketing Company and United Steel Workers AFL-CIO Southern California Local 675," which includes "Technician-Laboratory and Technician-Maintenance classifications but exclud[es] all other Technical employees engaged in Technical work and Office and Supervisory Employees," effective during the period of May 1, 2009 through April 30, 2012, and/or any successor agreements thereto (the "Collective Bargaining Agreement"), which employees shall be referred to herein as the "Covered Employees," are authorized to take 30-minute uninterrupted meal periods subject to (i) their recall to work assignments, (ii) the requirement that they remain on the premises of the refinery or the Long Beach Terminal (depending upon Covered Employees' respective job locations) during their meal periods (absent management permission to leave in certain circumstances), (iii) the requirement that they generally carry radios or otherwise remain in contact or available to be contacted during meal periods, and (iv) any other duties and obligations set forth in the Collective Bargaining Agreement or other Company policies or procedures that may affect whether meal periods are interrupted; provided, however, the foregoing shall not preclude employees from taking two on-duty meal periods during each 12-hour shift or one on-duty meal period if the second is waived. The Company and the Union agree that the nature of the work, including the above restrictions and obligations as well as health, safety and environmental concerns, specialized training and certification requirements, the volatile and unstable nature of the materials handled on the premises, and staffing mandates, prevent Covered Employees from being relieved of all duty during meal breaks. Therefore, the Union agrees to an on-duty meal period on behalf of all Covered Employees at the Los Angeles Refinery, which for purposes of this Agreement includes the Long Beach Terminal, for each meal period that they are entitled to under California law. This On-Duty Meal Period Agreement does not apply to employees who work 8-hour shift schedules. In addition, this On-Duty Meal Period Agreement does not apply to employees who work in maintenance or 12-hour shift laboratory classifications or departments, or employees working as Operations trainers, as the nature of the job and refinery operations are such that employees working in these classifications, departments, and positions are able to take unpaid, uninterrupted, and duty free 30-minute meal periods during their regularly scheduled shifts. However, this Agreement does apply to employees working in the above excluded classifications, departments, or positions who volunteer in the Emergency Response Brigade or other emergency-response positions.

1.      The Union may revoke this Agreement on behalf of Covered Employees at any time by providing written notice to the Company of its decision to do so. The Union shall work with the Company to provide reasonable notice of its intention to revoke this Agreement to avoid significant disruption to the Company's business operations and to ensure the safety and welfare of Covered Employees. In the event that the Union revokes this Agreement, the Company shall have the right to implement a schedule under which the Covered Employees shall receive a 30-minute unpaid

Case 2:18-cv-05867-DMG-JEM  Document 19-1  Filed 05/03/13  Page 41 of 167  Page ID
Case 4:17-cv-03850-JST  Document 1  Filed 05/03/17  Page 116 of 167
#:6689

duty-free meal period for each required meal period, and the Company shall have the right to reopen the Collective Bargaining Agreement for negotiations with the Union on the issue of meal periods.

2.      If a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering the provision of meal periods.

3.      Nothing in this Agreement shall alter any rights afforded to the Union or the Company under the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, excepting any provisions and rights in those agreements and side letters pertaining to employee meal periods.  Nothing in this Agreement shall limit the rights afforded to the Company under state and federal law, the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, including but not limited to the Company's rights with respect to employee schedules and, specifically, the Company's right to modify work schedules. Nothing in this Agreement shall constitute a waiver of the right to bargain over proposed changes to the terms and conditions of employment.

4.      The Union fully supports and endorses the purpose and legality of this Agreement and agrees that it shall neither challenge its legality or meal periods provided for hereunder nor support, aid, or encourage any legal challenge to this Agreement, including in the event that the Union revokes this Agreement.

5.      The Company shall have the right to revoke the On-Duty Meal Period Agreement at any time.

6.      This Agreement is contingent upon ratification by the membership of USW Local 675.

7.      This Agreement shall remain in effect unless and until the Company or the Union exercises the option to revoke it or unless and until a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement illegal or ineffective pursuant to paragraphs 1, 2 and 5 above.

_____
Tesoro Refining & Marketing Company, LLC
Los Angeles Refinery


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC, Local 675

**Golden Eagle Refinery On-Duty Meal Period Agreement**

The following On-Duty Meal Period Agreement is entered into between Tesoro Refining & Marking Company, LLC, Golden Eagle Refinery (the "Company"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") and USW Local 5 (collectively referred to as the "Union").

The Company and the Union hereby agree as follows:

All employees whose terms and conditions of employment were or are governed by the "Articles of Agreement between Tesoro Refining Company Golden Eagle Refinery and United Steelworkers International Union Local No. 5 and United Steelworkers International Union," effective February 1, 2009, or the "Articles of Agreement between Tesoro Refining Company Golden Eagle Chemical Plant and United Steelworkers International Union Local No. 5," effective March 1, 2009, and/or any successor agreements thereto (collectively referred to as the "Collective Bargaining Agreement"), which employees shall be referred to herein as the "Covered Employees," are authorized to take 30-minute uninterrupted meal periods subject to (i) their recall to work assignments, (ii) the requirement that they remain on the premises of the refinery, chemical plant, or the Avon or Amorco Wharves (depending upon Covered Employees' respective job locations) during their meal periods (absent management permission to leave the premises in certain circumstances), (iii) the requirement that they generally carry radios or otherwise remain in contact or available to be contacted during meal periods, and (iv) any other duties and obligations set forth in the Collective Bargaining Agreement or other Company policies or procedures that may affect whether meal periods are interrupted; provided, however, the foregoing shall not preclude employees from taking two on-duty meal periods during each 12-hour shift or one on-duty meal period if the second is waived. The Company and the Union agree that the nature of the work, including the above restrictions and obligations as well as health, safety and environmental concerns, specialized training and certification requirements, the volatile and unstable nature of the materials handled on the premises, and staffing mandates, prevent Covered Employees from being relieved of all duty during meal breaks. Therefore, the Union agrees to an on-duty meal period on behalf of all Covered Employees at the Golden Eagle Refinery, which for purposes of this Agreement includes the chemical plant and the Avon and Amorco Wharves, for each meal period that they are entitled to under California law. This On-Duty Meal Period Agreement does not apply to employees who work 8-hour shift schedules. In addition, this On-Duty Meal Period Agreement does not apply to employees who work in Maintenance, Environmental, Technical Services, and Laboratory classifications or departments or employees working in the following positions: Material Requisition Clerk, Head Utility Operator, Wharf A Operator, LPG A Operator, LPG Clerk, Senior Dispatcher, Outside Operator - Gauging Department, Assistant Plant Gauger, Water Tender and Training Coordinator, as the nature of the job and refinery operations are such that employees working in these classifications, departments, and positions are able to take unpaid, uninterrupted, and duty free 30-minute meal periods during their regularly scheduled shifts. However, this Agreement does apply to employees working in the above excluded classifications, departments, or positions who volunteer in the Emergency Response Brigade or other emergency-response positions.

1.     The Union may revoke this Agreement on behalf of Covered Employees at any time by providing written notice to the Company of its decision to do so. The Union shall work with the

Case 2:18-cv-0567-v-DMG-JST   Document 199-1   Filed 05/03/23   Page 43 of 167   Page ID
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 118 of 167
#:6691

Company to provide reasonable notice of its intention to revoke this Agreement to avoid significant disruption to the Company's business operations and to ensure the safety and welfare of Covered Employees.  In the event that the Union revokes this Agreement, the Company shall have the right to implement a schedule under which Covered Employees shall receive a 30-minute unpaid duty-free meal period for each required meal period, and the Company shall have the right to reopen the Collective Bargaining Agreement for negotiations with the Union on the issue of meal periods.

     2.     If a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering the provision of meal periods.

     3.     Nothing in this Agreement shall alter any rights afforded to the Union or the Company under the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, excepting any provisions and rights in those agreements and side letters pertaining to employee meal periods.  Nothing in this Agreement shall limit the rights afforded to the Company under state and federal law, the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, including but not limited to the Company's rights with respect to employee schedules and, specifically, the Company's right to modify work schedules. Nothing in this Agreement shall constitute a waiver of the right to bargain over proposed changes to the terms and conditions of employment.

     4.     The Union fully supports and endorses the purpose and legality of this Agreement and agrees that it shall neither challenge its legality or meal periods provided for hereunder nor support, aid, or encourage any legal challenge to this Agreement, including in the event that the Union revokes this Agreement.

     5.     The Company shall have the right to revoke the On-Duty Meal Period Agreement at any time.

     6.     This Agreement is contingent upon ratification by the membership of USW Local 5.

///

///

///

///

///

///

///

///

Case 2:18-cv-03587-DMG-LA   Document 99-1   Filed 05/25/13   Page 14 of 16   Page ID
Case 4:17-cv-03850-JST   Document 1-1   Filed 05/03/17   Page 119 of 167   Page ID
#:6692

7.      This Agreement shall remain in effect unless and until the Company or the Union exercises the option to revoke it or unless and until a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement illegal or ineffective pursuant to paragraphs 1, 2 and 5 above.

_____
Tesoro Refining & Marketing Company, LLC
Golden Eagle Refinery


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC, Local 5

**Los Angeles Refinery Waiver of Second Meal Period**

The following Meal Period Waiver is entered into between Tesoro Refining & Marketing Company, LLC, Los Angeles Refinery (the "Company"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") and USW Local 675 (collectively referred to as the "Union").

The Company and the Union hereby agree as follows:

All employees whose terms and conditions of employment were or are governed by the "Agreement between Tesoro Refining and Marketing Company and United Steel Workers AFL-CIO Southern California Local 675," which includes "Technician-Laboratory and Technician-Maintenance classifications but exclud[es] all other Technical employees engaged in Technical work and Office and Supervisory Employees," effective during the period of May 1, 2009 through April 30, 2012, and/or any successor agreements thereto (the "Collective Bargaining Agreement"), which employees shall be referred to herein as the "Covered Employees," hereby waive the second uninterrupted, 30-minute meal period to which Covered Employees are entitled during shifts of more than ten (10) hours but no more than 12 hours, where the first meal period was not waived. This waiver does not apply to meal periods provided to employees who work 8-hour shift schedules, employees who work in maintenance or 12-hour shift laboratory classifications or departments, or employees working as Operations trainers; however, this Agreement does apply to employees working in the above excluded classifications, departments, or positions who volunteer in the Emergency Response Brigade or other emergency-response positions.

1.    The Union may revoke this Agreement on behalf of Covered Employees at any time by providing written notice to the Company of its decision to do so.  The Union shall work with the Company to provide reasonable notice of its intention to revoke this Agreement to avoid significant disruption to the Company's business operations and to ensure the safety and welfare of Covered Employees.

2.    If a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering the provision of meal periods.

3.    Nothing in this Agreement shall alter any rights afforded to the Union or the Company under the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, excepting any provisions and rights in those agreements and side letters pertaining to employee meal periods.  Nothing in this Agreement shall limit the rights afforded to the Company under state and federal law, the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, including but not limited to the Company's rights with respect to employee schedules and, specifically, the Company's right to modify work schedules. Nothing in this Agreement shall constitute a waiver of the right to bargain over proposed changes to the terms and conditions of employment.

4.    The Union fully supports and endorses the purpose and legality of this Agreement and agrees that it shall neither challenge its legality or meal periods provided for hereunder nor

Case 2:18-cv-05670-DMG-LA  Document 199-1  Filed 05/03/13  Page 32 of 97  Page ID
Case 4:17-cv-03850-JST  Document 1  Filed 05/03/17  Page 121 of 167
#:6694

support, aid, or encourage any legal challenge to this Agreement, including in the event that the Union revokes this Agreement.

5.      The Company shall have the right to revoke this Agreement at any time.

6.      This Agreement is contingent upon ratification by the membership of USW Local 675.

7.      This Agreement shall remain in effect unless and until the Company or the Union exercises the option to revoke it or unless and until a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement illegal or ineffective pursuant to paragraphs 1, 2 and 5 above.


_____
Tesoro Refining & Marketing Company, LLC
Los Angeles Refinery


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC, Local 675

**Golden Eagle Refinery Waiver of Second Meal Period**

The following Meal Period Waiver is entered into between Tesoro Refining & Marketing Company, LLC, Golden Eagle Refinery (the "Company"), and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") and USW Local 5 (collectively referred to as the "Union").

The Company and the Union hereby agree as follows:

All employees whose terms and conditions of employment were or are governed by the "Articles of Agreement between Tesoro Refining Company Golden Eagle Refinery and United Steelworkers International Union Local No. 5 and United Steelworkers International Union," effective February 1, 2009, or the "Articles of Agreement between Tesoro Refining Company Golden Eagle Chemical Plant and United Steelworkers International Union Local No. 5," effective March 1, 2009, and/or any successor agreements thereto (collectively referred to as the "Collective Bargaining Agreement"), which employees shall be referred to herein as the "Covered Employees," hereby waive the second uninterrupted, 30-minute meal period to which Covered Employees are entitled during shifts of more than ten (10) hours but no more than 12 hours, where the first meal period was not waived.  This waiver does not apply to meal periods provided to employees who work in Maintenance, Environmental, Technical Services, and Laboratory classifications or departments or employees working in the following positions:  Material Requisition Clerk, Head Utility Operator, Wharf A Operator, LPG A Operator, LPG Clerk, Senior Dispatcher, Outside Operator - Gauging Department, Assistant Plant Gauger, Water Tender and Training Coordinator; however, this Agreement does apply to employees working in the above excluded classifications, departments, or positions who volunteer in the Emergency Response Brigade or other emergency-response positions.

1.      The Union may revoke this Agreement on behalf of Covered Employees at any time by providing written notice to the Company of its decision to do so.  The Union shall work with the Company to provide reasonable notice of its intention to revoke this Agreement to avoid significant disruption to the Company's business operations and to ensure the safety and welfare of Covered Employees.

2.      If a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement unnecessary, illegal, or ineffective, then the Union and the Company shall promptly meet to bargain over the terms of a new agreement covering the provision of meal periods.

3.      Nothing in this Agreement shall alter any rights afforded to the Union or the Company under the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, excepting any provisions and rights in those agreements and side letters pertaining to employee meal periods.  Nothing in this Agreement shall limit the rights afforded to the Company under state and federal law, the Collective Bargaining Agreement, 12-Hour Shift agreements, side letters, or any related agreements, including but not limited to the Company's rights with respect to employee schedules and, specifically, the Company's right to modify work schedules. Nothing in this Agreement shall constitute a waiver of the right to bargain over proposed changes to the terms and conditions of employment.

4.      The Union fully supports and endorses the purpose and legality of this Agreement and agrees that it shall neither challenge its legality or meal periods provided for hereunder nor support, aid, or encourage any legal challenge to this Agreement, including in the event that the Union revokes this Agreement.

5.      The Company shall have the right to revoke this Agreement at any time.

6.      This Agreement is contingent upon ratification by the membership of USW Local 5.

7.      This Agreement shall remain in effect unless and until the Company or the Union exercises the option to revoke it or unless and until a statutory change, regulation, revision, Court determination, or other change in law renders this Agreement illegal or ineffective pursuant to paragraphs 1, 2 and 5 above.


_____
Tesoro Refining & Marketing Company, LLC
Golden Eagle Refinery


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC


_____
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers
International Union, AFL-CIO, CLC, Local 5

# Exhibit B

## SETTLEMENT AGREEMENT AND

## GENERAL RELEASE OF CLAIMS

The parties to this Settlement Agreement and General Release of Claims ("Agreement") are Tesoro Refining & Marketing Company, LLC, formerly known as Tesoro Refining and Marketing Company ("Defendant") and Plaintiff Richard Floyd  ("Plaintiff") (collectively, Defendant and Plaintiff shall be referred to as the "Parties").  This Agreement is for the benefit of the Parties and certain Releasees, defined in paragraph 7 below.

## RECITALS

WHEREAS, Plaintiff is a current employee of Defendant.

WHEREAS, on or about April 25, 2008, Plaintiff filed a purported class action complaint entitled *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC, on behalf of its members employed by defendants, and Richard Floyd and Eduardo Carbejal, individually and on behalf of all similarly situated current and former employees v. Shell Oil Company, Equilon Enterprises LLC dba Shell Oil Products US, Tesoro Refining and Marketing Company and Does 1 through 100, inclusive,* in the Superior Court of the State of California, County of Los Angeles, docketed therein as Case No. BC389673, alleging: (1) failure to provide meal periods as required under California Labor Code sections 226.7 and 512; (2) failure to authorize and permit rest periods as required under California Labor Code section 226.7; (3) failure to furnish timely and accurate wage statements as required under California Labor Code sections 226 and 226.3; (4) failure to provide wages due at the time of termination as required under California Labor Code sections 201, 201.7, 202 and 203; and (5) violation of California Business & Professions Code section 17200, *et seq.,* which was subsequently removed to the United States District Court for the Central District of California, Case No. CV-08-3693 RGK (Ex) (the "Lawsuit");

WHEREAS, on or about July 1, 2009, Plaintiff filed a motion for class certification, which the district court denied on August 21, 2009;

WHEREAS, on or about November 17, 2009, Rick Delagarza, Paul Gutierrez, Sal Lucido, and April Moore, filed a purported class action lawsuit against Defendant entitled *Rick Delagarza, Paul Gutierrez, Sal Lucido, and April Moore, individually and on behalf of all similarly situated current and former employees v. Tesoro Refining and Marketing Company, and Does 1 through 20, inclusive,* in the Superior Court of the State of California, County of Contra Costa, docketed therein as Case No. 09-03270, alleging (1) failure to provide meal periods; (2) failure to furnish timely and accurate wage statements; (3) failure to pay all wages due at the time of termination; and (4) violation of the California Business & Professions Code section 17200, *et seq.,* which was removed to the United States District Court for the Northern District of California, Case No. 3:09-cv-05803 EMC ("*Delagarza*");

WHEREAS, on or about July 7, 2010, Benjamin Burgess and Michael Irwin filed a purported class action lawsuit against Defendant entitled *Benjamin Burgess and Michael Irwin, individually and on behalf of all similarly situated current and former employees v. Tesoro Refining and Marketing Company, and Does 1 through 20, inclusive,* in the Superior Court of the

Case 2:10-cv-05870-BMS-PLA   Document 199-1   Filed 05/15/13   Page 37 of 57   Page ID
Case 4:17-cv-03850-JST   Document 1-1   Filed 05/03/17   Page 126 of 167 Page ID
#:6699

State of California, County of Los Angeles, docketed therein as Case No. BC441210, alleging: (1) failure to provide meal periods; and (2) violation of California Business & Professions Code section 17200, *et. seq.*, which was removed to the United States District Court for the Central District of California, Case No. 10-cv-05870 DMG (PLAx) ("*Burgess*");

WHEREAS, on or about August 27, 2010, the district court in the Lawsuit (i) granted Plaintiff's motion for summary judgment, (ii) granted Defendant's motion for summary judgment on Plaintiff's second (failure to provide rest breaks) and fourth (failure to provide wages due at termination) claims, and his claim for injunctive relief under California Business & Professions Code section 17200; *et. seq.*; and (iii) denied Defendant's motion for summary judgment on his first (failure to provide meal periods) and third (failure to furnish timely and accurate wage statements) claims;

WHEREAS, on or about March 23, 2011, the district court entered an amended judgment in the Lawsuit clarifying that Plaintiff had prevailed on his fifth claim for monetary relief under California Business & Professions Code section 17200, *et seq.*;

WHEREAS, Defendant appealed to the Ninth Circuit the district court's order partially denying its motion for summary judgment against Plaintiff and granting Plaintiff's motion for partial summary judgment against Defendant;

WHEREAS, *Burgess* is currently pending as a certified class action, and Plaintiff is a member of the certified class;

WHEREAS, *Delagarza* was certified as a class action and, on August 8, 2012, the parties and claims in that action were consolidated for settlement purposes with *Burgess*;

WHEREAS, Defendant denies and disputes Plaintiff's allegations and the claims in the Lawsuit, *Burgess,* and *Delagarza*;

WHEREAS, the Parties have had sufficient time and opportunity to evaluate the merits of their respective positions; and

WHEREAS, in order to avoid the time and expense of continued litigation of the Lawsuit, the Parties have agreed to settle all of their differences on the terms and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the terms, conditions, and promises set forth herein, it is agreed as follows:

**TERMS OF SETTLEMENT**

**1.      Nonadmission of Liability.**  This Agreement is entered into in compromise of disputed claims.  The Parties acknowledge that the execution of this Agreement and the payment of consideration hereunder are not and shall not be construed in any way as an admission of wrongdoing or liability on the part of Defendant, Plaintiff, or any other person or business entity. Plaintiff further acknowledges that Defendant denies all allegations of wrongdoing alleged in the Lawsuit, *Burgess,* and *Delagarza*.  The Parties intend, by their actions pursuant to this

2

Case 4:17-cv-03850-JST  Document 1  Filed 05/03/17  Page 127 of 167
Case 2:10-cv-05670-DMG-PLA  Document 159-1  Filed 05/15/13  Page 38 of 57  Page ID
#:6700

Agreement, merely to avoid the expense, delay, uncertainty, and burden of litigation, and to enter into a global resolution of the claims and disputes between the Parties in the Lawsuit, *Burgess*, and *Delagarza*.

**2.      Monetary Consideration.**   In consideration for promises made by Plaintiff herein, including the release of claims, and contingent on Plaintiff's fulfillment of the conditions of this Agreement and the occurrence of the Effective Date, Defendant agrees to pay Plaintiff the gross sum of One Hundred Twenty-Five Dollars and Sixty-two Cents ($125.62).  This amount shall be paid as follows:

>   **2.1**      A check in the gross amount of Seventy-Five Dollars and Sixty-Two Cents ($75.62), less statutorily required deductions, payable to "Richard Floyd" and delivered to Linda Fang, Esq. of Gilbert & Sackman, a Law Corporation.  The Parties agree that this payment is for full and complete settlement of Plaintiff's claims for lost and unpaid wages of any kind or nature, except as provided in paragraph 3, below.  This amount shall be reported by Defendant on an IRS Form W-2.

>   **2.2**      Defendant shall pay the amount of Fifty Dollars ($50.00) in a check payable to "Richard Floyd" and delivered to Linda Fang, Esq. of Gilbert & Sackman, a Law Corporation.  This payment is for Plaintiff's alleged non-wage damages, including statutory penalties and interest.  The Parties agree that this payment will not be subject to withholding, provided that Plaintiff first provides Defendant with a properly completed IRS Form W-9.  This amount shall by reported by Defendant on an IRS Form 1099.

**3.      Entire Consideration**.  Plaintiff agrees that the amounts set forth in paragraph 2 of this Agreement shall constitute the entire monetary consideration provided to Plaintiff under this Agreement, and that Plaintiff will not seek any further compensation for any other claimed damage, costs, or attorneys' fees in connection with the matters encompassed by this Agreement; provided, however, Plaintiffs' counsel may include in its fee request in the *Burgess* settlement fees incurred in connection with work in the Lawsuit that was subsequently utilized in *Burgess* or *Delagarza*.   Specifically, Plaintiff agrees that he may not participate in the monetary settlement in *Burgess* for any shifts worked prior to March 24, 2011.  Plaintiff, however, shall be entitled to recover settlement payments as part of the *Burgess* class based upon the estimated number of qualifying 12-hour shifts he worked after March 23, 2011, if any.

**4.      No Warranty by Defendant and Indemnification.**  Plaintiff understands and agrees that Defendant is not providing Plaintiff with tax or legal advice, and it makes no representations regarding tax obligations or consequences, if any, related to this Agreement.  The Parties agree that Defendant and Plaintiff will rely on their own tax advisers as to the tax consequences related to this Agreement. The Parties understand and agree that they shall each take full, complete, and sole responsibility for paying taxes, if any, which are determined to be owed by each of them by any taxing authority, whether state, local, or federal as a result of the consideration paid under this Agreement. Plaintiff hereby agrees to fully indemnify, defend with counsel of Defendant's choosing, and hold harmless Defendant and any other Releasees of Defendant (as defined in paragraph 7) from payment of taxes, interest or penalties that they may be required to pay to any

3

governmental agency at any time as the result of payment of the consideration set forth herein and Plaintiff's failure to pay any taxes he may owe under the terms of this Agreement. This provision is not intended to require Plaintiff to indemnify Defendant with regard to its tax obligations in connection with the payments made under this Agreement.

**5.    Dismissal of Appeal.**  Within two business days of the Effective Date of this Agreement, Defendant shall dismiss any and all appeals pending in the United States Court of Appeals for the Ninth Circuit, arising out of the Lawsuit, including but not limited to 9th Cir. Case Nos. 11-55273 and 11-5524.

**6.    Time of Payment.**  All obligations of Defendant in this Agreement, and specifically in paragraph 2, are contingent upon Defendant's receipt of the signed Agreement from Plaintiff, with properly executed IRS Form W-9, and the occurrence of the Effective Date. Defendant shall pay Plaintiff in accordance with paragraph 2 of this Agreement within ten (10) calendar days after receiving the items specified in this paragraph 6 or the Effective Date, whichever is later.

**7.    Release.**  In consideration for Defendant's promises and payments set forth herein, Plaintiff does hereby, on behalf of himself, and his heirs, representatives, executors, administrators, successors, relatives and assigns, release Defendant (which includes Tesoro Refining and Marketing Company, LLC and Tesoro Refining and Marketing Company) and all of its current and former parents, sister corporations, affiliates, joint venturers, related companies, subsidiaries, divisions, and its and their owners, members, managers, investors, shareholders, officers, directors, partners, servants, agents, benefit plans, current and former employees, insurers, representatives, attorneys, successors and assigns, past, present, and future ("Releasees"), from all claims, causes of action, obligations, expenses, damages, liabilities, benefits, attorneys' fees, and costs, arising out of the claims that were alleged in the complaints filed in the Lawsuit, *Delagarza*, or the First Amended Complaint filed in *Burgess* (and claims derivative thereof), of whatever character, in law or in equity, known or unknown, unanticipated, or undisclosed, suspected or unsuspected, matured or unmatured, based on any act, omission, event, occurrence, or nonoccurrence alleged in the complaints filed in the Lawsuit, *Delagarza*, or the First Amended Complaint filed in *Burgess* from the beginning of time through the Effective Date, including without limitation, claims based upon Defendant's alleged failure to provide an off-duty meal period; failure to provide an on-duty meal period; failure to authorize or permit a rest period; failure to furnish timely and accurate wage statements due to the failure to provide an off-duty meal period, failure to provide an on-duty meal period, or failure to authorize or permit a rest period; and failure to provide wages due upon termination arising from the failure to provide an off-duty meal period, failure to provide an on-duty meal period, or failure to authorize or permit a rest period; and claims derivative of those alleged in the complaints filed in the Lawsuit, *Delagarza*, or the First Amended Complaint filed in *Burgess* arising under the California Labor Code (including Sections 201, 202, 203, 204, 210, 215, 216, 218, 218.5, 221, 222, 223, 224, 226, 226.6, 226.7, 512, 558, and 1199); California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200 et seq.; California Industrial Welfare Commission Wage Order 1-2001 sections 7, 11, and 12, codified at 8 Cal. Code Reg. § 11010; and California's Private Attorney General Act, codified at Cal. Lab. Code § 2698 et. seq. ("PAGA") (collectively "Released Claims").

4

15374881v.1

Case 2:16-cv-05870-BMS-PLA   Document 199-1   Filed 05/15/13   Page 66 of 97   Page ID
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 129 of 167
#:6702

Plaintiff agrees that if he, Eduardo Carbajal, or any named plaintiff or class member in *Delagarza* or *Burgess* is considered or determined to be an "aggrieved employee" for purposes of PAGA, he waives any potential right to any penalty prescribed by PAGA, the California Labor Code, or the applicable California Industrial Welfare Commission Wage Order, arising from or related to any of the Released Claims up through and including the Effective Date.

Notwithstanding the foregoing, this waiver and release of claims does not extend to any right to file an administrative charge or complaint with a local, state, or federal government agency when waiver of such right is not permitted. Plaintiff is, however, waiving his right to recover money in connection with any such charge or complaint. Plaintiff is also waiving his right to recover money in connection with a charge or complaint filed by any other individual or local, state, or federal agency based on the claims released by this waiver and release of claims. If Plaintiff is awarded money damages, Plaintiff will assign his right and interest to such money damages to Defendant.

**8.      Release of Unknown Claims.**   For the purpose of implementing a full and complete release, Plaintiff expressly acknowledges that the release given in this Agreement is intended to include in its effect, without limitation, all Released Claims that Plaintiff did not know or suspect to exist in his favor at the time of the Effective Date of this Agreement, regardless of whether the knowledge of such claims, or the facts upon which they might be based, would materially have affected the settlement of the matter, and that the consideration given under this Agreement was also for the release of those claims and contemplates the extinguishment of any such unknown claims. Plaintiff expressly waives the provisions of Section 1542 of the Civil Code of California (and all similar laws of other jurisdictions), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**9.      Enforcement of Agreement.**   Should any one of the Parties sue to enforce or interpret this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in such action. The Parties consent to the personal jurisdiction of the courts of California in any proceeding to enforce this Agreement and agree not to interpose any objection or defense based on lack of personal jurisdiction or improper venue in any such proceeding. In any proceeding for injunctive relief, Plaintiff acknowledges that any Releasee does not have an adequate remedy at law and that any injury suffered as a consequence of such breach is irreparable.

**10.      No Pending Actions.**   Plaintiff represents that there has been no filing on his behalf with any government agency or court of any claim, charge, or complaint against the Defendant or any of the Releasees, other than the Lawsuit and the *Burgess* class action.

15374881v.1

Case 2:16-cv-05670-DMG-PLA   Document 199-1   Filed 05/15/13   Page 31 of 57   Page ID
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 130 of 167
#:6703

## 11.    Miscellaneous.

**11.1    No Attorneys' Fees and Costs.**  The Parties agree that they shall bear their own respective costs, expenses, and attorneys' fees, including in connection with the Lawsuit and the negotiation and execution of this Agreement.  As set forth in paragraphs 49 and 51 of their global settlement agreement entered into by the parties in the consolidated *Delagarza* and *Burgess* cases ("*Delagarza* and *Burgess* Settlement Agreement"), however, Class Counsel in Delagarza and Burgess may request an award of attorneys' fees and costs and Defendant will not oppose the fee request so long as the amount of fees sought does not exceed twenty-five (25) percent of the gross settlement amount in the *Delagarza* and *Burgess* Settlement Agreement and so long as the amount of costs sought does not exceed $175,000. Apart from such request for attorneys' fees and costs, Plaintiff agrees not to seek any additional attorneys' fees and costs incurred in connection with the Lawsuit.

**11.2    Full and Independent Knowledge.**  The Parties represent that they fully understand all of the provisions of the Agreement and are voluntarily entering into this Agreement.

**11.3    Ownership of Claims.**  Plaintiff has not transferred or assigned, or purported to transfer or assign, to any person or entity, any claim described in this Agreement.  Plaintiff further agrees to indemnify and hold harmless Defendant each and all of the Releasees against any and all claims based upon, arising out of, or in any way connected with any such actual or purported transfer or assignment.

**11.4    Governing Law.**  This Agreement shall be governed by and interpreted under the laws of the State of California applicable to contracts made and to be performed entirely within California.

**11.5    Severability.**  Should any provision in this Agreement be determined to be invalid, the validity of the remaining provisions shall not be affected thereby, and the invalid provision shall be deemed not to be part of this Agreement, and all remaining provisions shall remain valid and enforceable.

**11.6    Entire Agreement.**  This Agreement and the *Delagarza* and *Burgess* Settlement Agreement, and any exhibits attached thereto, constitute the entire agreement between the Parties relating to the terms contained herein. All prior or contemporaneous agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a party or its counsel, are incorporated herein. No oral or written representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in these documents.

**11.7    No Representations.**  The Parties acknowledge that, except as expressly set forth herein and in the *Delagarza* and *Burgess* Settlement Agreement, no representations of any kind or character have been made by any other party or that party's agents or representatives to induce the execution of this Agreement.  It is further understood and agreed that Plaintiff has not relied upon any advice whatsoever from Defendant or its attorneys.

15374881v.1

Case 2:16-cv-05670-DMG-PLA   Document 155-1   Filed 05/15/13   Page 82 of 57   Page ID
#:6704
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 131 of 167

**11.8    No Modification or Waiver.**  No modification or waiver of the terms of this Agreement shall be effective unless it appears in a writing signed by all Parties and/or their respective counsel.

**11.9    Interpretation of Agreement.**  The language of all parts of this Agreement shall be construed as a whole, according to fair meaning, and not strictly for or against any one of the Parties.  The headings provided in boldface are inserted for the convenience of the Parties and shall not be construed to limit or modify the text of this Agreement.

**11.10   Successors.**  This Agreement shall be binding upon the Parties, and their heirs, representatives, executors, administrators, successors, and assigns, and shall inure to the benefit of each and all of the Releasees, and to their heirs, representatives, executors, administrators, successors, and assignees.

**11.11   Recitals Incorporated.** The Recitals as set forth above are incorporated herein by reference and are made a part of this Agreement.

**12.    Agreement Is Knowing and Voluntary.**  Plaintiff understands and agrees that he:

a.    has had a reasonable time within which to consider this Agreement before executing it;

b.    is advised by Defendant in writing to consult with his attorneys before executing this Agreement;

c.    has discussed this Agreement with his attorney;

d.    has carefully read and fully understands all of the provisions of this Agreement;

e.    is receiving consideration to which he would not otherwise be entitled apart from this Agreement and waiver of claims;

f.    knowingly and voluntarily agrees to all of the terms set forth in this Agreement; and

g.    knowingly and voluntarily intends to be legally bound by the same.

**13.    Counterparts.**  This Agreement may be executed in multiple counterparts, including facsimile transmission and electronic (PDF) transmission copies, each of which shall be deemed an original, but all of which counterparts, when taken together, shall constitute one and the same instrument.

**14.    Effective Date.**  This Agreement shall become effective on the first day on which all of the following events shall have occurred in *Burgess*: (a) the *Burgess* court has entered a final order approving the class action settlement; (b) the parties in *Burgess* have not given notice of intent to withdraw from the *Delagarza* and *Burgess* Settlement Agreement entered into by the parties in that case as permitted under paragraphs 40, 74 and 75 of that agreement and the time for giving such notice has run; and (c) the final approval order in *Burgess* has become final and non-appealable, either through the passage of time or the exhaustion of all appeals or other

Case 2:10-cv-05870-DMG-PLA Document 199-1 Filed 03/15/13 Page 63 of 97 Page ID
Case 4:17-cv-03850-JST Document 1-5 Filed 05/03/17 Page 132 of 167
#:6705

methods of review by the appellate courts; however, if no objections are filed within the Opt-Out Period, the parties agree that the determination of the Effective Date shall not include the time for the appeals process.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES THE RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, this Agreement has been executed by the Parties on the dates shown below.

Dated: _MARCH 14_____, 2013        By: _____

                                        Richard Floyd

Dated: _March 14_____, 2013        Tesoro Refining & Marketing Company, LLC, formerly known as Tesoro Refining and Marketing Company

                                   By: _____

                                        Charles S. Parrish
                                        Executive Vice President and Secretary

8

# SETTLEMENT AGREEMENT AND

# GENERAL RELEASE OF CLAIMS

The parties to this Settlement Agreement and General Release of Claims ("Agreement") are Tesoro Refining & Marketing Company, LLC, formerly known as Tesoro Refining and Marketing Company ("Defendant") and Plaintiff Eduardo Carbajal ("Plaintiff") (collectively, Defendant and Plaintiff shall be referred to as the "Parties"). This Agreement is for the benefit of the Parties and certain Releasees, defined in paragraph 7 below.

## RECITALS

WHEREAS, Plaintiff is a current employee of Defendant.

WHEREAS, on or about April 25, 2008, Plaintiff filed a purported class action complaint entitled *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC, on behalf of its members employed by defendants, and Richard Floyd and Eduardo Carbejal, individually and on behalf of all similarly situated current and former employees v. Shell Oil Company, Equilon Enterprises LLC dba Shell Oil Products US, Tesoro Refining and Marketing Company and Does 1 through 100, inclusive,* in the Superior Court of the State of California, County of Los Angeles, docketed therein as Case No. BC389673, alleging: (1) failure to provide meal periods as required under California Labor Code sections 226.7 and 512; (2) failure to authorize and permit rest periods as required under California Labor Code section 226.7; (3) failure to furnish timely and accurate wage statements as required under California Labor Code sections 226 and 226.3; (4) failure to provide wages due at the time of termination as required under California Labor Code sections 201, 201.7, 202 and 203; and (5) violation of California Business & Professions Code section 17200, *et seq.*, which was subsequently removed to the United States District Court for the Central District of California, Case No. CV-08-3693 RGK (Ex) (the "Lawsuit");

WHEREAS, on or about July 1, 2009, Plaintiff filed a motion for class certification, which the district court denied on August 21, 2009;

WHEREAS, on or about November 17, 2009, Rick Delagarza, Paul Gutierrez, Sal Lucido, and April Moore, filed a purported class action lawsuit against Defendant entitled *Rick Delagarza, Paul Gutierrez, Sal Lucido, and April Moore, individually and on behalf of all similarly situated current and former employees v. Tesoro Refining and Marketing Company, and Does 1 through 20, inclusive,* in the Superior Court of the State of California, County of Contra Costa, docketed therein as Case No. 09-03270, alleging (1) failure to provide meal periods; (2) failure to furnish timely and accurate wage statements; (3) failure to pay all wages due at the time of termination; and (4) violation of the California Business & Professions Code section 17200, *et seq.*, which was removed to the United States District Court for the Northern District of California, Case No. 3:09-cv-05803 EMC ("*Delagarza*");

WHEREAS, on or about July 7, 2010, Benjamin Burgess and Michael Irwin filed a purported class action lawsuit against Defendant entitled *Benjamin Burgess and Michael Irwin, individually and on behalf of all similarly situated current and former employees v. Tesoro Refining and Marketing Company, and Does 1 through 20, inclusive,* in the Superior Court of the

State of California, County of Los Angeles, docketed therein as Case No. BC441210, alleging:
(1) failure to provide meal periods; and (2) violation of California Business & Professions Code
section 17200, *et. seq.*, which was removed to the United States District Court for the Central
District of California, Case No. 10-cv-05870 DMG (PLAx) ("*Burgess*");

WHEREAS, on or about August 27, 2010, the district court in the Lawsuit (i) granted
Plaintiff's motion for summary judgment, (ii) granted Defendant's motion for summary
judgment on Plaintiff's second (failure to provide rest breaks) and fourth (failure to provide
wages due at termination) claims, and his claim for injunctive relief under California Business &
Professions Code section 17200; *et. seq.*; and (iii) denied Defendant's motion for summary
judgment on his first (failure to provide meal periods) and third (failure to furnish timely and
accurate wage statements) claims;

WHEREAS, on or about March 23, 2011, the district court entered an amended judgment
in the Lawsuit clarifying that Plaintiff had prevailed on his fifth claim for monetary relief under
California Business & Professions Code section 17200, *et seq.*;

WHEREAS, Defendant appealed to the Ninth Circuit the district court's order partially
denying its motion for summary judgment against Plaintiff and granting Plaintiff's motion for
partial summary judgment against Defendant;

WHEREAS, *Burgess* is currently pending as a certified class action, and Plaintiff is a
member of the certified class;

WHEREAS, *Delagarza* was certified as a class action and, on August 8, 2012, the parties
and claims in that action were consolidated for settlement purposes with *Burgess*;

WHEREAS, Defendant denies and disputes Plaintiff's allegations and the claims in the
Lawsuit, *Burgess,* and *Delagarza*;

WHEREAS, the Parties have had sufficient time and opportunity to evaluate the merits of
their respective positions; and

WHEREAS, in order to avoid the time and expense of continued litigation of the
Lawsuit, the Parties have agreed to settle all of their differences on the terms and in the manner
set forth in this Agreement.

NOW, THEREFORE, in consideration of the terms, conditions, and promises set forth
herein, it is agreed as follows:

## TERMS OF SETTLEMENT

1.      **Nonadmission of Liability.**  This Agreement is entered into in compromise of disputed
claims.  The Parties acknowledge that the execution of this Agreement and the payment of
consideration hereunder are not and shall not be construed in any way as an admission of
wrongdoing or liability on the part of Defendant, Plaintiff, or any other person or business entity.
Plaintiff further acknowledges that Defendant denies all allegations of wrongdoing alleged in the
Lawsuit, *Burgess,* and *Delagarza*.  The Parties intend, by their actions pursuant to this

2

Agreement, merely to avoid the expense, delay, uncertainty, and burden of litigation, and to enter into a global resolution of the claims and disputes between the Parties in the Lawsuit, *Burgess*, and *Delagarza*.

**2.    Monetary Consideration.**  In consideration for promises made by Plaintiff herein, including the release of claims, and contingent on Plaintiff's fulfillment of the conditions of this Agreement and the occurrence of the Effective Date, Defendant agrees to pay Plaintiff the gross sum of Twenty-Two Thousand Nine Hundred Twenty-Six Dollars and Nineteen Cents ($22,926.19).  This amount shall be paid as follows:

> 2.1    A check in the gross amount of Eighteen Thousand Nine Hundred Twenty-Six Dollars and Nineteen Cents ($18,926.19), less statutorily required deductions, payable to "Eduardo Carbajal" and delivered to Linda Fang, Esq. of Gilbert & Sackman, a Law Corporation.  The Parties agree that this payment is for full and complete settlement of Plaintiff's claims for lost and unpaid wages of any kind or nature, except as provided in paragraph 3, below.  This amount shall be reported by Defendant on an IRS Form W-2.

> 2.2    Defendant shall pay the amount of Four Thousand Dollars ($4000.00) in a check payable to "Eduardo Carbajal"  and delivered to Linda Fang, Esq. of Gilbert & Sackman, a Law Corporation.  This payment is for Plaintiff's alleged non-wage damages, including statutory penalties and interest.  The Parties agree that this payment will not be subject to withholding, provided that Plaintiff first provides Defendant with a properly completed IRS Form W-9.  This amount shall by reported by Defendant on an IRS Form 1099.

**3.    Entire Consideration**.  Plaintiff agrees that the amounts set forth in paragraph 2 of this Agreement shall constitute the entire monetary consideration provided to Plaintiff under this Agreement, and that Plaintiff will not seek any further compensation for any other claimed damage, costs, or attorneys' fees in connection with the matters encompassed by this Agreement; provided, however, Plaintiffs' counsel may include in its fee request in the *Burgess* settlement fees incurred in connection with work in the Lawsuit that was subsequently utilized in *Burgess* or *Delagarza*.  Specifically, Plaintiff agrees that he may not participate in the monetary settlement in *Burgess* for any shifts worked prior to March 24, 2011.  Plaintiff, however, shall be entitled to recover settlement payments as part of the *Burgess* class based upon the estimated number of qualifying 12-hour shifts he worked after March 23, 2011, if any.

**4.    No Warranty by Defendant and Indemnification.**  Plaintiff understands and agrees that Defendant is not providing Plaintiff with tax or legal advice, and it makes no representations regarding tax obligations or consequences, if any, related to this Agreement.  The Parties agree that Defendant and Plaintiff will rely on their own tax advisers as to the tax consequences related to this Agreement. The Parties understand and agree that they shall each take full, complete, and sole responsibility for paying taxes, if any, which are determined to be owed by each of them by any taxing authority, whether state, local, or federal as a result of the consideration paid under this Agreement. Plaintiff hereby agrees to fully indemnify, defend with counsel of Defendant's choosing, and hold harmless Defendant and any other Releasees of Defendant (as defined in paragraph 7) from payment of taxes, interest or penalties that they may be required to pay to any

3

governmental agency at any time as the result of payment of the consideration set forth herein and Plaintiff's failure to pay any taxes he may owe under the terms of this Agreement.  This provision is not intended to require Plaintiff to indemnify Defendant with regard to its tax obligations in connection with the payments made under this Agreement.

**5.     Dismissal of Appeal.**  Within two business days of the Effective Date of this Agreement, Defendant shall dismiss any and all appeals pending in the United States Court of Appeals for the Ninth Circuit, arising out of the Lawsuit, including but not limited to 9th Cir. Case Nos. 11-55273 and 11-5524.

**6.     Time of Payment.**  All obligations of Defendant in this Agreement, and specifically in paragraph 2, are contingent upon Defendant's receipt of the signed Agreement from Plaintiff, with properly executed IRS Form W-9, and the occurrence of the Effective Date.  Defendant shall pay Plaintiff in accordance with paragraph 2 of this Agreement within ten (10) calendar days after receiving the items specified in this paragraph 6 or the Effective Date, whichever is later.

**7.     Release.**  In consideration for Defendant's promises and payments set forth herein, Plaintiff does hereby, on behalf of himself, and his heirs, representatives, executors, administrators, successors, relatives and assigns, release Defendant (which includes Tesoro Refining and Marketing Company, LLC and Tesoro Refining and Marketing Company) and all of its current and former parents, sister corporations, affiliates, joint venturers, related companies, subsidiaries, divisions, and its and their owners, members, managers, investors, shareholders, officers, directors, partners, servants, agents, benefit plans, current and former employees, insurers, representatives, attorneys, successors and assigns, past, present, and future ("Releasees"), from all claims, causes of action, obligations, expenses, damages, liabilities, benefits, attorneys' fees, and costs, arising out of the claims that were alleged in the complaints filed in the Lawsuit, *Delagarza*, or the First Amended Complaint filed in *Burgess* (and claims derivative thereof), of whatever character, in law or in equity, known or unknown, unanticipated, or undisclosed, suspected or unsuspected, matured or unmatured, based on any act, omission, event, occurrence, or nonoccurrence alleged in the complaints filed in the Lawsuit, *Delagarza*, or the First Amended Complaint filed in *Burgess* from the beginning of time through the Effective Date, including without limitation, claims based upon Defendant's alleged failure to provide an off-duty meal period; failure to provide an on-duty meal period; failure to authorize or permit a rest period; failure to furnish timely and accurate wage statements due to the failure to provide an off-duty meal period, failure to provide an on-duty meal period, or failure to authorize or permit a rest period; and failure to provide wages due upon termination arising from the failure to provide an off-duty meal period, failure to provide an on-duty meal period, or failure to authorize or permit a rest period; and claims derivative of those alleged in the complaints filed in the Lawsuit, *Delagarza*, or the First Amended Complaint filed in *Burgess* arising under the California Labor Code (including Sections 201, 202, 203, 204, 210, 215, 216, 218, 218.5, 221, 222, 223, 224, 226, 226.6, 226.7, 512, 558, and 1199); California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code § 17200 et seq.; California Industrial Welfare Commission Wage Order 1-2001 sections 7, 11, and 12, codified at 8 Cal. Code Reg. § 11010; and California's Private Attorney General Act, codified at Cal. Lab. Code § 2698 et. seq. ("PAGA") (collectively "Released Claims").

Case 2:18-cv-05670-DMG-LA   Document 139-1   Filed 05/03/13   Page 48 of 91   Page ID
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 137 of 167
#:6710

Plaintiff agrees that if he, Eduardo Carbajal, or any named plaintiff or class member in *Delagarza* or *Burgess* is considered or determined to be an "aggrieved employee" for purposes of PAGA, he waives any potential right to any penalty prescribed by PAGA, the California Labor Code, or the applicable California Industrial Welfare Commission Wage Order, arising from or related to any of the Released Claims up through and including the Effective Date.

Notwithstanding the foregoing, this waiver and release of claims does not extend to any right to file an administrative charge or complaint with a local, state, or federal government agency when waiver of such right is not permitted. Plaintiff is, however, waiving his right to recover money in connection with any such charge or complaint. Plaintiff is also waiving his right to recover money in connection with a charge or complaint filed by any other individual or local, state, or federal agency based on the claims released by this waiver and release of claims. If Plaintiff is awarded money damages, Plaintiff will assign his right and interest to such money damages to Defendant.

**8.     Release of Unknown Claims.**  For the purpose of implementing a full and complete release, Plaintiff expressly acknowledges that the release given in this Agreement is intended to include in its effect, without limitation, all Released Claims that Plaintiff did not know or suspect to exist in his favor at the time of the Effective Date of this Agreement, regardless of whether the knowledge of such claims, or the facts upon which they might be based, would materially have affected the settlement of the matter, and that the consideration given under this Agreement was also for the release of those claims and contemplates the extinguishment of any such unknown claims. Plaintiff expressly waives the provisions of Section 1542 of the Civil Code of California (and all similar laws of other jurisdictions), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

**9.     Enforcement of Agreement.**  Should any one of the Parties sue to enforce or interpret this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs incurred in such action. The Parties consent to the personal jurisdiction of the courts of California in any proceeding to enforce this Agreement and agree not to interpose any objection or defense based on lack of personal jurisdiction or improper venue in any such proceeding. In any proceeding for injunctive relief, Plaintiff acknowledges that any Releasee does not have an adequate remedy at law and that any injury suffered as a consequence of such breach is irreparable.

**10.     No Pending Actions.**  Plaintiff represents that there has been no filing on his behalf with any government agency or court of any claim, charge, or complaint against the Defendant or any of the Releasees, other than the Lawsuit and the *Burgess* class action.

## 11. Miscellaneous.

**11.1   No Attorneys' Fees and Costs.**  The Parties agree that they shall bear their own respective costs, expenses, and attorneys' fees, including in connection with the Lawsuit and the negotiation and execution of this Agreement.  As set forth in paragraphs 49 and 51 of their global settlement agreement entered into by the parties in the consolidated *Delagarza* and *Burgess* cases ("*Delagarza* and *Burgess* Settlement Agreement"), however, Class Counsel in Delagarza and Burgess may request an award of attorneys' fees and costs and Defendant will not oppose the fee request so long as the amount of fees sought does not exceed twenty-five (25) percent of the gross settlement amount in the *Delagarza* and *Burgess* Settlement Agreement and so long as the amount of costs sought does not exceed $175,000. Apart from such request for attorneys' fees and costs, Plaintiff agrees not to seek any additional attorneys' fees and costs incurred in connection with the Lawsuit.

**11.2   Full and Independent Knowledge.**  The Parties represent that they fully understand all of the provisions of the Agreement and are voluntarily entering into this Agreement.

**11.3   Ownership of Claims.**  Plaintiff has not transferred or assigned, or purported to transfer or assign, to any person or entity, any claim described in this Agreement.  Plaintiff further agrees to indemnify and hold harmless Defendant each and all of the Releasees against any and all claims based upon, arising out of, or in any way connected with any such actual or purported transfer or assignment.

**11.4   Governing Law.**  This Agreement shall be governed by and interpreted under the laws of the State of California applicable to contracts made and to be performed entirely within California.

**11.5   Severability.**  Should any provision in this Agreement be determined to be invalid, the validity of the remaining provisions shall not be affected thereby, and the invalid provision shall be deemed not to be part of this Agreement, and all remaining provisions shall remain valid and enforceable.

**11.6   Entire Agreement.**  This Agreement and the *Delagarza* and *Burgess* Settlement Agreement, and any exhibits attached thereto, constitute the entire agreement between the Parties relating to the terms contained herein. All prior or contemporaneous agreements, understandings, and statements, whether oral or written, whether express or implied, and whether by a party or its counsel, are incorporated herein. No oral or written representations, warranties, or inducements have been made to any party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in these documents.

**11.7   No Representations.**  The Parties acknowledge that, except as expressly set forth herein and in the *Delagarza* and *Burgess* Settlement Agreement, no representations of any kind or character have been made by any other party or that party's agents or representatives to induce the execution of this Agreement.  It is further understood and agreed that Plaintiff has not relied upon any advice whatsoever from Defendant or its attorneys.

15374884v.1

**11.8    No Modification or Waiver.**  No modification or waiver of the terms of this Agreement shall be effective unless it appears in a writing signed by all Parties and/or their respective counsel.

**11.9    Interpretation of Agreement.**  The language of all parts of this Agreement shall be construed as a whole, according to fair meaning, and not strictly for or against any one of the Parties.  The headings provided in boldface are inserted for the convenience of the Parties and shall not be construed to limit or modify the text of this Agreement.

**11.10    Successors.**  This Agreement shall be binding upon the Parties, and their heirs, representatives, executors, administrators, successors, and assigns, and shall inure to the benefit of each and all of the Releasees, and to their heirs, representatives, executors, administrators, successors, and assignees.

**11.11    Recitals Incorporated.**  The Recitals as set forth above are incorporated herein by reference and are made a part of this Agreement.

**12.    Agreement Is Knowing and Voluntary.**  Plaintiff understands and agrees that he:

    a.    has had a reasonable time within which to consider this Agreement before executing it;

    b.    is advised by Defendant in writing to consult with his attorneys before executing this Agreement;

    c.    has discussed this Agreement with his attorney;

    d.    has carefully read and fully understands all of the provisions of this Agreement;

    e.    is receiving consideration to which he would not otherwise be entitled apart from this Agreement and waiver of claims;

    f.    knowingly and voluntarily agrees to all of the terms set forth in this Agreement; and

    g.    knowingly and voluntarily intends to be legally bound by the same.

**13.    Counterparts.**  This Agreement may be executed in multiple counterparts, including facsimile transmission and electronic (PDF) transmission copies, each of which shall be deemed an original, but all of which counterparts, when taken together, shall constitute one and the same instrument.

**14.    Effective Date.**  This Agreement shall become effective on the first day on which all of the following events shall have occurred in *Burgess*: (a) the *Burgess* court has entered a final order approving the class action settlement; (b) the parties in *Burgess* have not given notice of intent to withdraw from the *Delagarza* and *Burgess* Settlement Agreement entered into by the parties in that case as permitted under paragraphs 40, 74 and 75 of that agreement and the time for giving such notice has run; and (c) the final approval order in *Burgess* has become final and non-appealable, either through the passage of time or the exhaustion of all appeals or other

7

methods of review by the appellate courts; however, if no objections are filed within the Opt-Out Period, the parties agree that the determination of the Effective Date shall not include the time for the appeals process.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES THE RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, this Agreement has been executed by the Parties on the dates shown below.

Dated: ___3 — 15___, 2013          By: _____
                                              Eduardo Carbajal

Dated: _____, 2013          Tesoro Refining & Marketing Company,
                                              LLC, formerly known as Tesoro Refining
                                              and Marketing Company

                                      By: _____
                                              Kelly Curll
                                      Senior Attorney

15374884v.1

methods of review by the appellate courts; however, if no objections are filed within the Opt-Out Period, the parties agree that the determination of the Effective Date shall not include the time for the appeals process.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES THE RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

IN WITNESS WHEREOF, this Agreement has been executed by the Parties on the dates shown below.

Dated: _____, 2013      By: _____

                                          Eduardo Carbajal

Dated: March 14 , 2013      Tesoro Refining & Marketing Company, LLC, formerly known as Tesoro Refining and Marketing Company

                                    By: _____

                                          Kelly Curll

      Senior Attorney

8

# Exhibit C

*Burgess v. Tesoro Refining and Marketing Co.*, Case No. 10-cv-05870 DMG (PLAx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# If you have worked as a 12-hour shift worker
# for Tesoro Refining and Marketing Co. since May 11, 2007,
# you could get money from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- This class action settlement will provide Eleven Million, Five Hundred Ninety-Nine Thousand, Nine Hundred Ninety-Nine Dollars ($11,599,999.00) to resolve a lawsuit over whether Tesoro violated California law by failing to provide shift workers at the Los Angeles and Golden Eagle Refineries with meal breaks relieved of all duty during their 12-hour shifts. It avoids the costs and risks of continuing the lawsuit, pays money to shift workers like you, and releases Tesoro from liability.

- Shift workers at the Los Angeles Refinery will be paid 50% of the meal period premium, which is one hour of pay at their base contractual hourly rate, for each qualifying 12-hour shift worked between May 11, 2007 and March 10, 2012. Former employee shift workers who worked qualifying 12-hour shifts at the Los Angeles Refinery whose employment with Tesoro ended between May 11, 2007 and March 10, 2012 will be paid an additional 30 hours of pay. If funds remain, shift workers will be paid a share of the remaining funds based on an estimated number of qualifying 12-hour shifts worked after March 10, 2012.

- Court-appointed lawyers for the Class will ask the Court for $2.5 million, plus up to $175,000 in litigation costs, as fees and expenses for investigating the facts, pursuing the case, and negotiating the settlement.

- The Court has not determined that Tesoro violated the law. The two sides disagree on how much money, if any, might have been won if the case had gone to trial. Tesoro denies that it has violated any laws or that it has harmed its employees in any way.

- A website has been set up to keep you informed of the details of the settlement. Please visit the website at www.tesoromealperiodsuit.com for more information.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | Receive the payment calculated under this settlement. Give up your right to sue Tesoro separately about the legal claims in this lawsuit. |
| **SUBMIT A DISPUTE FORM** | Submit a dispute form, with supporting documents, if you want to receive a payment under the settlement but you disagree with the amount of your estimated settlement payment. |
| **EXCLUDE YOURSELF BY OPTING OUT** | Get no payment from the settlement, but keep your right to file your own lawsuit against Tesoro about the legal claims in this case. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court about why you don't like the settlement. You may get a payment under the settlement even if you object. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- **Your legal rights are affected whether you act or don't act. Read this notice carefully.** The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made only if the Court approves the settlement and after any appeals are resolved. Please be patient.

-1-

Case 2:10-cv-05870-DMG-PLA Document 139-1 Filed 05/03/13 Page 14 of 167 Page ID
#:6717
Case 4:17-cv-03850-JST Document 1-1 Filed 05/03/17 Page 144 of 167

# BASIC INFORMATION

## 1. Why did I get this notice package?

Tesoro's records show that you worked as a 12-hour shift worker at its Los Angeles Refinery between May 11, 2007 and March 10, 2012. The Court has authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. This package explains the lawsuit, the proposed settlement, your legal rights, what benefits are available, who is eligible, and how to get the benefits. This package also includes a form for you to use to dispute the amount of the estimated payment you will receive from this settlement, if you wish.

## 2. What is this lawsuit about?

The lawsuit claims that Tesoro violated certain laws by failing to provide employees with uninterrupted, off-duty 30-minute meal periods and failing to pay all wages due for missed meal periods to former employees when their employment with Tesoro ended.

Tesoro denies the allegations in the lawsuit and says that its actions and policies are and have been in compliance with applicable laws and regulations.

## 3. What is a class action and who is involved?

In a class action, one or more people called Class Representatives (in this case, Benjamin Burgess, Paul Gutierrez, Sal Lucido, April Moore, Charles Grimmett, Antonio Garcia, and Brian Cashwell), sue on behalf of people who allegedly have similar claims. All of these people are called a Class or Class Members. The people who brought the case – and all the Class Members like them – are called Plaintiffs. The company they have sued, Tesoro Refining and Marketing Company, is called the Defendant. In a class action, one court resolves all the issues for all Class Members, except for those people who exclude themselves from the Class. If you do not exclude yourself, you will remain a member of the Class and will be bound by the settlement.

The Court in charge of the case is the United States District Court for the Central District of California, Judge Dolly M. Gee presiding, and the case is known as *Burgess v. Tesoro Refining and Marketing Co.*, Case No. 10-cv-05870 DMG (PLAx).

## 4. Who funded this lawsuit?

This lawsuit against Tesoro is being funded by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"). USW is the labor organization that represents Tesoro's shift workers (excluding workers in the Sulfur Recovery Plant) for collective bargaining purposes.

**QUESTIONS? CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)**
**OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

| **5. Why is there a settlement?** |
|---|

The Court has not decided in favor of the Plaintiffs or Tesoro in this case. The Plaintiffs think they could have won one hour of pay for each qualifying 12-hour shift they and other Class Members worked during the class period if they won at trial. Tesoro thinks that the Plaintiffs would not have won anything from a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, they avoid the costs of continuing the case and going to trial as well as the risk of losing, and the affected workers will get paid. The Class Representatives and the attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT?

| **6. How do I know if I am part of the settlement?** |
|---|

If you have been employed by Tesoro as a shift worker and worked at least one 12-hour shift as part of a 12-hour shift schedule at the Los Angeles Refinery between May 11, 2007 and March 10, 2012, you are part of the settlement. If you received this notice, you are probably part of the settlement.

| **7. Are there exceptions to being included?** |
|---|

You are not part of the settlement if you worked <u>only</u> in a management position, as a temporary shift supervisor or a salaried employee, or if you did not work any qualifying 12-hour shifts for Tesoro between May 11, 2007 and March 10, 2012.

If, during your employment with Tesoro, you moved from a qualifying position into a non-qualifying position (such as if you were promoted to a management position or if you switched from working as a shift worker to working as a day worker), you are still part of the settlement as long as you worked at least one qualifying 12-hour shift as a shift worker between May 11, 2007 and March 10, 2012.

| **8. Are all of my 12-hour shifts included?** |
|---|

Any 12-hour shifts you worked in a management position or as a temporary shift supervisor or a salaried employee will not be included in the settlement. All 12-hour shifts you worked as a shift worker at the Los Angeles Refinery between May 11, 2007 and March 10, 2012 will be included.

## OVERVIEW OF THE SETTLEMENT

| **9. What does the settlement provide?** |
|---|

Tesoro has agreed to pay Eleven Million, Five Hundred Ninety-Nine Thousand, Nine Hundred Ninety-Nine Dollars ($11,599,999.00) to settle the meal period claims of Class Members who worked at the Los Angeles and Golden Eagle Refineries. The settlement funds will be allocated as follows:

(1) Each Class Member will be entitled, provisionally, to 50% of the meal period premium, which is one hour of pay at his or her base contractual hourly rate, for each qualifying 12-hour shift worked between May 11, 2007 and March 10, 2012 at the Los Angeles Refinery or between April 25, 2004 and March 10, 2012 at the Golden Eagle Refinery;

(2) Each Class Member whose employment at the Los Angeles Refinery ended between May 11, 2007 and March 10, 2012 or whose employment at the Golden Eagle Refinery ended between April 25, 2005 and March 10, 2012, will be entitled, provisionally, to an additional 30 hours of pay at the base contractual hourly rate in effect on his or her last qualifying 12-hour shift;

(3) Court-appointed lawyers for the Class will ask the Court for $2.5 million, plus up to $175,000 in litigation costs, as fees and expenses for investigating the facts, pursuing the case, and negotiating the settlement;

(4) Any funds remaining after the payments in paragraphs (1), (2), and (3), above, are calculated will be used to make additional payments to Class Members based upon estimated qualifying shifts worked after March 10, 2012;

(5) Tesoro will separately pay up to $40,000 towards the costs of settlement administration; and

(6) Tesoro has agreed to withdraw its pending appeal in a separate case brought by USW and two plaintiffs, and to pay certain amounts to the individual plaintiffs in that case. These amounts will be paid separately from the settlement fund and will not reduce payments to Class Members.

In exchange for the settlement payments described above, USW has agreed to certain modifications to the collective bargaining agreements at the Los Angeles and Golden Eagle Refineries, which will be subject to ratification by the membership prior to Court approval of the settlement:

(1) USW will enter into an on-duty meal period agreement on behalf of represented 12-hour shift workers, who will be authorized to take uninterrupted 30-minute meal breaks subject to (a) their recall to work assignments, (b) the requirement that they remain on the premises during their meal periods (absent management permission to leave the premises in certain circumstances), (c) the requirement that they generally carry radios or otherwise remain in contact or available to be contacted during meal periods, and (d) any other duties and obligations set forth in the collective bargaining agreements or other company policies or procedures that may affect whether meal periods are interrupted.

(2) USW will waive the second meal period to which shift workers would otherwise be entitled after 10 consecutive hours of work, provided that the shift does not exceed 12 hours.

**(The above is only a general summary of the modifications to the collective bargaining agreements; the terms of the agreements themselves are the controlling documents and not this summary.)**

## 10. How are the contractual hourly rate and the meal period premium calculated?

For purposes of this settlement, the meal period premium is calculated by multiplying the number of qualifying 12-hour shifts worked during the relevant time period by the applicable base contractual hourly rate listed in the collective bargaining agreement. The base contractual hourly rate does not include any premiums such as the night shift differential, Head Operator premium, or overtime.

Class Members who worked at the Los Angeles Refinery will receive 50% of the meal period premium for qualifying 12-hour shifts worked between May 11, 2007 and March 10, 2012, plus a share of any remaining funds based on estimated qualifying shifts worked after March 10, 2012.

| **11. How is the additional 30 hours of pay for former employees calculated?** |
| --- |

For shift workers who worked qualifying 12-hour shifts but whose employment with Tesoro ended between May 11, 2007 and March 10, 2012, the additional 30 hours of pay will be based on the base contractual hourly rate that was in effect on the employee's last qualifying 12-hour shift.

| **12. How do I know how much I will be getting paid under the settlement?** |
| --- |

Your estimated settlement payment amount through March 10, 2012 is provided on the last page of this notice, along with the number of qualifying 12-hour shifts per calendar year on which the payment is based, as well as the amount of the additional 30 hours of pay for former employees. Your share of any remaining funds, which will be based on estimated qualifying 12-hour shifts worked after March 10, 2012, will be determined after the close of the Opt-Out Period and will be included in the settlement check that you receive if you choose not to opt out of the settlement. Please note that applicable payroll withholdings and deductions will be made from your settlement payment.

# THE LAWYERS REPRESENTING YOU

| **13. Do I have a lawyer in this case?** |
| --- |

In this case, the Court decided that Linda Fang and Jay Smith of Gilbert & Sackman, A Law Corporation, of Los Angeles, California, and Richard Rouco of Quinn, Connor, Weaver, Davies & Rouco, LLP, of Birmingham, Alabama, are qualified to represent the Class. These lawyers are called Class Counsel.

If you have any questions about the case, you may call (323) 938-3000 to speak with Linda Fang. You may also call (205) 870-9989 to speak to Richard Rouco.

| **14. How will the lawyers be paid?** |
| --- |

Class Counsel will ask the Court to approve a payment of $2.5 million to them for attorneys' fees, plus up to $175,000 as reimbursement of litigation expenses. The fees will pay Class Counsel for investigating the facts, pursuing the case, and negotiating the settlement. The Court may award less than the requested amounts. The attorneys' fees and expenses and the costs of settlement administration up to $40,000 will not reduce the amounts that will be paid to you or other members of the Class, as described in this notice.

Class Counsel's motion for attorneys' fees and expenses will be made available on the settlement website, at www.tesoromealperiodsuit.com, beginning on [10 days before objection deadline]. You must submit any objections to Class Counsel's request for fees and/or expenses by [45 days after notice postmark] to the Court, Class Counsel, and Defense Counsel at the three addresses listed in Question 18, below.

## YOUR OPTIONS

| 15. What are my options? |
|---|

You have four options. You can (1) do nothing; (2) object to your estimated settlement payment amount; (3) object to the class settlement; or (4) exclude yourself from the settlement. Each option is described below.

## IF YOU DO NOTHING

| 16. What happens when I do nothing at all? |
|---|

By doing nothing, you are staying in the Class and you will receive a payment as described above, based on the information contained in Tesoro's records. You will release your claims and not be able to sue Tesoro separately over the issues raised in this lawsuit.

Please note that the estimated settlement payment amount provided on the last page of this notice may differ <u>somewhat</u> from the settlement payment you ultimately get. Tesoro and Class Counsel have made their best efforts to provide you with the most accurate estimate in this notice.

## DISPUTING YOUR ESTIMATED SETTLEMENT PAYMENT AMOUNT

| 17. What if I disagree with my estimated settlement payment amount? |
|---|

If you disagree with the estimated settlement payment amount contained in this notice, you must send in the dispute form (included with this notice and available at www.tesoromealperiodsuit.com), along with any supporting written documentation, no later than [30 days after the postmark on this notice] to:

*Burgess v. Tesoro* Settlement
Simpluris, Inc.
[address]
[city, state, zip]

You must submit to the settlement administrator a clear, concise explanation of why you disagree with the estimated settlement payment amount, along with any supporting documentation. Types of documentation that will be considered include pay stubs, weekly schedules, job logs, and personal calendars. **If you do not submit an explanation or any written documentation, your dispute will be denied.**

**If, after reviewing a dispute, the settlement administrator denies the dispute and determines that the final settlement payment should be lower than the estimated settlement payment, your final settlement will be reduced by the difference.**

**QUESTIONS?  CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)
OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

Please be aware that you may not use the dispute form to challenge the formula that is being used to calculate the settlement payments – you may only challenge the estimated settlement payment amount if you believe that the formula is being inaccurately applied, for example, if you believe that you worked more qualifying shifts or an incorrect base contractual rate was used.

Failure to submit a dispute form with appropriate written documentation on time will result in a complete and final waiver of any challenge to the amount of the payment you will receive under the settlement. A final, binding determination regarding the dispute will be made within 10 days of receipt of the dispute form, or no later than 40 days after the postmark date of this notice. The settlement administrator will notify you regarding the resolution of your dispute by telephone, followed by an e-mail or notice by regular U.S. Mail if you have not provided a valid email address to the settlement administrator.

Your share of any remaining funds, which will be based on estimated qualifying 12-hour shifts worked after March 10, 2012, will be determined after the close of the Opt-Out Period and will be included in the settlement check that you receive if you choose not to opt out of the settlement. The amount of any remaining funds will depend on the number of Class Members who come forward and/or opt out of the settlement by the close of the Opt-Out Period (described in Question 19, below). You will not have an opportunity to dispute your share of any remaining funds.

# OBJECTING TO THE CLASS SETTLEMENT

| 18. How do I tell the Court that I don't like the settlement? |
|---|

If you qualify for a payment under the settlement, you can object to the settlement if you don't like any part of it, including Class Counsel's request for attorneys' fees and expenses. You can give reasons why you think the Court should not approve the settlement or Class Counsel's request for attorneys' fees and expenses and the Court will consider your views.

To object, you must send a letter saying that you object to the *Burgess v. Tesoro* settlement. Be sure to include your name, address, telephone number, email address, signature, the case information below, and your reasons for objecting to the settlement or Class Counsel's request for fees and/or expenses. You must mail your objection no later than [45 days after notice postmark] to all three addresses listed below:

| Case Information: |
|---|
| *Burgess v. Tesoro Refining and Marketing Co.*, Case No. 10-cv-05879 DMG (PLAx) |

| To the Court: | To Class Counsel: | To Defense Counsel: |
|---|---|---|
| Clerk of the Court | Linda Fang | Timothy Rusche |
| Re: Burgess v. Tesoro, Case No. | Jay Smith | Kristen Agnew |
| 10-cv-05879 DMG (PLAx) | Gilbert & Sackman | Seyfarth Shaw LLP |
| U.S. District Court for the | A Law Corporation | 333 South Hope Street, |
| Central District of California | 3699 Wilshire Blvd., Suite 1200 | Suite 3900 |
| 312 North Spring Street | Los Angeles, CA 90010-2732 | Los Angeles, CA 90071-1406 |
| Los Angeles, CA 90012-4701 | | |

**Please do not call the Court regarding your objections. Any objections must be in writing.**

Case 2:18-cv-05670-DMG-LA    Document 139-1   Filed 05/03/17   Page 45 of 167   Page ID
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 150 of 167
#:6723

Failure to submit an objection on time will result in a complete and final waiver of any challenge to the settlement. Anyone who submits a written objection will be required to make himself or herself available upon reasonable notice for a deposition by Class Counsel or Defense Counsel, if counsel elects to do so.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

| **19. How do I exclude myself from this settlement?** |
|---|

To exclude yourself from the settlement, you must send a letter by mail or fax stating that you want to be excluded from the *Burgess v. Tesoro* settlement. Be sure to include your name, address, telephone number, email address, your signature, and the case information listed in Question 18, above. You must mail or fax your exclusion request, postmarked no later than [45 days after postmark date of notice] to:

*Burgess v. Tesoro* Settlement
Simpluris, Inc.
[address]
[city, state zip]
[fax number]

If you ask to be excluded from the settlement, you will not get any payment and you will not be able to object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue or continue to sue Tesoro in the future regarding the legal issues in this case.

| **20. If I don't exclude myself, can I sue Tesoro for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up any right to sue Tesoro for the claims in this case, which will be resolved by the settlement. If you have a pending lawsuit (or other claim) against Tesoro for the legal issues in this case, speak to your lawyer in that case immediately. You must exclude yourself from this Class in order to continue your own lawsuit (or other claim). Remember, the exclusion deadline is [45 days after the postmark on this notice].

| **21. What's the difference between objecting and excluding?** |
|---|

"Objecting" is simply telling the Court that you do not like something about the settlement and are asking that the Court adjust the settlement terms. You can object only if you stay in the Class and don't exclude yourself. If you submit an objection, you are still eligible to receive a payment if the Court ultimately approves the settlement.

"Excluding" yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself from the settlement, you will not be eligible to receive any payment under the settlement. If you exclude yourself, you will not be allowed to object because the case no longer affects you. However, if you exclude yourself, you may be able to sue, continue to sue, or be part of a different lawsuit against Tesoro regarding the legal issues in this case.

The deadline to file either an objection or a request for exclusion is [45 days after notice postmark].

**QUESTIONS? CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)**
**OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

Case 2:15-cv-05695-DMG-RAO   Document 155-1   Filed 05/03/17   Page 151 of 167
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 32 of 167 Page ID
#:6724

# HOW TO GET A PAYMENT

| 22. How can I get a payment from the settlement? |
|---|

After the settlement has been approved by the Court and becomes effective and final, Class Members who are eligible under the settlement will receive a check from the settlement administrator based on the formulas described in Questions 10 and 11.

| 23. When will I get my payment? |
|---|

The Court will hold a hearing on [XXXXX date] to decide whether to approve the settlement. Note that this date is subject to change, so please visit the settlement website at www.tesoromealperiodsuit.com for the most current dates and deadlines. If Judge Gee approves the settlement after the hearing, there may be appeals. It is always uncertain how long it will take to resolve the appeals, if any, and it can sometimes take more than a year. Please be patient.

| 24. What am I giving up to get a payment under the settlement? |
|---|

Staying in the Class and getting a settlement payment means that you will not be able to sue, continue to sue, or be part of any other lawsuit against Tesoro about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you.

| 25. Will I be responsible for paying taxes on my settlement payment? |
|---|

Yes. Your settlement payment will be characterized as follows: (1) 60% of your payment will be counted as wages, for which a Form W-2 will be issued and from which all payroll deductions required by state and federal law will be taken; and (2) 40% will be counted as payment for interest and penalties, for which a Form 1099 will be issued and from which no payroll deductions will be taken. The amount reflected on the Form 1099 will still be subject to federal and state income tax.

**It is your sole responsibility to pay all taxes that may be due on your settlement payment beyond those withheld by Tesoro. This notice does not contain any tax guidance or advice. Please direct any tax questions to your own tax professional or preparer.**

# THE COURT'S FAIRNESS HEARING

| 26. When and where will the Court decide whether to approve the settlement? |
|---|

The Court will hold a settlement fairness hearing on [XXXXX date] at X:00 p.m. in Courtroom 7 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California. **However, this date may be subject to change. Please visit the settlement website at www.tesoromealperiodsuit.com for the most current dates and deadlines.**

**QUESTIONS?  CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)
OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them, including anyone who wants to speak at the hearing and has filed a Notice of Intention to Appear. The Court will also consider how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

## 27. Do I have to come to the settlement fairness hearing?

No. Class Counsel will answer any questions that Judge Gee may have about the settlement. However, you are welcome to come to the hearing at your own expense. If you submit an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection in on time, to all three addresses listed in Question 18, the Court will consider it.

## 28. May I speak at the settlement fairness hearing?

You may ask the Court for permission to speak at the settlement fairness hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Burgess v. Tesoro*, Case No. 10-cv-05870 DMG (PLAx)." Be sure to include your name, address, telephone number, email address, case information, and your signature. Your Notice of Intention to Appear must be postmarked no later than [2 weeks before hearing], and be sent to the Court, Class Counsel, and Defense Counsel at the three addresses listed in Question 18.

If you file a Notice of Intention to Appear and intend to present any papers or other evidence to the Court at the hearing, you must include copies of these papers or other evidence with each Notice of Intention to Appear that you mail to the Court, Class Counsel, and Defense Counsel. You cannot speak at the hearing if you exclude yourself or if you do not submit a Notice of Intention to Appear.

# IMPORTANT DATES TO REMEMBER

## 29. What are the important dates and deadlines in this case?

Below are the important dates and deadlines in this case. **However, these dates are subject to change. Please visit www.tesoromealperiodsuit.com for the most current dates and deadlines.**

| | |
|---|---|
| Last day for you to submit a dispute form, together with any supporting written documentation | [30 days after postmark date of notice] |
| Last day for Settlement Administrator to make final determinations regarding disputes | 10 calendar days after receipt of your dispute form and supporting documentation or no later than [40 days after postmark date of notice] |
| Last day for you to submit an objection to the settlement or to Class Counsel's request for attorneys' fees and/or expenses to the Court, Class Counsel, and Defense Counsel | [45 days after postmark date of notice] |

| Last day for you to exclude yourself from the settlement | [45 days after postmark date of notice] |
|---|---|
| Last day for you to mail in your "Notice of Intention to Appear" to the Court, Class Counsel, and Defense Counsel | [2 weeks before hearing] |
| Settlement Fairness Hearing, held in Courtroom 7 of the U.S. District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA | [XXXXX date] at X:00 p.m. |

# SETTLEMENT WEBSITE

## 30. Are there more details about the settlement?

You can visit the settlement website at www.tesoromealperiodsuit.com for more details regarding the settlement, including a copy of the Settlement Agreement, Class Counsel's motion for attorneys' fees and costs, which will be available on [date], and updates to the important dates and deadlines.

# GETTING MORE INFORMATION

## 31. How do I get more information?

For more information, you can also contact Linda Fang at Gilbert & Sackman, A Law Corporation, 3699 Wilshire Blvd., Suite 1200, Los Angeles, California, (323) 938-3000, lfang@gslaw.org.

| **Estimated Settlement Payment Amount:** |
| --- |
|  |

## Dispute Form

**Name:** _____

**Address:** _____

**Telephone:** _____

**Email (if email correspondence is acceptable)** _____

**Location(s) where employed by Tesoro:** _____

**Provide a clear, concise explanation of why you disagree with the estimated payment amount (attach additional pages if necessary):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**Provide supporting written documentation along with this Dispute Form and mail by [30 days from notice postmark] to:**

*Burgess v. Tesoro* Settlement
Simpluris, Inc.
[address]
[city, state zip]
[fax number]

**Date:** _____    **Signature:** _____

**Questions?  Call (XXX) XXX-XXXX (Simpluris, Inc.)
or visit www.tesoromealperiodsuit.com**

Case 2:10-cv-05870-DMG-VAP Document 139-1 Filed 05/03/13 Page 86 of 167 Page ID
#:6728
Case 4:17-cv-03850-JST Document 1-1 Filed 05/03/17 Page 155 of 167

*Burgess v. Tesoro Refining and Marketing*, Case No. 10-cv-05870 DMG (PLAx)
UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# If you have worked as a 12-hour shift worker for Tesoro Refining and Marketing Co. since April 25, 2004, you could get money from a class action settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer. You are not being sued.*

- This class action settlement will provide Eleven Million, Five Hundred Ninety-Nine Thousand, Nine Hundred Ninety-Nine Dollars ($11,599,999.00) to resolve a lawsuit over whether Tesoro violated California law by failing to provide shift workers at the Los Angeles and Golden Eagle Refineries with meal breaks relieved of all duty during their 12-hour shifts. It avoids the costs and risks of continuing the lawsuit, pays money to shift workers like you, and releases Tesoro from liability.

- Shift workers at the Golden Eagle Refinery will be paid 50% of the meal period premium, which is one hour of pay at their base contractual hourly rate, for each qualifying 12-hour shift worked between April 25, 2004 and March 10, 2012. Former employee shift workers who worked qualifying 12-hour shifts at the Golden Eagle Refinery whose employment with Tesoro ended between April 25, 2005 and March 10, 2012 will be paid an additional 30 hours of pay. If funds remain, shift workers will be paid a share of the remaining funds based on an estimated number of qualifying 12-hour shifts worked after March 10, 2012.

- Court-appointed lawyers for the Class will ask the Court for $2.5 million, plus up to $175,000 in litigation costs, as fees and expenses for investigating the facts, pursuing the case, and negotiating the settlement.

- The Court has not determined that Tesoro violated the law. The two sides disagree on how much money, if any, might have been won if the case had gone to trial. Tesoro denies that it has violated any laws or that it has harmed its employees in any way.

- A website has been set up to keep you informed of the details of the settlement. Please visit the website at www.tesoromealperiodsuit.com for more information.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | Receive the payment calculated under this settlement. Give up your right to sue Tesoro separately about the legal claims in this lawsuit. |
| **SUBMIT A DISPUTE FORM** | Submit a dispute form, with supporting documents, if you want to receive a payment under the settlement but you disagree with the amount of your estimated settlement payment. |
| **EXCLUDE YOURSELF BY OPTING OUT** | Get no payment from the settlement, but keep your right to file your own lawsuit against Tesoro about the legal claims in this case. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court about why you don't like the settlement. You may get a payment under the settlement even if you object. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |

- **Your legal rights are affected whether you act or don't act. Read this notice carefully.** The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made only if the Court approves the settlement and after any appeals are resolved. Please be patient.

**QUESTIONS? CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)
OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

Case 4:17-cv-03850-JST   Document 1-1   Filed 05/03/17   Page 156 of 167 Page ID
Case 2:10-cv-05870-DMG-PLA   Document 199-1   Filed 05/05/13   Page 35 of 167 Page ID
#:6729

# BASIC INFORMATION

## 1. Why did I get this notice package?

Tesoro's records show that you worked as a 12-hour shift worker at its Golden Eagle Refinery between April 25, 2004 and March 10, 2012. The Court has authorized this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the settlement. If the Court approves the settlement, and after any objections and appeals are resolved, an administrator appointed by the Court will make the payments that the settlement allows. This package explains the lawsuit, the proposed settlement, your legal rights, what benefits are available, who is eligible, and how to get the benefits. This package also includes a form for you to use to dispute the amount of the estimated payment you will receive from this settlement, if you wish.

## 2. What is this lawsuit about?

The lawsuit claims that Tesoro violated certain laws by failing to provide employees with uninterrupted, off-duty 30-minute meal periods and failing to pay all wages due for missed meal periods to former employees when their employment with Tesoro ended.

Tesoro denies the allegations in the lawsuit and says that its actions and policies are and have been in compliance with applicable laws and regulations.

## 3. What is a class action and who is involved?

In a class action, one or more people called Class Representatives (in this case, Benjamin Burgess, Paul Gutierrez, Sal Lucido, April Moore, Charles Grimmett, Antonio Garcia, and Brian Cashwell), sue on behalf of people who allegedly have similar claims. All of these people are called a Class or Class Members. The people who brought the case – and all the Class Members like them – are called Plaintiffs. The company they have sued, Tesoro Refining and Marketing Company, is called the Defendant. In a class action, one court resolves all the issues for all Class Members, except for those people who exclude themselves from the Class. If you do not exclude yourself, you will remain a member of the Class and will be bound by the settlement.

The Court in charge of the case is the United States District Court for the Central District of California, Judge Dolly M. Gee presiding, and the case is known as *Burgess v. Tesoro Refining and Marketing Co.*, Case No. 10-cv-05870 DMG (PLAx).

## 4. Who funded this lawsuit?

This lawsuit against Tesoro is being funded by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"). USW is the labor organization that represents Tesoro's shift workers for collective bargaining purposes.

| 5. Why is there a settlement? |
|---|

The Court has not decided in favor of the Plaintiffs or Tesoro in this case. The Plaintiffs think they could have won one hour of pay for each qualifying 12-hour shift they and other Class Members worked during the class period if they won at trial. Tesoro thinks that the Plaintiffs would not have won anything from a trial. But there was no trial. Instead, both sides agreed to a settlement. That way, they avoid the costs of continuing the case and going to trial as well as the risk of losing, and the affected workers will get paid. The Class Representatives and the attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT?

| 6. How do I know if I am part of the settlement? |
|---|

If you have been employed by Tesoro as a shift worker and worked at least one 12-hour shift as part of a 12-hour shift schedule at the Golden Eagle Refinery between April 25, 2004 and March 10, 2012, you are part of the settlement. If you received this notice, you are probably part of the settlement.

| 7. Are there exceptions to being included? |
|---|

You are not part of the settlement if you worked <u>only</u> in a management position, as a temporary shift supervisor or a salaried employee, or if you did not work any qualifying 12-hour shifts for Tesoro between April 25, 2004 and March 10, 2012.

If, during your employment with Tesoro, you moved from a qualifying position into a non-qualifying position (such as if you were promoted to a management position or if you switched from working as a shift worker to working as a day worker), you are still part of the settlement as long as you worked at least one qualifying 12-hour shift as a shift worker between April 25, 2004 and March 10, 2012.

| 8. Are all of my 12-hour shifts included? |
|---|

Any 12-hour shifts you worked in a management position or as a temporary shift supervisor or a salaried employee will not be included in the settlement. All 12-hour shifts you worked as a shift worker at the Golden Eagle Refinery between April 25, 2004 and March 10, 2012 will be included.

## OVERVIEW OF THE SETTLEMENT

| 9. What does the settlement provide? |
|---|

Tesoro has agreed to pay Eleven Million, Five Hundred Ninety-Nine Thousand, Nine Hundred Ninety-Nine Dollars ($11,599,999.00) to settle the meal period claims of Class Members who worked at the Los Angeles and Golden Eagle Refineries. The settlement funds will be allocated as follows:

(1) Each Class Member will be entitled, provisionally, to 50% of the meal period premium, which is one hour of pay at his or her base contractual hourly rate, for each qualifying 12-hour shift worked between May 11, 2007 and March 10, 2012 at the Los Angeles Refinery or between April 25, 2004 and March 10, 2012 at the Golden Eagle Refinery;

(2) Each Class Member whose employment at the Los Angeles Refinery ended between May 11, 2007 and March 10, 2012 or whose employment at the Golden Eagle Refinery ended between April 25, 2005 and March 10, 2012, will be entitled, provisionally, to an additional 30 hours of pay at the base contractual hourly rate in effect on his or her last qualifying 12-hour shift;

(3) Court-appointed lawyers for the Class will ask the Court for $2.5 million, plus up to $175,000 in litigation costs, as fees and expenses for investigating the facts, pursuing the case, and negotiating the settlement;

(4) Any funds remaining after the payments in paragraphs (1), (2), and (3), above, are calculated will be used to make additional payments to Class Members based upon estimated qualifying shifts worked after March 10, 2012;

(5) Tesoro will separately pay up to $40,000 towards the costs of settlement administration; and

(6) Tesoro has agreed to withdraw its pending appeal in a separate case brought by USW and two plaintiffs, and to pay certain amounts to the individual plaintiffs in that case. These amounts will be paid separately from the settlement fund and will not reduce payments to Class Members.

In exchange for the settlement payments described above, USW has agreed to certain modifications to the collective bargaining agreements at the Los Angeles and Golden Eagle Refineries, which will be subject to ratification by the membership prior to Court approval of the settlement:

(1) USW will enter into an on-duty meal period agreement on behalf of represented 12-hour shift workers, who will be authorized to take uninterrupted 30-minute meal breaks subject to (a) their recall to work assignments, (b) the requirement that they remain on the premises during their meal periods (absent management permission to leave the premises in certain circumstances), (c) the requirement that they generally carry radios or otherwise remain in contact or available to be contacted during meal periods, and (d) any other duties and obligations set forth in the collective bargaining agreements or other company policies or procedures that may affect whether meal periods are interrupted.

(2) USW will waive the second meal period to which shift workers would otherwise be entitled after 10 consecutive hours of work, provided that the shift does not exceed 12 hours.

**(The above is only a general summary of the modifications to the collective bargaining agreements; the terms of the agreements themselves are the controlling documents and not this summary.)**

## 10. How are the contractual hourly rate and the meal period premium calculated?

For purposes of this settlement, the meal period premium is calculated by multiplying the number of qualifying 12-hour shifts worked during the relevant time period by the applicable base contractual hourly rate listed in the collective bargaining agreement. The base contractual hourly rate does not include any premiums such as the night shift differential, Head Operator premium, or overtime.

Case 2:18-cv-05670-DMG-LA   Document 99-1   Filed 09/25/13   Page 39 of 97   Page ID
Case 4:17-cv-03850-JST   Document 1   Filed 05/03/17   Page 159 of 167
#:6732

Class Members who worked at the Golden Eagle Refinery will receive 50% of the meal period premium for qualifying 12-hour shifts worked between April 25, 2004 and March 10, 2012, plus a share of any remaining funds based on estimated qualifying shifts worked after March 10, 2012.

### 11. How is the additional 30 hours of pay for former employees calculated?

For shift workers who worked qualifying 12-hour shifts but whose employment with Tesoro ended between April 25, 2005 and March 10, 2012, the additional 30 hours of pay will be based on the base contractual hourly rate that was in effect on the employee's last qualifying 12-hour shift.

### 12. How do I know how much I will be getting paid under the settlement?

Your estimated settlement payment amount through March 10, 2012 is provided on the last page of this notice, along with the number of qualifying 12-hour shifts per calendar year on which the payment is based, as well as the amount of the additional 30 hours of pay for former employees. Your share of any remaining funds, which will be based on estimated qualifying 12-hour shifts worked after March 10, 2012, will be determined after the close of the Opt-Out Period and will be included in the settlement check that you receive if you choose not to opt out of the settlement. Please note that applicable payroll withholdings and deductions will be made from your settlement payment.

# THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in this case?

In this case, the Court decided that Linda Fang and Jay Smith of Gilbert & Sackman, A Law Corporation, of Los Angeles, California, and Richard Rouco of Quinn, Connor, Weaver, Davies & Rouco, LLP, of Birmingham, Alabama, are qualified to represent the Class. These lawyers are called Class Counsel.

If you have any questions about the case, you may call (323) 938-3000 to speak with Linda Fang. You may also call (205) 870-9989 to speak to Richard Rouco.

### 14. How will the lawyers be paid?

Class Counsel will ask the Court to approve a payment of $2.5 million to them for attorneys' fees, plus up to $175,000 as reimbursement of litigation expenses. The fees will pay Class Counsel for investigating the facts, pursuing the case, and negotiating the settlement. The Court may award less than the requested amounts. The attorneys' fees and expenses and the costs of settlement administration up to $40,000 will not reduce the amounts that will be paid to you or other members of the Class, as described in this notice.

Class Counsel's motion for attorneys' fees and expenses will be made available on the settlement website, at www.tesoromealperiodsuit.com, beginning on [10 days before objection deadline]. You must submit any objections to Class Counsel's request for fees and/or expenses by [45 days after notice postmark] to the Court, Class Counsel, and Defense Counsel at the three addresses listed in Question 18, below.

# YOUR OPTIONS

| 15. What are my options? |
| --- |

You have four options. You can (1) do nothing; (2) object to your estimated settlement payment amount; (3) object to the class settlement; or (4) exclude yourself from the settlement. Each option is described below.

# IF YOU DO NOTHING

| 16. What happens when I do nothing at all? |
| --- |

By doing nothing, you are staying in the Class and you will receive a payment as described above, based on the information contained in Tesoro's records. You will release your claims and not be able to sue Tesoro separately over the issues raised in this lawsuit.

Please note that the estimated settlement payment amount provided on the last page of this notice may differ <u>somewhat</u> from the settlement payment you ultimately get. Tesoro and Class Counsel have made their best efforts to provide you with the most accurate estimate in this notice.

# DISPUTING YOUR ESTIMATED
# SETTLEMENT PAYMENT AMOUNT

| 17. What if I disagree with my estimated settlement payment amount? |
| --- |

If you disagree with the estimated settlement payment amount contained in this notice, you must send in the dispute form (included with this notice and available at www.tesoromealperiodsuit.com), along with any supporting written documentation, no later than [30 days after the postmark on this notice] to:

*Burgess v. Tesoro* Settlement
Simpluris, Inc.
[address]
[city, state, zip]

You must submit to the settlement administrator a clear, concise explanation of why you disagree with the estimated settlement payment amount, along with any supporting documentation. Types of documentation that will be considered include pay stubs, weekly schedules, job logs, and personal calendars. **If you do not submit an explanation or any written documentation, your dispute will be denied.**

**If, after reviewing a dispute, the settlement administrator denies the dispute and determines that the final settlement payment should be lower than the estimated settlement payment, your final settlement will be reduced by the difference.**

Please be aware that you may not use the dispute form to challenge the formula that is being used to calculate the settlement payments – you may only challenge the estimated settlement payment amount if you believe that the formula is being inaccurately applied, for example, if you believe that you worked more qualifying shifts or an incorrect base contractual rate was used.

Failure to submit a dispute form with appropriate written documentation on time will result in a complete and final waiver of any challenge to the amount of the payment you will receive under the settlement. A final, binding determination regarding the dispute will be made within 10 days of receipt of the dispute form, or no later than 40 days after the postmark date of this notice. The settlement administrator will notify you regarding the resolution of your dispute by telephone, followed by an e-mail or notice by regular U.S. Mail if you have not provided a valid email address to the settlement administrator.

Your share of any remaining funds, which will be based on estimated qualifying 12-hour shifts worked after March 10, 2012, will be determined after the close of the Opt-Out Period and will be included in the settlement check that you receive if you choose not to opt out of the settlement. The amount of any remaining funds will depend on the number of Class Members who come forward and/or opt out of the settlement by the close of the Opt-Out Period (described in Question 19, below). You will not have an opportunity to dispute your share of any remaining funds.

# OBJECTING TO THE CLASS SETTLEMENT

| **18. How do I tell the Court that I don't like the settlement?** |
| --- |

If you qualify for a payment under the settlement, you can object to the settlement if you don't like any part of it, including Class Counsel's request for attorneys' fees and expenses. You can give reasons why you think the Court should not approve the settlement or Class Counsel's request for attorneys' fees and expenses and the Court will consider your views.

To object, you must send a letter saying that you object to the *Burgess v. Tesoro* settlement. Be sure to include your name, address, telephone number, email address, signature, the case information below, and your reasons for objecting to the settlement or Class Counsel's request for fees and/or expenses. You must mail your objection no later than [45 days after notice postmark] to all three addresses listed below:

| **Case Information:** | | |
| --- | --- | --- |
| *Burgess v. Tesoro Refining and Marketing Co.*, Case No. 10-cv-05879 DMG (PLAx) | | |
| **To the Court:**<br>Clerk of the Court<br>Re: Burgess v. Tesoro, Case No. 10-cv-05879 DMG (PLAx)<br>U.S. District Court for the Central District of California<br>312 North Spring Street<br>Los Angeles, CA 90012-4701 | **To Class Counsel:**<br>Linda S. Fang<br>Jay Smith<br>Gilbert & Sackman<br>A Law Corporation<br>3699 Wilshire Blvd., Suite 1200<br>Los Angeles, CA 90010-2732 | **To Defense Counsel:**<br>Timothy M. Rusche<br>Kristen Agnew<br>Seyfarth Shaw LLP<br>333 South Hope Street, Suite 3900<br>Los Angeles, CA 90071-1406 |

**Please do not call the Court regarding your objections. Any objections must be in writing.**

**QUESTIONS?  CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)
OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

Failure to submit an objection on time will result in a complete and final waiver of any challenge to the settlement. Anyone who submits a written objection will be required to make himself or herself available upon reasonable notice for a deposition by Class Counsel or Defense Counsel, if counsel elects to do so.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

## 19. How do I exclude myself from this settlement?

To exclude yourself from the settlement, you must send a letter by mail or fax stating that you want to be excluded from the *Burgess v. Tesoro* settlement. Be sure to include your name, address, telephone number, email address, your signature, and the case information listed in Question 18, above. You must mail or fax your exclusion request, postmarked no later than [45 days after the postmark of notice] to:

*Burgess v. Tesoro* Settlement
Simpluris, Inc.
[address]
[city, state zip]
[fax number]

If you ask to be excluded from the settlement, you will not get any payment and you will not be able to object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue or continue to sue Tesoro in the future regarding the legal issues in this case.

## 20. If I don't exclude myself, can I sue Tesoro for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Tesoro for the claims in this case, which will be resolved by the settlement. If you have a pending lawsuit (or other claim) against Tesoro for the legal issues in this case, speak to your lawyer in that case immediately. You must exclude yourself from this Class in order to continue your own lawsuit (or other claim). Remember, the exclusion deadline is [45 days after the postmark on this notice].

## 21. What's the difference between objecting and excluding?

"Objecting" is simply telling the Court that you do not like something about the settlement and are asking that the Court adjust the settlement terms. You can object only if you stay in the Class and don't exclude yourself. If you submit an objection, you are still eligible to receive a payment if the Court ultimately approves the settlement.

"Excluding" yourself is telling the Court that you do not want to be part of the Class. If you exclude yourself from the settlement, you will not be eligible to receive any payment under the settlement. If you exclude yourself, you will not be allowed to object because the case no longer affects you. However, if you exclude yourself, you may be able to sue, continue to sue, or be part of a different lawsuit against Tesoro regarding the legal issues in this case.

The deadline to file either an objection or a request for exclusion is [45 days after notice postmark].

# HOW TO GET A PAYMENT

### 22. How can I get a payment from the settlement?

After the settlement has been approved by the Court and becomes effective and final, Class Members who are eligible under the settlement will receive a check from the settlement administrator based on the formulas described in Questions 10 and 11.

### 23. When will I get my payment?

The Court will hold a hearing on [XXXXX date] to decide whether to approve the settlement. Note that this date is subject to change, so please visit the settlement website at www.tesoromealperiodsuit.com for the most current dates and deadlines. If Judge Gee approves the settlement after the hearing, there may be appeals. It is always uncertain how long it will take to resolve the appeals, if any, and it can sometimes take more than a year. Please be patient.

### 24. What am I giving up to get a payment under the settlement?

Staying in the Class and getting a settlement payment means that you will not be able to sue, continue to sue, or be part of any other lawsuit against Tesoro about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you.

### 25. Will I be responsible for paying taxes on my settlement payment?

Yes. Your settlement payment will be characterized as follows: (1) 60% of your payment will be counted as wages, for which a Form W-2 will be issued and from which all payroll deductions required by state and federal law will be taken; and (2) 40% will be counted as payment for interest and penalties, for which a Form 1099 will be issued and from which no payroll deductions will be taken. The amount reflected on the Form 1099 will still be subject to federal and state income tax.

**It is your sole responsibility to pay all taxes that may be due on your settlement payment beyond those withheld by Tesoro. This notice does not contain any tax guidance or advice. Please direct any tax questions to your own tax professional or preparer.**

# THE COURT'S FAIRNESS HEARING

### 26. When and where will the Court decide whether to approve the settlement?

The Court will hold a settlement fairness hearing on [XXXXX date] at X:00 p.m. in Courtroom 7 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California. **However, this date may be subject to change. Please visit the settlement website at www.tesoromealperiodsuit.com for the most current dates and deadlines.**

**QUESTIONS?  CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)
OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them, including anyone who wants to speak at the hearing and has filed a Notice of Intention to Appear. The Court will also consider how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| **27.** Do I have to come to the settlement fairness hearing? |
|---|

No. Class Counsel will answer any questions that Judge Gee may have about the settlement. However, you are welcome to come to the hearing at your own expense. If you submit an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection in on time, to all three addresses listed in Question 18, the Court will consider it.

| **28.** May I speak at the settlement fairness hearing? |
|---|

You may ask the Court for permission to speak at the settlement fairness hearing. To do so, you must send a letter stating that it is your "Notice of Intention to Appear in *Burgess v. Tesoro*, Case No. 10-cv-05870 DMG (PLAx)." Be sure to include your name, address, telephone number, email address, case information, and your signature. Your Notice of Intention to Appear must be postmarked no later than [2 weeks before hearing], and be sent to the Court, Class Counsel, and Defense Counsel at the three addresses listed in Question 18.

If you file a Notice of Intention to Appear and intend to present any papers or other evidence to the Court at the hearing, you must include copies of these papers or other evidence with each Notice of Intention to Appear that you mail to the Court, Class Counsel, and Defense Counsel. You cannot speak at the hearing if you exclude yourself or if you do not submit a Notice of Intention to Appear.

# IMPORTANT DATES TO REMEMBER

| **29.** What are the important dates and deadlines in this case? |
|---|

Below are the important dates and deadlines in this case. **However, these dates are subject to change. Please visit www.tesoromealperiodsuit.com for the most current dates and deadlines.**

| Last day for you to submit a dispute form, together with any supporting written documentation | [30 days after postmark date of notice] |
|---|---|
| Last day for Settlement Administrator to make final determinations regarding disputes | 10 calendar days after receipt of your dispute form and supporting documentation or no later than [40 days after postmark date of notice] |
| Last day for you to submit an objection to the settlement or to Class Counsel's request for attorneys' fees and/or expenses to the Court, Class Counsel, and Defense Counsel | [45 days after postmark date of notice] |

-10-

| Last day for you to exclude yourself from the settlement | [45 days after postmark date of notice] |
|---|---|
| Last day for you to mail in your "Notice of Intention to Appear" to the Court, Class Counsel, and Defense Counsel | [2 weeks before hearing] |
| Settlement Fairness Hearing, held in Courtroom 7 of the U.S. District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, CA | [XXXXX date] at X:00 p.m. |

# SETTLEMENT WEBSITE

## 30. Are there more details about the settlement?

You can visit the settlement website at www.tesoromealperiodsuit.com for more details regarding the settlement, including a copy of the Settlement Agreement, Class Counsel's motion for attorneys' fees and costs, which will be available on [date], and updates to the important dates and deadlines.

# GETTING MORE INFORMATION

## 31. How do I get more information?

For more information, you can also contact Linda Fang at Gilbert & Sackman, A Law Corporation, 3699 Wilshire Blvd., Suite 1200, Los Angeles, California, (323) 938-3000, lfang@gslaw.org.

**Estimated Settlement Payment Amount:**

## DISPUTE FORM

**NAME:** _____

**ADDRESS:** _____

**TELEPHONE:** _____

**EMAIL (IF EMAIL CORRESPONDENCE IS ACCEPTABLE)** _____

**LOCATION(S) WHERE EMPLOYED BY TESORO:** _____

**PROVIDE A CLEAR, CONCISE EXPLANATION OF WHY YOU DISAGREE WITH THE ESTIMATED PAYMENT AMOUNT (ATTACH ADDITIONAL PAGES IF NECESSARY):** _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**PROVIDE SUPPORTING WRITTEN DOCUMENTATION ALONG WITH THIS DISPUTE FORM AND MAIL BY [30 DAYS AFTER NOTICE MAILED] TO:**

*Burgess v. Tesoro* Settlement
Simpluris, Inc.
[address]
[city, state zip]
[fax number]

**DATE:** _____    **SIGNATURE:** _____

**QUESTIONS?  CALL (XXX) XXX-XXXX (SIMPLURIS, INC.)
OR VISIT WWW.TESOROMEALPERIODSUIT.COM**

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 400 Capital Mall, Suite 2350, Sacramento, California  95814.  On May 3, 2017, I caused to be served the within document(s):

**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT**

**CIVIL COVER SHEET;**

**DECLARATION OF KAREN KAWANO IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT**

**DEFENDANT'S CORPORATE DISCLOSURE STATEMENT (Fed. Rule Civ. Pro. 7.1)**

☐ by transmitting the document(s) listed above, electronically via e-mail addresses set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at 400 Capitol Mall, Suite 2350, Sacramento, California, addressed as set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at Sacramento, California, addressed as set forth below.

J. Jason Hill                                      *Attorneys for Plaintiff*
Timothy D. Cohelan
Michael D. Singer                           619-595-3001
Cohelan Khoury & Singer               619-595-3000 - fax
605 "C" Street, Suite 200                jhill@ckslaw.com
San Diego, CA  92101                     tcohelan@ckslaw.com
                                                       msinger@ckslaw.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

Executed on May 3, 2017, at Sacramento, California.

Linda Ninelist

1

PROOF OF SERVICE

38943492v.1